## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MANUEL JOSE AYBAR REYES | Case No. 1:25CV-13149 |
| Petitioner, | |
| v. | **PETITION FOR WRIT OF HABEAS CORPUS** |
| PATRICIA HYDE, Field Office Director; MICHAEL KROL, HSI New England Special Agent in Charge; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; TODD LYONS, Acting Director U.S. Immigrations and Custom Enforcement; U.S. DEPARTMENT OF HOMELAND SECURITY; PAMELA BONDI, U.S. Attorney general; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW;  and KRISTI NOEM, U.S. Secretary of Homeland Security Respondents. | |

## INTRODUCTION

1.      Petitioner MANUEL JOSE AYBAR REYES("Petitioner") is in the physical custody

of Respondents at BURLINGTON. The reason why Petitioner was detained remains

unclear. He now faces unlawful detention because the Department of Homeland Security

(DHS) and the Executive Office of Immigration Review (EOIR) have concluded Petitioner

is subject to mandatory detention.

2.      Petitioner is charged with, inter alia, having entered the United States without

admission or inspection. *See* 8 U.S.C. § 1182(a)(6)(A)(i).

3.      Based on this allegation in Petitioner's removal proceedings, DHS denied Petitioner

release from immigration custody, consistent with a new DHS policy issued on July 8,

2025, instructing all Immigration and Customs Enforcement (ICE) employees to consider anyone inadmissible under § 1182(a)(6)(A)(i)—i.e., those who entered the United States without admission or inspection—to be subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

4.      Similarly, on September 5, 2025, the Board of Immigration Appeals (BIA or Board) issued a precedent decision, binding on all immigration judges, holding that an immigration judge has no authority to consider bond requests for any person who entered the United States without admission. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025). The Board determined that such individuals are subject to detention under 8 U.S.C. § 1225(b)(2)(A) and therefore ineligible to be released on bond.

5.      Petitioner's detention on this basis violates the plain language of the Immigration and Nationality Act. Section 1225(b)(2)(A) does not apply to individuals like Petitioner who previously entered and are now residing in the United States. Instead, such individuals are subject to a different statute, § 1226(a), that allows for release on conditional parole or bond. That statute expressly applies to people who, like Petitioner, are charged as inadmissible for having entered the United States without inspection.

6.      Respondents' new legal interpretation is plainly contrary to the statutory framework and contrary to decades of agency practice applying § 1226(a) to people like Petitioner.

7.      Petitioner will filed a request for a Custody Redetermination, with the Chelmsford, MA, Immigration Court ("EOIR"). However, because the EOIR follows the Respondents' incorrect interpretation of the statutory provisions that govern detention of noncitizens in

the United States ("US"), EOIR is likely to find at that bond hearing that the Immigration

Judge ("IJ" or "Hearing Officer") lacks jurisdiction to entertain Ricardo's bond request.

8.      Accordingly, to vindicate Petitioner's constitutional rights, Petitioner seeks a writ of

habeas corpus requiring that he be released unless Respondents provide a bond hearing

under § 1226(a) within seven days.

9.      Petitioner asks this this Court to find that he was unlawfully detained and order his

release.

## JURISDICTION

10.     This Court has jurisdiction under 28 U.S.C. § 2241(c)(5) (habeas corpus), 28 U.S.C.

§ 1331 (federal question), and Article I, section 9, clause 2 of the United States Constitution

(the Suspension Clause).

11.     This Court may grant relief pursuant to 28 U.S.C. § 2241, the Declaratory Judgment

Act, 28 U.S.C. § 2201 *et seq.*, and the All Writs Act, 28 U.S.C. § 1651.

12.     Pursuant to *Braden v. 30th Judicial Circuit Court of Kentucky*, 410 U.S. 484, 493-

500 (1973), venue lies in the United States District Court for the District of Massachusetts

the judicial district in which Petitioner currently is detained.

13.     Venue is also properly in this Court pursuant to 28 U.S.C. § 1391(e) because

Respondents are employees, officers, and agencies of the United States, and because a

substantial part of the events or omissions giving rise to the claims occurred in the District

of Massachusetts.

