UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| JANE DOE, JOHN DOE, JAN DOE, JAMES DOE, AND JANET DOE, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CAPE COD HEALTHCARE, INC.,<br><br>Defendant. | Civil Action No. 1:25-cv-10445-RGS<br><br>**Leave to File Granted April 22, 2025** |

**DEFENDANT CAPE COD HEALTHCARE, INC.'S REPLY TO PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

# TABLE OF CONTENTS


I. INTRODUCTION ........................................................................................................ 1

II. ARGUMENT ............................................................................................................ 1

A. Plaintiffs Misinterpret and Fail to Plead the Crime-Tort Exception. ...................... 1

B. Plaintiffs' Theory Would Have Catastrophic Implications. .................................. 4

III. CONCLUSION ........................................................................................................ 5

# TABLE OF AUTHORITIES

**Cases**

*Blumofe v. Pharmatrak, Inc.*,
329 F.3d 9 (1st Cir. 2003) .......... 2, 4

*Caro v. Weintraub*,
618 F.3d 94 (2d Cir. 2010) .......... 1

*Conformis, Inc. v. Aetna, Inc.*,
58 F.4th 517 (1st Cir. 2023) .......... 2

*Cooper v. Mount Sinai Health Sys., Inc.*,
742 F. Supp. 3d 369 (S.D.N.Y. 2024) .......... 3

*In re Grp. Health Plan Litig.*,
709 F. Supp. 3d 707 (D. Minn. 2023) .......... 3

*TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo*,
260 F. Supp. 3d 154 (D.P.R. 2016) .......... 3

*United States v. McHugh*,
57 F. Supp. 3d 95 (D. Mass. 2014) .......... 2, 4

*United States v. Vest*,
639 F. Supp. 899 (D. Mass. 1986) .......... 2

**Statutes**

18 U.S.C. § 2511(2)(d) .......... 1

**Other Authorities**

Brief of The Chamber of Commerce of the United States of America as Amicus Curiae in Support of Defendant's Motion to Dismiss, *Doe v. Lawrence Gen. Hosp.*, No. 1:25-cv-10081-NMG (D. Mass. filed Mar. 4, 2025), ECF No. 21 .......... 4

Defendant Cape Cod Healthcare, Inc. ("CCHC") submits this Reply in support of its Motion to Dismiss the Electronic Communications Privacy Act ("ECPA") claim in Plaintiffs' Amended Complaint. For the reasons set out in CCHC's Memorandum In Support Of Its Motion To Dismiss ("Motion to Dismiss"), ECF No. 12, and below, the Court should grant CCHC's Motion to Dismiss because Plaintiffs fail to plausibly allege critical elements of an ECPA claim.

## I. INTRODUCTION

Plaintiffs' Opposition to CCHC's Motion to Dismiss lays bare both their inability to satisfy the demanding pleading standard for the ECPA crime-tort exception in this Circuit and the devastating practical implications of their position. According to Plaintiffs, all it takes to plead the crime-tort exception is a plausible allegation of (1) an intentional interception of purported protected health information, and (2) disclosure of that information. Pls.' Opp'n Mot. Dismiss ("Opposition") at 4, ECF No. 20. If Plaintiffs are right, then any healthcare institution or business that uses standard website analytics and marketing software ("AdTech") is subject to class-wide discovery and, potentially, catastrophic criminal and civil liability. No First Circuit precedent authorizes that result and the Court should, therefore, reject Plaintiffs' position and dismiss their ECPA claim.

