## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

———————————————————————
                                              )
Sanjay Krishna, Maksim Piskunov, Florian      )
Adolf, Daniyal Ahmed Faheem, Sabitha          )
Kajuluri, Chanikya Sai Ram Gopisetty, Elena   )
Kokueva, Idris Syed, and Natnael Bekele,      )
                                              )
            Plaintiffs,                        )
                                              )
            v.                                 )        Civil Action No. 24-10241-MJJ
                                              )
Julie Su, Acting Secretary,                   )
United States Department of Labor,            )
                                              )
            Defendant.                         )
———————————————————————)

## MEMORANDUM OF DECISION

February 5, 2025

Plaintiffs are foreign nationals who are beneficiaries of pending "PERM" applications seeking required certifications from the Defendant, the Department of Labor ("DOL"), for their employers to sponsor them to become permanent U.S. residents based on their employment. The DOL has allegedly delayed its adjudication of these applications for so long that Plaintiffs argue they are entitled to an order under the Administrative Procedure Act ("APA") that the DOL complete Plaintiffs' applications within seven days. Before me are the following motions: Plaintiffs' Motion for Summary Judgment [Doc. No. 15], Defendant's Motion to Dismiss [Doc. No. 26], and Defendant's Cross-Motion for Summary Judgment [Doc. No. 29]. For the reasons set forth below, Defendant's Cross-Motion for Summary Judgment is <u>GRANTED</u>, Plaintiffs' Motion for Summary Judgment is <u>DENIED</u>, and Defendant's Motion to Dismiss is <u>DENIED</u> as moot.

## I. BACKGROUND

### A. Legal Context

#### 1. The Employment-Based Immigration Visa Process

The DOL plays an important role in the United States' employment-based immigration system. [Doc. No. 18 at ¶ 46 (*citing* 8 U.S.C. §§ 1154(b), 1182(5); 20 C.F.R. § 556, *et seq.*)]. The DOL's Office of Foreign Labor Certification ("OFLC") administers the permanent labor certification program, [Doc. No. 18 at ¶ 49 (citing https://flag.dol.gov/programs/perm (last visited January 31, 2025); 20 C.F.R. § 656.10)], a process in which foreign national workers can apply for permanent residence in the United States based on their employment. [*See* Doc. No. 18 at ¶¶ 50, 56-57]. To obtain an employment-based immigrant visa, the employer must obtain labor certification from the DOL. [Doc. No. 18 at ¶ 56 (citing 20 C.F.R § 656.17(a)(1))]. Upon certification of the position, "the employer can then petition for an immigrant visa with the United States Citizenship and Immigration Services ("USCIS") on behalf of their future permanent employee, and USCIS approves or denies the immigrant visa petition." [Doc. No. 18 at ¶ 57 (citing 8 U.S.C. § 1154(b))]. The beneficiary can simultaneously apply to adjust their status to lawful permanent resident if visas are immediately available. [Doc. No. 18 at ¶ 289]; *see* 8 U.S.C.A. § 1255(a); *see also* 8 C.F.R. § 245.2(a)(2)(i)(C)(2).

#### 2. The Labor Certification Process

The labor certification process, or "PERM," is a three-step process designed to ensure that the permanent employment of a noncitizen "will not negatively impact the United States labor force," [Doc. No. 18 at ¶¶ 48, 50], and "will not adversely affect the wages and working conditions of workers in the United States similarly employed." [Doc. No. 18 at ¶ 48 (quoting 8 U.S.C. § 1182(a)(5)(A)(i))]. The first stage is called the Prevailing Wage Determination, which

concludes by DOL telling the employer the wage level that it must offer and pay a noncitizen employee. [Doc. No. 18 at ¶ 51; 20 C.F.R § 656.40]. The next stage is the Labor Market Test, during which an employer "tests the labor market to determine if there are any able and willing American workers who can and will fill the position at the prevailing wage." [Doc. No. at ¶ 53 (citing 20 C.F.R. § 656.17(e))]. If this test identifies no willing and able domestic workers, then the employer can submit their request for permanent labor certification through an electronic system called the "Program Electronic Record Management" ("PERM")[1] system. [*Id.* at ¶ 58]. During this step, DOL must certify that the permanent employment of a noncitizen will not adversely affect the United States labor force. [*Id.* at ¶ 48]. Specifically, DOL must ensure:

 (I)  there are not sufficient workers who are able, willing, qualified (or equally qualified in the case of an alien described in clause (ii)) and available at the time of application for a visa and admission to the United States and at the place where the alien is to perform such skilled or unskilled labor, and

(II)  the employment of such alien will not adversely affect the wages and working conditions of workers in the United States similarly employed.

[*Id.* at ¶ 48 (quoting 8 U.S.C. § 1182(a)(5)(A)(i))].