## REQUIREMENTS OF 28 U.S.C. § 2243

14.     The Court must grant the petition for writ of habeas corpus or order Respondents to show cause "forthwith," unless the petitioner is not entitled to relief. 28 U.S.C. § 2243. If an order to show cause is issued, Respondents must file a return "within three days unless for good cause additional time, not exceeding twenty days, is allowed." *Id.*

15.     Habeas corpus is "perhaps the most important writ known to the constitutional law . . . affording as it does a *swift* and imperative remedy in all cases of illegal restraint or confinement." *Fay v. Noia*, 372 U.S. 391, 400 (1963) (emphasis added). "The application for the writ usurps the attention and displaces the calendar of the judge or justice who entertains it and receives prompt action from him within the four corners of the application." *Yong v. I.N.S.*, 208 F.3d 1116, 1120 (9th Cir. 2000) (citation omitted).

## PARTIES

16.     Petitioner Manuel Jose Aybar Reyes  is alleged to be a citizen of the Dominican Republic and has been in immigration detention since October 27, 2025. After arresting Petitioner in, Immigration and Customs Enforcement (ICE) did not set bond and Petitioner is unable to obtain review of his custody by an IJ, pursuant to the Board's decision in *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA 2025).

17.     Respondent Patricia Hyde is the New England Field Office Director for U.S. Immigration and Customs Enforcement. As such, Patricia Hyde is Petitioner's other immediate custodian and is responsible for Petitioner's detention and removal. She is named in her official capacity.

18.     Respondent Michael Krol is the New England Special Agent in Charge for Homeland Security Investigations for U.S. Immigration and Customs Enforcement. He has custodial authority because his team collects information for purposes of detaining and and removing Petitioner, and he is sued in his official capacity.

19.     Respondent U.S. Immigration and Customs Enforcement (ICE) is the federal agency responsible for enforcing immigration and customs law within the United States, and is a sub-agency of the U.S. Department of Homeland Security.

20.     Respondent Todd Lyons is the Acting Director for U.S. Immigration and Customs Enforcement.

21.     Respondent Department of Homeland Security (DHS) is the federal agency responsible for implementing and enforcing the INA, including the detention and removal of noncitizens.

22.     Respondent Pamela Bondi is the Attorney General of the United States. She is responsible for the Department of Justice, of which the Executive Office for Immigration Review and the immigration court system it operates is a component agency. She is sued in her official capacity.

23.     Respondent Executive Office for Immigration Review (EOIR) is the federal agency responsible for implementing and enforcing the INA in removal proceedings, including for custody redeterminations in bond hearings.

24.     Respondent Kristi Noem is the U.S. Secretary of Homeland Security.  She is responsible for the implementation and enforcement of the Immigration and Nationality Act

(INA), and oversees ICE, which is responsible for Petitioner's detention. Ms. Noem has ultimate custodial authority over Petitioner and is sued in her official capacity.

## LEGAL FRAMEWORK

25.     The INA prescribes three basic forms of detention for the vast majority of noncitizens in removal proceedings.

26.     First, 8 U.S.C. § 1226 authorizes the detention of noncitizens in standard removal proceedings before an IJ. *See* 8 U.S.C. § 1229a. Individuals in § 1226(a) detention are generally entitled to a bond hearing at the outset of their detention, *see* 8 C.F.R. §§ 1003.19(a), 1236.1(d), while noncitizens who have been arrested, charged with, or convicted of certain crimes are subject to mandatory detention, *see* 8 U.S.C. § 1226(c).

27.     Second, the INA provides for mandatory detention of noncitizens subject to expedited removal under 8 U.S.C. § 1225(b)(1) and for other recent arrivals seeking admission referred to under § 1225(b)(2).

28.     Last, the INA also provides for detention of noncitizens who have been ordered removed, including individuals in withholding-only proceedings, *see* 8 U.S.C. § 1231(a)–(b).

29.     This case concerns the detention provisions at §§ 1226(a) and 1225(b)(2).

30.     The detention provisions at § 1226(a) and § 1225(b)(2) were enacted as part of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996, Pub. L. No. 104—208, Div. C, §§ 302–03, 110 Stat. 3009-546, 3009–582 to 3009–583, 3009–585. Section 1226(a) was most recently amended earlier this year by the Laken Riley Act, Pub. L. No.119-1, 139 Stat. 3 (2025).