## II. ARGUMENT

### A. Plaintiffs Misinterpret and Fail to Plead the Crime-Tort Exception.

Under ECPA's crime-tort exception, a party to a communication may only be liable for intercepting that communication if they (1) intended to commit (2) an independent crime or tort (3) at the time of the interception. *See Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010); *see also* 18 U.S.C. § 2511(2)(d). Crucially, Plaintiffs' Opposition does not engage with cases from this Circuit that set out the requirement of more than just an interception and disclosure—i.e., an intent

to harm the recorded party. *United States v. McHugh*, 57 F. Supp. 3d 95, 100 (D. Mass. 2014); *United States v. Vest*, 639 F. Supp. 899, 907 (D. Mass. 1986) (explaining that the crime-tort exception does not apply where "[i]njury is not the actor's objective but only an incidental consequence of an act done for a permissible purpose"). In the First Circuit, "the term 'intentional' is narrower than the dictionary definition," and the crime-tort exception applies only in those cases where the defendant's "conscious objective" was to injure the plaintiff. *Blumofe v. Pharmatrak, Inc.*, 329 F.3d 9, 23 (1st Cir. 2003) (citation omitted).

Plaintiffs claim that they need only plausibly allege an intentional interception and disclosure of purported protected health information, and in doing so, ignore the relevant language from *McHugh*, *Vest*, and *Pharmatrak*. *See* Opposition at 9. They make no attempt to argue that, as those cases require, CCHC's "conscious objective" was to injure its patients, because such an argument would be facially absurd.

Instead, Plaintiffs insist that the Court must throw up its hands because this is a motion to dismiss. At this stage, Plaintiffs say, "the Court does not engage in a weighing of 'competing sets of inferences.'" Opposition at 10. But Plaintiffs cannot hide behind the pleading standard to dodge the straightforward question presented by CCHC's Motion to Dismiss. It is true that, at this stage, the Court cannot choose between competing sets of reasonable inferences, but the Court must ask whether Plaintiffs' theory is "plausible on its face" and gives rise to a "reasonable inference that the defendant is liable for the misconduct alleged." *Conformis, Inc. v. Aetna, Inc.*, 58 F.4th 517, 528 (1st Cir. 2023) (citations omitted). The Court therefore must examine the inferences upon which Plaintiffs' theory of liability depends.

Here, those inferences are not merely unreasonable—they are absurd. The Amended Complaint alleges that a non-profit hospital system installed generic AdTech on its website—

AdTech that substantially every website uses for generic marketing and IT purposes. In this particular case, however, Plaintiffs maintain that the hospital's marketing and IT departments set out with the "conscious objective" of injuring the hospital's patients—and risked criminal liability—when they installed the AdTech tools. In other words, Plaintiffs claim, in their Opposition, that CCHC's employees acted not for any legitimate marketing or IT purpose, but for the specific, illegal purpose of conveying patients' confidential information to third parties in order to harm them.

But no actual factual allegation in the Amended Complaint supports that radical conclusion, and the Court should swiftly reject it. The Amended Complaint contains no allegations that could explain why CCHC's employees might act for the specific purpose of injuring its patients. The only plausible inference that the well-pleaded facts can support is much less surprising: CCHC's marketing and IT departments installed AdTech because they were doing what healthcare marketing and IT departments are supposed to do—trying to reach as many potential patients as possible and trying to improve CCHC's website functionality.[1]

Not surprisingly, Plaintiffs cite several AdTech cases in other Circuits, in addition to those CCHC cited in its Motion to Dismiss, that broadly construe the crime-tort exception. Opposition at 5-7 (citing *Cooper v. Mount Sinai Health Sys., Inc.*, 742 F. Supp. 3d 369 (S.D.N.Y. 2024); *In re Grp. Health Plan Litig.*, 709 F. Supp. 3d 707 (D. Minn. 2023)). But, as with the contrary cases CCHC addressed in its Motion to Dismiss, these decisions are (1) wrongly decided because they are untethered to the language of the crime-tort exception and (2) inconsistent with First Circuit

---

[1] Compare this to one of the cases Plaintiffs cite, *TLS Mgmt. & Mktg. Servs. LLC*. Opposition at 7. There, plaintiff alleged defendants intercepted confidential business information from a Dropbox account to poach plaintiff's clients. *TLS Mgmt. & Mktg. Servs. LLC v. Rodriguez-Toledo,* 260 F. Supp. 3d 154, 165-66 (D.P.R. 2016). Therefore, at the time of the interception, defendants' purpose was to commit a separate crime or tort, including tortious interference with plaintiff's contracts. *Id.* at 156 n.1, 165-66.