### 3.  History Of PERM

To "simplify, streamline, and speed up the PERM process," DOL noticed a proposed rule to implement an electronic labor certification application in May of 2002. [Doc. No. 18 at ¶¶ 60-61 (citing DOL, Labor Certification for the Permanent Employment of Aliens in the United States; Implementation of New System, 67 Fed. Reg. 30466-01, 30467 (proposed May 6, 2002) (to be codified at 20 C.F.R. pts. 655, 656)]. This proposal aimed to decide routine, non-audited Forms 9089 in 21 days, [Doc. No. 18 at ¶ 62 (citing DOL, Labor Certification for

---

[1] "PERM is the technological platform where employers file an ETA Form 9089, Application for Permanent Employment Certification[,] [b]ut stakeholders and bureaucrats alike use the term PERM as a catchall for this entire process." [Doc. No. 18 at ¶ 58].

the Permanent Employment of Aliens in the United States; Implementation of New System, 67 Fed. Reg. 30466-01 at 30470 (third column))], and expected employers to "file approximately 121,300 applications for alien employment certification." [*Id.* at ¶ 63 (citing DOL, Labor Certification for the Permanent Employment of Aliens in the United States; Implementation of New System, 67 Fed. Reg. 30466-01 at 30482 (second column))]. Thus, in 2002, DOL anticipated completing a minimum of 120,000 applications per fiscal year in an average time of 21 days. [*Id.* at ¶ 64]. The final rule was implemented in 2004 with adjusted expected processing times of 45-60 days, [*Id.* at ¶ 65 (citing 69 Fed. Reg. 77326-01, 77328 (Dec. 27, 2004) (second column))], and a tempered projection of 100,000 PERM applications filed per fiscal year. [*Id.* at ¶ 66 (citing 69 Fed. Reg. at 77376) (first column))]. The final rule also declared that DOL would process PERM applications on a first in, first out basis: "We will process applications, including properly refiled applications, in the order in which they were filed under this final rule." [*Id.* at ¶ 67 (citing 69 Fed. Reg. at 77343) (second column))].

    As of the filing of the Amended Complaint, DOL decides about 105,000 PERMS per year in an average of 397[2] days but does not follow the "first in, first out" rule. [Doc. No. 18 at ¶¶ 69, 263, 294]. Rather, DOL follows a "month processing" methodology, where DOL generally processes applications according to the month of their submission. [*Id.* at ¶ 69]. DOL posts the processing times for PERM applications on its public-facing website. [*See* PERM Processing Times, https://flag.dol.gov/processingtimes (last visited January 29, 2025)]. As of January 2025, DOL is reporting an average processing time of 462 calendar days for PERM applications filed in the most recent month (December 2024). [*Id.*] Applications not subject to audit are organized and segregated by the calendar month in which they were submitted. [Doc. No. 18 at ¶ 86].

---

[2] As of the time of the parties' summary judgment briefing, July 2024, Plaintiffs claim that this average processing time was 388 days. [Doc. No. 34-1 at ¶ 5].

These cases then sit on a "digital shelf" for approximately 13-14 months. [*Id.* at ¶¶ 86-87]. When the time comes, a supervisor assigns the cases for the next submission month to the OFLC Analysts. [*Id.* at ¶ 88]. This is based on current workload—for instance, when the OFLC has only 1000 or so cases awaiting certification from February 2023, the supervisor will then assign the cases from March 2023. [*Id.*]. The website instructs that if an "application was filed more than three months prior to the month posted, [a petitioner or beneficiary] may contact the OFLC PERM Helpdesk for a status on the application at plc.atlanta@dol.gov." [*See* PERM Processing Times, https://flag.dol.gov/processingtimes (last visited January 29, 2025)].

Twelve full-time OFLC Analysts decide routine, unaudited PERM applications together with six "flex employees" who also spend at least six months a year adjudicating routine, unaudited PERM applications full time. [Doc. No. 18 at ¶ 71]. Based on minimum production standards agreed upon under a collective bargaining agreement, DOL OFLC Analysts can decide between 126,000 to 180,000 applications per fiscal year. [*Id.* at ¶¶ 72, 75]. Analysts "are only reviewing the PERM application for completeness and accuracy" and are "not permitted to do outside research to test the accuracy." [*Id.* at ¶ 80]. No set rule, policy, or limitation governs how long the analysts may take to decide a single month of Forms 9089. [*Id.* at ¶ 88]. Even under the month processing method, there is a large variation between decision times among applications submitted in the same month. [*Id.* at ¶ 105]. Frequently, the DOL decides later-filed PERM applications prior to earlier-filed applications, and "nearly 25% of cases submitted in the same month are decided more than a month before or after the mode month," or the decision month for most PERM applications submitted in the same month. [*Id.* at ¶ 106]. Because of this month processing method for adjudicating PERM applications, Plaintiffs assert that the delays in application adjudication are unreasonable and harmful to PERM beneficiaries.

### 4.   The FLAG System

In July of 2023, OFLC began accepting Forms 9089 through its updated website, the

Foreign Labor Application Gateway ("FLAG"). [Doc. No. 18 at ¶¶ 119-20]. Plaintiffs claimed

that as of February 26, 2024, DOL had not started processing cases submitted via FLAG. [*Id.* at ¶

121]. Likewise, it had not "created any training materials, memorandums, internal guidance,

power points, or other similar material related to adjudicating Forms 9089 in the FLAG system"

nor taken "any steps at all to adjudicate any PERM applications filed on or after July 2023." [*Id.*

at ¶¶ 122-23]. This is no longer true. Plaintiffs concede that after the filing of this lawsuit, the

government started applying decisions in the FLAG system. Given that this is the basis of

Plaintiffs' unlawful withholding claim, the Plaintiffs submit that this claim is moot. [Doc. No. 44

at 19:20-23 (Mot. H'rg Tr. 10/08/2024)].

### B.   Relevant Facts

### 1.   The Plaintiffs

Plaintiffs are all beneficiaries of pending PERM applications. [Doc. No. 18 at ¶ 45].