31.     Following the enactment of the IIRIRA, EOIR drafted new regulations explaining that, in general, people who entered the country without inspection were not considered detained under § 1225 and that they were instead detained under § 1226(a). *See* Inspection and Expedited Removal of Aliens; Detention and Removal of Aliens; Conduct of Removal Proceedings; Asylum Procedures, 62 Fed. Reg. 10312, 10323 (Mar. 6, 1997).

32.     Thus, in the decades that followed, most people who entered without inspection and were placed in standard removal proceedings received bond hearings, unless their criminal history rendered them ineligible pursuant to 8 U.S.C. § 1226(c). That practice was consistent with many more decades of prior practice, in which noncitizens who were not deemed "arriving" were entitled to a custody hearing before an IJ or other hearing officer. *See* 8 U.S.C. § 1252(a) (1994); *see also* H.R. Rep. No. 104-469, pt. 1, at 229 (1996) (noting that § 1226(a) simply "restates" the detention authority previously found at § 1252(a)).

33.     On July 8, 2025, ICE, "in coordination with" DOJ, announced a new policy that rejected well-established understanding of the statutory framework and reversed decades of practice.

34.     The new policy, entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission,"[1] claims that all persons who entered the United States without inspection shall now be subject to mandatory detention provision under § 1225(b)(2)(A). The policy applies regardless of when a person is apprehended, and affects those who have resided in the United States for months, years, and even decades.

---

[1] *Available at* https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

35.    On September 5, 2025, the BIA adopted this same position in a published decision, *Matter of Yajure Hurtado*. There, the Board held that all noncitizens who entered the United States without admission or parole are subject to detention under § 1225(b)(2)(A) and are ineligible for IJ bond hearings.

36.    Since Respondents adopted their new policies, dozens of federal courts have rejected their new interpretation of the INA's detention authorities. Courts have likewise rejected *Matter of Yajure Hurtado*, which adopts the same reading of the statute as ICE.

37.    Even before ICE or the BIA introduced these nationwide policies, IJs in the Tacoma, Washington, immigration court stopped providing bond hearings for persons who entered the United States without inspection and who have since resided here. There, the U.S. District Court in the Western District of Washington found that such a reading of the INA is likely unlawful and that § 1226(a), not § 1225(b), applies to noncitizens who are not apprehended upon arrival to the United States. *Rodriguez Vazquez v. Bostock*, 779 F. Supp. 3d 1239 (W.D. Wash. 2025).

38.    Subsequently, court after court has adopted the same reading of the INA's detention authorities and rejected ICE and EOIR's new interpretation. *See, e.g.*, *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299 (D. Mass. July 7, 2025); *Diaz Martinez v. Hyde*, No. CV 25-11613-BEM, --- F. Supp. 3d ----, 2025 WL 2084238 (D. Mass. July 24, 2025); *Rosado v. Figueroa*, No. CV 25-02157 PHX DLR (CDB), 2025 WL 2337099 (D. Ariz. Aug. 11, 2025), *report and recommendation adopted*, No. CV-25-02157-PHX-DLR (CDB), 2025 WL 2349133 (D. Ariz. Aug. 13, 2025); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588 (S.D.N.Y. Aug. 13, 2025); *Maldonado v. Olson*, No. 0:25-cv-03142-