authorities requiring the exception to be applied narrowly to cases in which the defendant deliberately sought to harm the plaintiff. *See Pharmatrak, Inc.*, 329 F.3d at 23; *McHugh*, 57 F. Supp. 3d at 100. At bottom, Plaintiffs' Opposition makes clear that they cannot satisfy their burden to plausibly allege that CCHC's purpose was to commit a crime or tort. Accordingly, their ECPA claim fails.

**B. Plaintiffs' Theory Would Have Catastrophic Implications.**

An additional problem with Plaintiffs' expansive theory of ECPA liability is that it would expose every healthcare institution or business that uses any AdTech to ruinous civil and criminal liability. The United States Chamber of Commerce warned against this expansion of ECPA in an amicus brief filed in a similar AdTech case against Lawrence General Hospital. Brief of The Chamber of Commerce of the United States of America as Amicus Curiae in Support of Defendant's Motion to Dismiss, *Doe v. Lawrence Gen. Hosp.*, No. 1:25-cv-10081-NMG (D. Mass. filed Mar. 4, 2025), ECF No. 21. The Chamber stressed that accepting this theory would result in "crushing penalties [that] could force hospitals, healthcare providers, and other companies out of business" for using AdTech on even a lightly visited website. *Id.* at 15-16. The Chamber also explained that healthcare institutions' purpose in using AdTech is to "improve delivery of healthcare" and ensure communities receive the information needed to obtain medical care, not to commit crimes or torts. *Id.* at 14.

The Chamber further expressed concern that, if courts deny defendants' motions to dismiss, "conclusory HIPAA allegations" would predominate, pressuring companies to settle even meritless claims in the face of massive statutory damages. *Id.* at 10-11 ("Plaintiff's conclusory HIPAA allegations epitomize the type of meritless claims that would proliferate under the complaint's expansive theory of Wiretap Act liability. . . . If accepted, Plaintiff's approach would

transform HIPAA into a tool for opportunistic litigation, with no corresponding improvement in protection of patient privacy.”).

In light of the narrow scope of ECPA’s crime-tort exception, it is not at all surprising that Plaintiffs chose to file their initial Complaint in Massachusetts State Court and to allege violations of the Massachusetts Wiretap Act. Only after the Supreme Judicial Court rejected that type of claim as a matter of law did Plaintiffs reinvent the theory of their case, based on ECPA liability, in an effort to take advantage of ECPA’s $10,000 liquidated damages provision. But even after amendment, Plaintiffs’ allegations do not satisfy ECPA’s statutory scheme. Plaintiffs cannot be permitted to proceed on such an expansive theory of liability where they fail to plausibly allege that CCHC intended to harm its patients by deploying commonplace AdTech on its website.

## III. CONCLUSION

For these reasons, and for those stated in its Motion to Dismiss, CCHC asks this Court to grant its Motion to Dismiss with prejudice.

Respectfully Submitted,

CAPE COD HEALTHCARE, INC.,

*By its attorneys,*

*/s/ Adam J. Bookbinder*

Adam J. Bookbinder (BBO No. 566590)
Samuel N. Rudman (BBO No. 698018)
Mark W. McPherson (BBO No. 698465)
April C. DeLuca (BBO No. 709101)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Telephone: 617-248-5000
abookbinder@choate.com
srudman@choate.com
mmcpherson@choate.com
adeluca@choate.com

Dated: April 22, 2025

**CERTIFICATE OF SERVICE**

I, Adam J. Bookbinder, do hereby certify that on this 22nd day of April, 2025, I caused the foregoing document to be filed through the ECF system and to be sent electronically to the registered participants as identified on the Notice of Electronic Filing.

*/s/ Adam J. Bookbinder*
Adam J. Bookbinder

Dated: April 22, 2025