Since the Amended Complaint was filed, six out of nine Plaintiffs have received their PERM

certifications.[3] As such, the unreasonable delay claims brought on behalf of those six Plaintiffs

are now moot. *Matt v. HSBC Bank USA, N.A.*, 783 F.3d 368, 372 (1st Cir. 2015) ("Here, there is

literally no controversy left for the court to decide—the case is no longer 'live'") (citation

---

[3] The following Plaintiffs have received PERM certifications: Florian Adolf [Doc. No. 43-1 (filed April
12, 2023 and certified on May 13, 2024, 397 days after filing)]; Sanjay Krishna [Doc. No. 43-2 (filed July
13, 2023 and certified on August 22, 2024, 406 days after filing)]; Sabitha Kajuluri [Doc. No. 43-3 (filed
July 27, 2023 and certified on August 26, 2024, 396 days after filing)]; Elena Kokueva [Doc. No. 47-1
(filed August 14, 2023 and certified on December 4, 2024, 478 days after filing)]; Daniyal Ahmed
Faheem [Doc. No. 47-2 (filed September 7, 2023 and certified December 5, 2024, 455 days after filing)];
Nathael Bekele [Doc. No. 47-3 (filed September 13, 2023 and certified December 5, 2024, 449 days after
filing)]. *See generally* [Doc. No. 34-1 at ¶ 1 (listing filing dates)].

omitted). The remaining Plaintiffs who have yet to receive their PERM certifications are the following:

- Maksim Piskunov is a citizen and national of Russia whose six-year H-1B maximum will be hit on September 30, 2026. [Doc. No. 18 at ¶¶ 139, 141]. He is the beneficiary of a PERM application filed on November 17, 2023. [*Id.* at ¶142].

- Chanikya Sai Ram Gopisetty is a citizen and national of India who will hit his six-year maximum H-1B status on September 30, 2025. [*Id.* at ¶¶ 187, 189]. He is the beneficiary of a PERM application filed on January 22, 2024. [*Id.* at ¶ 190].

- Plaintiff Idris Syed[4] hit his six-year H-1B maximum on October 18, 2024. [*Id.* at ¶¶ 211, 213]. He is a beneficiary of a PERM application filed on November 3, 2023. [*Id.* at ¶ 214].

### 2. Effects Of Delayed PERM Applications

The DOL's data shows that a significant amount of PERM beneficiaries have H-1B visas. [Doc. No. 18 at ¶ 114]. These visas can only last six years. [*Id.*]. However, H-1B workers can get one-year extensions of their visas if their employer receives PERM approval before the beginning of their fifth year in H-1B status. [*Id.*]. Because the PERM process now takes approximately a year or more, these delays often prevent applicants with H-1B visas from receiving this extension. [*Id.*]. If an H-1B worker has an approved I-140 Immigrant Visa Petition,[5] they can get an indefinite extension of their H-1B while they wait for an immediately available immigrant visa. [*Id.* at ¶ 115]. However, a large majority of H-1B workers can only apply for an immigrant visa after DOL issues them a PERM. [*Id.*].

Additionally, the delays prevent beneficiaries from applying for adjustment of status when visas become immediately available. [*Id.* at ¶ 116]. This prevents beneficiaries from

---

[4] The Complaint states that Mr. Syed is a "citizen and national of United States." [Doc. No. 18 at ¶ 211]. This is likely an error.

[5] This form asks USCIS to classify a noncitizen as someone "who is eligible for an immigrant visa based on employment." USCIS, *Petition Filing and Processing Procedures for Form I-140*, Immigrant Petition for Alien Workers https://www.uscis.gov/forms/all-forms/petition-filing-and-processing-procedures-for-form-i-140-immigrant-petition-for-alien-workers.

acquiring lawful permanent residency and subsequently delays the required residency periods for naturalization. [*Id.*]. Without a PERM decision, beneficiaries may also have to leave the United States, causing potential family separation. [*Id.* at ¶ 282]. Delays can also negatively impact a beneficiary's potential for career advancement because employers are less likely to promote employees while their PERM is pending, since job requirements might change and "put at risk the PERM process and related immigrant visa application." [*Id.* at ¶ 117]. The culmination of these consequences may lead to substantial mental and emotional harm. [See *id.* at ¶¶ 162, 174, 186, 200, 223, 233]. Lastly, employers are also harmed by delays because they are "deprived of the consistent labor force for these highly skilled workers in a tight labor market." [*Id.* at ¶ 118].

## II. PROCEDURAL HISTORY

Mr. Krishna filed an action on January 30, 2024, as a sole plaintiff bringing an APA claim for unreasonable delay. [Doc. No. 1]. On April 15, 2024, Mr. Krishna filed a Motion for Summary Judgment. [Doc. No. 15]. On May 3, 2024, an Amended Complaint was filed, adding eight additional plaintiffs and bringing an additional claim for unlawful withholding under the APA. [Doc. No. 18]. On May 31, 2024, DOL filed a Motion to Dismiss, [Doc. No. 26], and on June 21, 2024, DOL filed a Cross-Motion for Summary Judgment, [Doc. No. 29]. On October 8, 2024, a motion hearing on all the instant motions was held. At that hearing, Plaintiffs conceded that their unlawful withholding claim is moot. [Doc. No. 44 at 19:20-23]. As such, the only remaining claim here is for unreasonable delay under the APA.

## I. LEGAL STANDARD

"Summary judgment is appropriate when the moving party shows that 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Joseph v. Lincare, Inc.*, 989 F.3d 147, 157 (1st Cir. 2021) (quoting Fed. R. Civ. P. 56(a)).