SRN-SGE, 2025 WL 2374411 (D. Minn. Aug. 15, 2025); *Arrazola-Gonzalez v. Noem*, No. 5:25-cv-01789-ODW (DFMx), 2025 WL 2379285 (C.D. Cal. Aug. 15, 2025); *Romero v. Hyde*, No. 25-11631-BEM, 2025 WL 2403827 (D. Mass. Aug. 19, 2025); *Samb v. Joyce*, No. 25 CIV. 6373 (DEH), 2025 WL 2398831 (S.D.N.Y. Aug. 19, 2025); *Ramirez Clavijo v. Kaiser*, No. 25-CV-06248-BLF, 2025 WL 2419263 (N.D. Cal. Aug. 21, 2025); *Leal-Hernandez v. Noem*, No. 1:25-cv-02428-JRR, 2025 WL 2430025 (D. Md. Aug. 24, 2025); *Kostak v. Trump*, No. 3:25-cv-01093-JE-KDM, 2025 WL 2472136 (W.D. La. Aug. 27, 2025); *Jose J.O.E. v. Bondi*, No. 25-CV-3051 (ECT/DJF), --- F. Supp. 3d ----, 2025 WL 2466670 (D. Minn. Aug. 27, 2025) *Lopez-Campos v. Raycraft*, No. 2:25-cv-12486-BRM-EAS, 2025 WL 2496379 (E.D. Mich. Aug. 29, 2025); *Vasquez Garcia v. Noem*, No. 25-cv-02180-DMS-MM, 2025 WL 2549431 (S.D. Cal. Sept. 3, 2025); *Zaragoza Mosqueda v. Noem*, No. 5:25-CV-02304 CAS (BFM), 2025 WL 2591530 (C.D. Cal. Sept. 8, 2025); *Pizarro Reyes v. Raycraft*, No. 25-CV-12546, 2025 WL 2609425 (E.D. Mich. Sept. 9, 2025); *Sampiao v. Hyde*, No. 1:25-CV-11981-JEK, 2025 WL 2607924 (D. Mass. Sept. 9, 2025); *see also, e.g.*, *Palma Perez v. Berg*, No. 8:25CV494, 2025 WL 2531566, at \*2 (D. Neb. Sept. 3, 2025) (noting that "[t]he Court tends to agree" that § 1226(a) and not § 1225(b)(2) authorizes detention); *Jacinto v. Trump*, No. 4:25-cv-03161-JFB-RCC, 2025 WL 2402271 at \*3 (D. Neb. Aug. 19, 2025) (same); *Anicasio v. Kramer*, No. 4:25-cv-03158-JFB-RCC, 2025 WL 2374224 at \*2 (D. Neb. Aug. 14, 2025) (same).

39.    Courts have uniformly rejected DHS's and EOIR's new interpretation because it defies the INA. As the *Rodriguez Vazquez* court and others have explained, the plain text of

the statutory provisions demonstrates that § 1226(a), not § 1225(b), applies to people like

Petitioner.

40.     Section 1226(a) applies by default to all persons "pending a decision on whether the

[noncitizen] is to be removed from the United States." These removal hearings are held

under § 1229a, to "decid[e] the inadmissibility or deportability of a[] [noncitizen]."

41.     The text of § 1226 also explicitly applies to people charged as being inadmissible,

including those who entered without inspection. *See* 8 U.S.C. § 1226(c)(1)(E).

Subparagraph (E)'s reference to such people makes clear that, by default, such people are

afforded a bond hearing under subsection (a). As the *Rodriguez Vazquez* court explained,

"[w]hen Congress creates 'specific exceptions' to a statute's applicability, it 'proves' that

absent those exceptions, the statute generally applies." *Rodriguez Vazquez*, 779 F. Supp. 3d

at 1257 (citing *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 400

(2010)); *see also Gomes*, 2025 WL 1869299, at *7.

42.     Section 1226 therefore leaves no doubt that it applies to people who face charges of

being inadmissible to the United States, including those who are present without admission

or parole.

43.     By contrast, § 1225(b) applies to people arriving at U.S. ports of entry or who

recently entered the United States. The statute's entire framework is premised on

inspections at the border of people who are "seeking admission" to the United States. 8

U.S.C.

§ 1225(b)(2)(A). Indeed, the Supreme Court has explained that this mandatory detention

scheme applies "at the Nation's borders and ports of entry, where the Government must

determine whether a [noncitizen] seeking to enter the country is admissible." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

44.    Accordingly, the mandatory detention provision of § 1225(b)(2)(A) does not apply to people like Petitioner, who have already entered and were residing in the United States at the time they were apprehended.

## FACTS

45.    Petitioner has resided in the United States since 2022 and lives in Lawrence MA.

46.    On October 27, 2025, Petitioner was arrested. Petitioner is now detained at Burlington Office.

47.    DHS has placed Petitioner in removal proceedings before the Chelmsford Immigration Court pursuant to 8 U.S.C. § 1229a. ICE has charged Petitioner with, *inter alia*, being inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) as someone who entered the United States without inspection.

48.    Petitioner has several positive equities in his favor, including that he works in manufacturing for prescription labels, has filed his taxes, and has no criminal record. Petitioner is neither a flight risk nor a danger to the community.