"A dispute is 'genuine' if the evidence is such that a reasonable jury could resolve the point in the favor of the non-moving party, and a fact is 'material' if it has the potential of affecting the outcome of the case." *Taite v. Bridgewater State Univ., Bd. of Trustees*, 999 F.3d 86, 93 (1st Cir. 2021) (cleaned up). Once a party properly supports a motion for summary judgment, the opposing party "bears the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe." *Lincare*, 989 F.3d at 157 (cleaned up).

In assessing whether a genuine dispute of material fact exists, courts "look to all of the record materials on file, including the pleadings, depositions, and affidavits," while "neither evaluat[ing] the credibility of witnesses nor weigh[ing] the evidence." *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014). The record must be examined, however, "in the light most favorable to the nonmovant[,] . . . drawing all reasonable inferences in that party's favor." *Lopez-Hernandez v. Terumo Puerto Rico LLC*, 64 F.4th 22, 28 (1st Cir. 2023). And the Court "proceed[s] with caution and restraint when considering summary judgment motions where, as here, issues of pretext, motive, and intent are in play." *Taite*, 999 F.3d at 93.

## II. ANALYSIS

### A. *TRAC* Factors

The APA requires federal administrative agencies to address matters presented to them within a reasonable time, 5 U.S.C. § 555(b), and instructs federal courts to "compel agency action unlawfully withheld or unreasonably delayed[.]" 5 U.S.C. § 706(1). In evaluating an unreasonable delay claim, courts look to the six-factor test articulated by the D.C. Circuit in *Telecommunications Rsch. & Action Ctr. v. F.C.C.*, 750 F.2d 70, 79 (D.C. Cir. 1984) ("*TRAC*" or "TRAC"), which was adopted by the First Circuit in *Towns of Wellesley, Concord & Norwood, Mass. v. FERC*, 829 F.2d 275, 277 (1st Cir. 1987), for claims of agency delay:

(1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed."

*TRAC*, 750 F.2d at 80 (cleaned up). Analysis of these factors involves a "fact intensive inquiry." *Novack v. Miller*, 727 F. Supp. 3d 70, 77 (D. Mass. 2024) (citing *V.U.C. v U.S. Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 218, 223 (D. Mass. 2021)). While these factors are intended to provide "useful guidance in assessing claims of agency delay," they "are not ironclad." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 317 (D.D.C. 2020) (citations omitted). "[E]ach case must be analyzed according to its own unique circumstances, as each will present its own slightly different set of factors to consider." *Id.* (cleaned up). Thus, their application usually should not be decided at the motion to dismiss stage. *Novack*, 727 F. Supp. 3d at 77; *see also Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1100 (D.C. Cir. 2003) ("Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court").

The Plaintiffs argue that the majority of the TRAC factors weigh in their favor. [*See* Doc. No. 18 at ¶¶ 251-307]. The DOL argues the contrary. [Doc. No. 27 at 7-13]. I find that Plaintiffs have not put forth sufficient evidence that would allow me to rule, as a matter of law, that the TRAC factors weigh in Plaintiffs' favor. Further, I find that the TRAC factors weigh in favor of DOL. To summarize, and as explained in more detail below, I find that: Under TRAC Factor One, the DOL follows a rule of reason. Under TRAC Factor Two, Congress has not set forth a

clear timeline or indication regarding the speed at which PERM applications must be completed. Under TRAC Factors Three and Five, Plaintiffs have not demonstrated sufficient, non-economic harm distinct from other beneficiaries awaiting PERM certifications. Under TRAC Factor Four, compelling expedited review of the remaining PERM applications will conflict with DOL's competing priorities, and I defer to the agency's decision-making regarding its approach to processing these PERM applications.

### 1. *TRAC* Factor One

The first TRAC factor weighs in favor of Defendant. "The rule of reason is the first and most important TRAC factor." 727 F. Supp. 3d at 77 (quoting *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008)). This factor considers whether an agency's response time is "governed by an identifiable rationale." *Id.* at 77-78 (quoting *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014), *cited in Dastagir v. Blinken*, 557 F. Supp. 3d 160, 165 (D.D.C. 2021)). Whether or not an agency abides by a rule of reason "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part . . . upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency." *Milligan*, 502 F. Supp. 3d at 317-318 (quoting *Mashpee Wampanoag Tribal Council, Inc.*, 336 F.3d at 1102) (alteration in original).

Plaintiffs argue that DOL does not follow its own proclaimed first-in, first-out processing method and does not have any policy that governs how long it takes to decide a PERM application. [Doc. No. 15-1 at ¶ 5; Doc. No. 15 at 5; *see* 69 Fed. Reg. at 77343 (explaining that DOL will process PERM applications "in the order in which they were filed")]. DOL concedes that it does not follow the first-in, first-out policy, [Doc. No. 31 at 2, ¶ 5], but objects to the

contention that it has no "rule of reason" by stating that it follows a "month processing method" whereby DOL posts the processing times for PERM applications on its public-facing website, which are updated monthly so the public is aware of the expected processing time. [Doc. No. 30 at 8-9].