49.    Following Petitioner's arrest and transfer too ICE facilities in Burlington, ICE issued a custody determination to continue Petitioner's detention without an opportunity to post bond or be released on other conditions.

50.    Pursuant to *Matter of Yajure Hurtado*, the immigration judge is unable to consider Petitioner's bond request.

51.     As a result, Petitioner remains in detention. Without relief from this court, he faces the prospect of months, or even years, in immigration custody, separated from their family and community.

## CLAIMS FOR RELIEF
### COUNT I
### Violation of the INA

52.     Petitioner incorporates by reference the allegations of fact set forth in the preceding paragraphs.

53.     The mandatory detention provision at 8 U.S.C. § 1225(b)(2) does not apply to all noncitizens residing in the United States who are subject to the grounds of inadmissibility. As relevant here, it does not apply to those who previously entered the country and have been residing in the United States prior to being apprehended and placed in removal proceedings by Respondents. Such noncitizens are detained under § 1226(a), unless they are subject to § 1225(b)(1), § 1226(c), or § 1231.

54.     The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates the INA.

### COUNT II
### Violation of the Bond Regulations

55.     Petitioner incorporates by reference the allegations of fact set forth in preceding paragraphs.

56.     In 1997, after Congress amended the INA through IIRIRA, EOIR and the then-Immigration and Naturalization Service issued an interim rule to interpret and apply IIRIRA. Specifically, under the heading of "Apprehension, Custody, and Detention of [Noncitizens]," the agencies explained that "[d]espite being applicants for admission,

[noncitizens] who are present without having been admitted or paroled (formerly referred to as [noncitizens] who entered without inspection) will be eligible for bond and bond redetermination." 62 Fed. Reg. at 10323 (emphasis added). The agencies thus made clear that individuals who had entered without inspection were eligible for consideration for bond and bond hearings before IJs under 8 U.S.C. § 1226 and its implementing regulations.

57.     Nonetheless, pursuant to *Matter of Yajure Hurtado*, EOIR has a policy and practice of applying § 1225(b)(2) to individual like Petitioner.

58.     The application of § 1225(b)(2) to Petitioner unlawfully mandates his continued detention and violates 8 C.F.R. §§ 236.1, 1236.1, and 1003.19.

## COUNT III
### Violation of Fifth Amendment Right to Due Process

59.     Petitioner repeats, re-alleges, and incorporates by reference each and every allegation in the preceding paragraphs as if fully set forth herein.

60.     The government may not deprive a person of life, liberty, or property without due process of law. U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001).

61.     Petitioner has a fundamental interest in liberty and being free from official restraint.

62.     On information and belief, Petitioner is currently being arrested and detained by federal agents without cause and in violation of Ricardo's constitutional rights to due process of law.

63.     The government's detention of Petitioner without a bond redetermination hearing to determine whether he is a flight risk or danger to others violates his right to due process.

## PRAYER FOR RELIEF

Wherefore, Petitioner respectfully requests this Court to grant the following:

(1) Assume jurisdiction over this matter;

(2) Order that Petitioner shall not be transferred outside the District of Massachusetts while this habeas petition is pending;

(3) Issue an Order to Show Cause ordering Respondents to show cause why this Petition should not be granted within three days;

(4) Issue a Writ of Habeas Corpus requiring that Respondents release Petitioner or, in the alternative, provide Petitioner with a bond hearing pursuant to 8 U.S.C. § 1226(a) within seven days;

(5) Declare that Petitioner's detention violates the Due Process Clause of the Fifth Amendment and thus is unlawful;

(6) Award Petitioner attorney's fees and costs under the Equal Access to Justice Act ("EAJA"), as amended, 28 U.S.C. § 2412, and on any other basis justified under law; and

(7) Grant any other and further relief this Court deems just and proper.

Respectfully submitted,

/s/ Christopher P. Walsh

Christopher P. Walsh, Esq.

Immigration Law Office of Carmen Bello

447 Eastern Avenue

Chelsea, MA 02150

Telephone: (617) 874-8651

Email: attorneywalsh@abogadacarmenbello.net

Counsel for Petitioner

Dated: October 27, 2025

CERTIFICATE OF SERVICE

I hereby certify that this notice has been served on all registered parties by this Court's

CM/ECF system, on October 27, 2025.

/s/ Christopher P. Walsh