Plaintiffs argue that "the month processing method is not a rule of reason because it is merely a description of the path a PERM application takes within DOL . . . the month processing method is only an *assignment* policy and not an adjudication policy." [Doc. No. 15 at 6]. Further, to the extent the month processing method is DOL's proclaimed rule of reason, Plaintiffs claim that DOL does not follow it. [*Id.* at 7]. In support of its summary judgment motion, Plaintiffs rely on, among other things, the deposition testimony of DOL's F.R.C.P. Rule 30(b)(6) designee David Pasternak (taken on March 4, 2024) and expert Dr. Jordan Ragusa, Associate Professor in the Department of Political Science at the College of Charleston (taken on April 5, 2024).[6]

Plaintiffs also rely on an expert report provided by Dr. Ragusa, which analyzes whether the DOL uses a "first in first out" adjudication pattern, and whether DOL "processes certain applications differently than others." [Doc. No. 15-2 at 267].[7] The report concludes that DOL does not follow a first in, first out rule, which DOL concedes, and finds that "22.4% of routine PERM cases from the same Submission Month are decided at least a month before or after the announced/mode Decision Month." [Doc. No. 15 at 7]. As such, "the average applicant can expect 114 cases submitted in a subsequent month to jump ahead of them in the queue order and

---

[6] Both depositions appear to have been taken in a different case before the U.S. District Court for the Northern District of Georgia (*Cardoso v. Su*, 23-cv-03629) and were taken before the filing of Plaintiffs' summary judgment motion in this matter on April 15, 2024. [*See* Doc. No. 34-2; Doc. No. 15-2 at 87].
[7] This report also appears to have been created for a different case, although there is no case caption provided with the report. [*See* Doc. No. 15-2 at 283 (describing that Dr. Ragusa had submitted an initial report on January 21, 2024, 5 days prior to the filing of the complaint in this matter)].

receive a quicker decision." [*Id.*]. Because, as Plaintiffs claim, DOL engages in this type of "line-jumping" and does not actually follow the month processing rule, DOL does not follow a rule of reason. Plaintiffs further claim that because DOL has not put forth their own expert or deposed Mr. Ragusa, that DOL has failed to put forth sufficient evidence to rebut Plaintiffs' evidence.[8]

I find that DOL's month processing method is a rule of reason. The OFLC has determined that month processing is "more efficient and creates more consistent results than a straight first-in/first-out processing method." [Doc. No. 30 at 9]. While processing times may vary, DOL cites to Mr. Pasternak's deposition to explain that the delays are "a combination of (1) rising caseload in the PERM program and (2) OFLC's responsibilities in administering other foreign labor certification programs in which the caseloads have increased even more and in which there are short statutory and regulatory deadlines for adjudication and funding constraints, OFLC's backlog of pending PERM applications—and the average processing times—generally continue to increase." [*Id.*]. DOL has also explained that while analysts work to reduce the applications of the current processing month, cases that were put on hold for audit review may be re-assigned once the contract analyst completes the audit review. [*Id.* at 9-10]. Once a federal analyst receives case assignments for the new month, they may continue working to close out the prior month's cases while beginning the new month. [*Id.* at 10]. In some instances, an analyst's assignment may include a group assignment consisting of all PERM applications filed by the same employer at any time during the processing month. [*Id.*]. Analysts are also responsible for "stragglers," which are applications "with a filing date earlier than the processing month, such as the approximately one thousand pending PERM applications still awaiting adjudication when a

---

[8] Plaintiffs' evidence from Dr. Ragusa appears to be from a different case. I am not persuaded that I should fault the DOL either for failing to depose Dr. Ragusa in *this* matter or for not providing a competing expert report.

new processing month is opened and assigned." [*Id.*]. Due to these changing circumstances, "[a] federal analyst may organize her assigned cases for the processing month in any way she wants to make processing easier and achieve daily production standards. Thus, all cases filed in the processing month are simultaneously assigned to analysts and are not necessarily processed in filing date order; 'anything that is in an active processing month can be issued at any time.'"[9] [*Id.* at 10]. DOL also has a long-standing policy to refrain from expediting the processing of PERM applications based on the circumstances of any individual employer or beneficiary, and does not have the authority or resources to verify the accuracy of a request to expedite. [*Id.* at 11]. DOL argues that its method of adjudicating PERM applications based on month of submission and without any preference to individual applications constitutes a rule of reason. [*Id.* at 12].

DOL also argues that at the time of its motion, each PERM application at issue had been pending for less than the published processing times. [*Id.* at 13]. As of this Court's decision, the DOL is processing PERM applications from September 2023. *See* https://flag.dol.gov/programs/perm (last visited January 31, 2025). It anticipates an average of 462 calendar days to process applications filed in December 2024. *Id.* Plaintiffs' applications have been pending since November 2023 and January 2024. *See, supra* Section I.B.1. As of this decision, Plaintiff Piskunov and Plaintiff Syed's applications have been pending for around 450-460 days, and Plaintiff Gopisetty's application has been pending for around 380 days. These applications appear to be within DOL's current processing times. *Id.*

---

[9] At the hearing, counsel for DOL explained that line jumping may be created when an officer decides to process, for example, two applications filed by the same employer on May 1 and May 30 respectively. An officer may decide to adjudicate both applications together to have consistent adjudication. Counsel explained that this could create the "line jumping" that Plaintiffs complain of. [Doc. No. 44 at 12:21-25, 13:1-9]. In any event, if, according to Dr. Ragusa, around 80% of PERM applications are decided within a month of the announced decision month, that seems to be a decent adherence to the month processing method. The method's imperfect implementation in practice does not make it unreasonable.

"The Court's determination that [month processing] is a rule of reason is, however, based on the policy's rationale, not on its efficacy." *Celebi v. Mayorkas*, 2024 WL 3744654, at *4 (D. Mass. Aug. 9, 2024); *see also Ctr. for Sci. in the Pub. Int. v. United States Food & Drug Admin.*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014) (requiring only that defendants provide a "rhyme or reason" for their policy and delay and holding that plaintiffs have not shown that time the agency took to respond approached an "egregious" standard). Plaintiffs have failed to put forth evidence that demonstrates that the DOL's processing times are *unreasonable* or egregious. *Anversa v. Partners Healthcare Sys., Inc.*, 835 F.3d 167, 178 (1st Cir. 2016) ("The duration of administrative proceedings, without more, cannot suffice to demonstrate that an agency's actions are unreasonable"). Given the nuances that impact the DOL's day to day tasks and projects, and the explanations provided by the DOL as to why processing times vary, it is prudent to defer to the agency's determination on how best to handle thousands of PERM applications in any given month. *Caswell v. Califano*, 583 F.2d 9, 15 (1st Cir. 1978) ("[C]ourts must normally defer to agency judgment to allow the evolution of procedures as need arise"); *Mashpee Wampanoag Tribal Council*, 336 F.3d at 1102 (whether delay is unreasonable "cannot be decided in the abstract, by reference to some number of months or years beyond which agency inaction is presumed to be unlawful, but will depend in large part ... upon the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency"); *Massachusetts v. E.P.A.*, 549 U.S. 497, 527 (2007) ("[A]n agency has broad discretion to choose how best to marshal its limited resources and personnel to carry out its delegated responsibilities") (listing illustrative cases).

Additionally, the fact that remaining Plaintiffs' applications are pending within the DOL's posted processing times demonstrates that the delay is not unreasonable. *Chuttani v. USCIS*,

2020 WL 7225995, at *4 (N.D. Tex. Dec. 8, 2020) ("The Court is reluctant to hold unreasonable any delay in adjudicating an immigration benefit application that's less than the upper limit of [the agency's] current estimated processing time for that particular application form and will not do so here"); *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017) (noting that a two-year delay "does not typically require judicial intervention"); *Ghadami v. U.S. Dep't of Homeland Sec.*, 2020 WL 1308376, at *8 (D.D.C. Mar. 19, 2020) ("Plaintiffs have summarily alleged that the twenty-five month delay is unreasonable, but many courts evaluating similar delays have declined to find a two-year period to be unreasonable as a matter of law." (cleaned up) (collecting cases)). For these reasons, TRAC Factor One leans in Defendant's favor.

## 2. *TRAC* Factor Two

The second TRAC factor likewise weighs in favor of Defendant. "Where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for th[e] rule of reason." *Am. Acad. of Pediatrics v. United States Food & Drug Admin.*, 330 F. Supp. 3d 657, 665 (D. Mass. 2018) (quoting *TRAC*, 750 F.2d at 80). "Absent a congressionally supplied yardstick, courts typically turn to case law as a guide." *Milligan*, 502 F. Supp. 3d at 318 (citing *Sarlak v. Pompeo*, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020)).

In the present case, Congress has not set out an explicit timetable or processing goal. However, DOL's 2004 final rule regarding PERM certifications "anticipate[d] an electronically filed application not selected for audit will have a computer-generated decision within 45 to 60 days of the date the application was initially filed." 69 Fed. Reg. at 77328 (second column). Plaintiffs argue that delaying PERM certification undermines Congress's intent to ensure that "there are not sufficient workers who are able, willing, qualified . . . at the time of application for

a visa." 8 U.S.C. § 1182(a)(5)(A)(i)(I). Prior to filing a PERM application, an employer must conduct a labor market test by advertising job postings for 30 days, and then waiting 30 days to see if anyone responds. *See generally* 20 C.F.R. § 656.17. The crux of Plaintiffs' argument is that if, for example, an employer conducted a labor market test in February 2020 certifying that there are no U.S. employees available, but DOL takes 397 days to certify PERM, then the labor market test results become stale. [Doc. No. 15 at 11]. This, Plaintiffs argue, defeats Congress's intent of "ensur[ing] DOL would protect the American labor force." [*Id.*; Doc. No. 18 at ¶ 267 (citing 8 U.S.C. § 1182(a)(5)(A)]. Plaintiffs argue that "at a minimum, Congress expected DOL to make a decision "in a timely enough fashion to ensure DOL would protect the American labor force." [Doc No. 18 at ¶ 267 (citing 8 U.S.C. § 1182(a)(5)(A)].

DOL responds by contending that the rule anticipating completion of applications within 45 to 60 days was an aspirational processing goal, and was merely DOL's interpretation of Congress's intent. [Doc. No. 30 at 13-14]; *Aziz v. Chadbourne*, 2007 WL 3024010, *2 n. 2 (D. Mass. 2007) (O'Toole, J.) (aspirational processing goal from Congress of six months did not create an enforceable standard "[b]ecause Congress stopped short of mandating a time limit"). Defendant argues that aspirational processing goals like the case at present are not binding requirements. *See, e.g.*, *Celebi v. Mayorkas*, 2024 WL 3744654 at *4 (D. Mass. Aug. 9, 2024); *Durrani v. Bitter*, 2024 WL 4228927 at *5 (D. Mass. Sept. 18, 2024). I agree. The preamble only noted that DOL "anticipate[d]" that computer-generated decisions would be complete within 45-60 days the application was initially filed. 69 Fed. Reg. at 77328 (second column). DOL has put forth evidence of the significant growth of PERM applications over the past few decades, the backlog this growth has created, and how the month processing method is intended to tackle this pace of adjudication. [*See* Doc. No. 30 at 14-15]. As circumstances, priorities, and resources

have changed over the past 20 years, it is unsurprising if 45 to 60 days is no longer an attainable goal. For these reasons, TRAC Factor Two leans in favor of Defendant.[10] *See Mexichem Specialty Resins, Inc. v. E.P.A.*, 787 F.3d 544, 555 (D.C. Cir. 2015) (cleaned up) ("[a]bsent a precise statutory timetable or other factors counseling expeditious action, an agency's control over the timetable is entitled to considerable deference").

### 3. *TRAC* Factors Three & Five

The Third and Fifth TRAC Factors are often considered together in order to assess "the interests prejudiced by delay, including the delay's effect on human health and welfare." *Durrani*, 2024 WL 4228927 at *5 (cleaned up). Plaintiffs contend that the delays in their PERM adjudication harm them for two reasons.

First, Plaintiffs argue that because unapproved PERM certifications affect their immigration status in the United States, Plaintiffs' health and welfare is negatively impacted by the potential loss of employment, loss of Plaintiffs' ability to remain in the U.S. with work authorization, potential family separation, and the mental and emotional turmoil that can result from the delays. [Doc. No. 15 at 13-14]. Plaintiffs cite to Mr. Pasternak's deposition testimony that DOL does not consider the convenience or necessity of petitioning companies or beneficiary employees when adjudicating applications. [*Id.* at 16]. Plaintiffs also point to an internal email from Mr. Pasternak acknowledging that "[h]aving to uproot your life and move halfway across the world for an indefinite period of time is a harm to the worker." [Doc. No. 34 at 6]. DOL responds that Plaintiffs' harms are purely economic and insufficient to satisfy these TRAC Factors. [Doc. No. 30 at 16].

---

[10] Plaintiffs' argument regarding the staleness of the labor market test is a reach. If over 397 days, the labor market rebounds, a rational employer may presumably hire a domestic employee. Even if the employer does not hire a domestic employee, there is no harm to the statutory purpose caused by the delay because absent the delay, the employee's PERM application would have been adjudicated already.

I am hesitant to hold that Plaintiffs' harm is purely economic. There may very well be harm to an individual's health and welfare for several reasons. Delays in obtaining certification that will lead to important immigration benefits can cause uncertainty that prevents a beneficiary from planning their life and can cause extreme stress and mental anguish. Delays can lead to unemployment, stunt career advancement, cause family separation, and may prevent receipt of important health and educational benefits. While the court is sympathetic of these harms, Plaintiffs have not put forth sufficient evidence of harm they have experienced distinct from others in the PERM queue that warrant the relief they seek. *Pushkar v. Blinken*, 2021 WL 4318116, at *9 (D.D.C. Sept. 23, 2021) ("[I]t is not just [plaintiff's] 'health and welfare' that the Court must consider, but also that of others similarly-situated"). In their briefing, Plaintiffs only put forth particularized evidence as to Mr. Krishna. Plaintiffs argued that Mr. Krishna was harmed by the PERM processing delay because he hit his 6-year H-1B cap and lost his right to live and work in the United States. [Doc. No. 15 at 14]. Had his PERM certification been timely, he would have been entitled to indefinite extensions of his H-1B status. [*Id.*]. Fortunately, Mr. Krishna has received his PERM certification, and Plaintiffs have not provided any evidence of harm to the health and welfare of the remaining Plaintiffs.[11] *Celebi v. Mayorkas*, 2024 WL 3744654 at *5 (D. Mass Aug. 9, 2024) ("While the Court acknowledges the difficulties posed by plaintiff's pending status, he has failed to allege facts that set him apart from the hundreds of thousands of other asylum seekers"); *V.U.C. v. United States Citizenship & Immigr. Servs.*, 557 F. Supp. 3d 218, 223 (D. Mass. 2021) ("[W]hile plaintiffs' welfare interests are weighty (TRAC factors three and five), they are no more so than those of all U-visa petitioners awaiting waitlist adjudication").

---

[11] Indeed, the agency has already stated that it does not have the authority or resources to determine the accuracy of a request to expedite as to any individual employer or beneficiary. [Doc. No. 30 at 11].

Second, Plaintiffs argue that PERM certification delays impact their subsequent ability to apply for permanent residency or maintain their lawful nonimmigrant status. [Doc. No. 15 at 14-15]. Defendant responds that an employer may seek indefinite, one-year extensions beyond the statutory cap where a PERM application has been pending for at least 365 days. *See* 8 C.F.R. § 214.2(h)(13)(iii)(D); *see also* American Competitiveness in the Twenty-First Century Act of 2000, Pub. Law. 106-313, § 106, 114 Stat. 1251 (set out as note to 8 U.S.C. § 1184). DOL argues that it has no control over when employers choose to file PERM applications. I agree. DOL publishes its processing times on its website, which employers can use to anticipate how long a PERM application will take to be decided and may allow them to timely file a PERM application to avoid any delays and avoid expiration of a beneficiary's H-1B visa. For these reasons, TRAC Factors Three and Five weigh in Defendant's favor.

### 4. *TRAC* Factor Four

The fourth TRAC factor weighs heavily in favor of Defendant, as it considers the "importance of competing priorities in assessing the reasonableness of an administrative delay." *Durrani*, 2024 WL 4228927 at *5 (quoting *Mashpee Wampanoag Tribal Council, Inc*., 336 F.3d at 1100, *cited in Palakuru v. Renaud*, 521 F. Supp. 3d 46, 52 (D.D.C. 2021)). This fourth factor carries great weight "because courts have no basis for reordering agency priorities." *Durrani*, 2024 WL 4228927 at *5 (citation omitted). Indeed, courts have often "refus[ed] to grant relief to petitioners when all factors other than the fourth favored the petitioner[s]." *Id.* (citation omitted). As such, courts consistently decline to move plaintiffs to the front of the line, even when the rest of the factors favored the plaintiffs, if doing so would push all others back one space, thus producing "no net gain." *Id.* (citation omitted).

The remaining Plaintiffs insist that compelling DOL to make expedited PERM decisions on their behalf will have no impact on any higher or competing priorities of the DOL, given its resources. [Doc. No. 15 at 8]. Plaintiffs present the following evidence in support of this contention:

- A collective bargaining agreement for federal employes providing a daily quota of 35-42 PERM applications per day.

- Deposition testimony stating that employees can do up to 55 applications per day.

- A productivity projection chart compiled by Plaintiffs based on data provided in Mr. Pasternak's deposition testimony, listing the number of PERM applications that can be complete over 239 workdays in a year when 12 full time employees and 6 flex employees are working on those applications.

- Because PERM applications are decided by a team dedicated solely to PERM adjudications, additional work for that team would not impact other responsibilities that the OFLC has in administering the operations of other programs.

[Doc. No. 34 at 7; Doc. No. 15 at 8-9]. Plaintiffs further argue that because DOL already engages in "line jumping," moving them to the front of the line would not have any impact on DOL's processing methodology. [Doc. No. 15 at 10].

Defendant responds that PERM adjudication is indeed impacted by an "increasing volume of applications, competing priorities, and resource constraints." [Doc. No. 30 at 19]. While Defendant does not dispute the budget figures contained in Plaintiffs' Amended Complaint, [Doc. No. 18 at ¶ 96], DOL contends that Plaintiffs do not account for the OFLC's other responsibilities and how its allocation of its resources is spread across multiple programs. [Doc. No. 30 at 19]. DOL further contends that Plaintiffs cannot show that their applications have been processed differently than others. [*Id.*] Rather, Plaintiffs are seeking preferential treatment in having their applications moved to the front of the line, which would move all other applicants in that processing month back. [*Id.*]. I agree.

While DOL concededly does not follow any "line" or "first in, first out" method of processing, DOL has presented sufficient evidence to demonstrate that it follows a month processing method. In many instances, some applications may be decided one month earlier or one month after the current processing month. This occurs based on the individual adjudicator's decision as to how to decide certain applications. For instance, this may happen due to stragglers or because the adjudicator decided to adjudicate applications filed by the same employer and group them together. In any event, these decisions are made pursuant to DOL's "unique—and authoritative—position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way." *In re Barr Laboratories, Inc.*, 930 F.2d at 76.

I decline to make individualized decisions regarding which litigants should be permitted to cut administrative lines, especially where DOL itself does not have the authority to do so. [*See* Doc. No. 30 at 20 ("Plaintiffs' demands are at odds with DOL's long-standing policy against expediting the processing of PERM applications based on an employer or its foreign beneficiary's particular circumstances")]; see *also Celebi*, 2024 WL 3744654, at *5 ("To allow plaintiff's request for a judicial remedy would be arbitrary and would incentivize and reward litigation"). Absent any evidence that Plaintiffs are in exceptional or unique circumstances as compared to the thousands of other applicants awaiting a decision, *V.U.C.*, 557 F. Supp. 3d at 224, I find that TRAC factor four weighs heavily in DOL's favor and I decline to extend Plaintiffs the relief they request. *See YER USA, Inc. v. Walsh*, 2022 WL 1715959, at *1 (N.D. Ga. Apr. 20, 2022) ("[Moving] YER USA, Inc.'s PERM application to the front of the line while pushing back the applications of other employers in the queue, ultimately creating an incentive to use litigation in order to secure expedited processing. Such an outcome would seriously interfere with the agency's processes. I find that DOL's modified first-in-first-out processing method for

PERM applications is not unreasonable considering the adjudicatory function the agency performs with respect to these applications"). For these reasons, TRAC Factor Four weighs in Defendant's favor.

### 5. *TRAC* Factor Six

Plaintiffs' Amended Complaint does not allege any impropriety on the part of DOL.[12] As such, I need not address this factor.

## III. CONCLUSION

I understand Plaintiffs' frustration caused by the length of time it has taken for DOL to process their PERM certifications. The uncertainty caused by these delays can surely be stressful and my decision is not intended to diminish the harms Plaintiffs suffered by these delays. Nevertheless, Plaintiffs have not shown that these delays are unreasonable.[13] For the reasons above, Plaintiffs' Motion for Summary Judgment is <u>DENIED</u>, Defendants' Cross-Motion for Summary Judgment is <u>GRANTED</u>, and Defendant's Motion to Dismiss is <u>DENIED</u> as moot.

**SO ORDERED**.

/s/ Myong J. Joun
United States District Judge

---

[12] Plaintiffs do not allege impropriety in their Amended Complaint, and only address it briefly in their Response to Defendants' Cross-Motion for Summary Judgment and Reply in Support of Plaintiffs' Motion for Summary Judgment. [Doc. No. 34 at 9]. Because the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed," I decline to address this factor at this stage. *TRAC* 750 F.2d at 80.

[13] The Court acknowledges receipt of Plaintiffs' Notices of Supplemental Evidence, [Doc. Nos. 42, 46] and Defendant's Notices of Administrative Developments, [Doc. Nos. 43 and 47].