

# BARNSTABLE POLICE DEPARTMENT
## POLICY AND PROCEDURE 501
### RESPONSE TO CALLS

| | |
|---|---|
| Date of Issue: 03/22/2004 | Effective Date: 04/29/2010 |
| Revised: 05/27/2005; 03/16/2009; 03/29/10 | |

**Accreditation Standards: 41.2.1; 41.2.4; 81.2.3; 81.2.4 a,e,f,g; 81.2.7; 81.2.14**

**1.0 Background**

The response the Department commits to a call for service varies due to the individual requirements of each incident. The number of officers initially sent on a call for service and the manner in which they respond will change according to the nature and severity of the call. This is necessary to ensure the safety of the general public and the officers.

This policy provides personnel with guidelines as to the degree of response and the number of officers to be assigned to a call for service. It also provides guidelines on the notification to outside agencies in emergency situations.

**2.0 Policy**

It is the policy of the Barnstable Police Department that personnel appropriately evaluate the urgency of a police response to a given situation, assign adequate staff to deal with the situation, and respond in an appropriate manner.

A field response to any type of call requires that the assigned officers utilize the shortest, safest route of travel, and that vehicles are operated with due care and in accordance with all local and state traffic regulations and laws.

It is understood that unusual circumstances may alter normal and expected responses. In such circumstances, Department members must use their training, experience and common sense to handle the situation appropriately.

Field units responding to calls should be attentive to communications, as situations may quickly become more or less serious.

**3.0 MGL**

All officers operating a Department vehicle are subject to MGL c.89 s.7B, which requires that:

"The driver of a…police [vehicle]…shall be subject to the provisions of any statute, rule, regulation, ordinance or by-law relating to the operation or parking of vehicles, except that…in an emergency and while in performance of a public duty…[he/she] may drive such vehicle at a speed in excess of the applicable speed limit if he exercises caution and due regard under the circumstances for the safety of persons and property, and may drive such vehicle through an intersection of ways contrary to any traffic signs or signals regulating traffic at such intersection if he first brings such vehicle to a full stop and then proceeds with caution and due regard for the safety of persons and property, unless otherwise directed by a police officer regulating traffic at such intersection.…"

BPD 000255

| | |
|---|---|
| **4.0 Definition** | For this policy, the following definition is applicable: |

**Dispatch**

Dispatch refers to the non-supervisory Department members, sworn and non-sworn, assigned to or working in the Department's telecommunications center.

| | |
|---|---|
| **5.0 Communications** *81.2.4 a* | Department personnel assigned to field duty will report to Dispatch all contact with the public when safety is a concern. Such contacts shall include, but are not limited to: |

- Motor vehicle stops
- Field interviews
- Building searches
- Group disturbances, and/or
- Other situations that may require assistance.

The preferred method of contact is via radio, which will provide all on-air staff with incident information, but personnel may use other communications devices, such as cell phones and land-line phones, as necessary.

| | |
|---|---|
| **6.0 Recording Information** *81.2.3 a-j* | The following information shall be obtained, if possible, and entered into the CAD System whenever a request for service is received, whether by phone, letter, in person, or when an activity is initiated by field officers: |

- Name, address and call-back number of complainant
- Type and location of incident reported
- Identities of officers assigned as primary and backup
- Additional support units dispatched, and
- Disposition and/or status of incidents reported.

The CAD System will automatically, upon entering an incident, record the incident number, date and time of request, time of dispatch, time of officer arrival, and time of officer's return to service

| | |
|---|---|
| **7.0 Determining Responses** *81.2.4 e* | It shall be the responsibility of Dispatch or any other personnel taking a call to obtain sufficient information from the caller to determine the severity and degree of response needed for that call. Call-takers are expected to elicit as much information as possible from the caller to enhance the safety of the responding officers and assist in anticipating conditions to be encountered at the scene. |

Dispatch will notify callers of the Department's response, including any direct services to be provided, and/or any referrals to other agencies. Dispatch will also notify callers if a police response will be unduly delayed.

The following additional criteria will determine Department responses:

BPD 000256

| Step | Action |
|---|---|
| 1 | Dispatch will perform checks of previous calls at an address and on any parties known to be involved in the incident. |
| 2 | The number of officers assigned to a call will normally be left to the judgment of Dispatch, subject to the direction of the Watch/Shift Commander. A general guideline will be that at least two officers will be assigned to a call where Dispatch determines that there is a significant potential for officer safety to be compromised. |
| 3 | Patrol Supervisors also have the responsibility and authority, at their discretion, to determine the number of officers necessary for a particular call. |
| 4 | Responding officers shall be responsible for selecting the appropriate response level. If an officer does not feel that he/she has sufficient information to make a correct determination in the response level, he/she shall seek the guidance of the Watch Commander, through Dispatch. |
| 5 | Responding officers must remember they have a responsibility to ensure that their actions do not create a greater public hazard than that represented by the incident that initiated their response. |

**8.0**
**Patrol**
**Supervisor**
**Responses**
*81.2.4 f*

Patrol Supervisors are responsible for the operations of all officers assigned to field duties on their shift and ensuring that the appropriate response is dispatched to every call for service.

They shall respond to any call where they feel they are in a position to impart any unique or prior knowledge concerning a person, location or call for service, or where the issue of officer safety arises. Command at any incident shall follow the requirements of *Policy & Procedure 108 "Incident Command System."*

In cases of simultaneous or multiple incidents that require the presence of the Patrol Supervisor, he/she shall respond to the incidents as he/she, based on his/her training and experience, believes is appropriate.

**9.0**
**Categories of**
**Calls**

Calls for service will be prioritized and placed in an appropriate service level. These service levels serve as guides for Dispatch when assigning calls and for officers regarding the manner in which they respond.

The service levels are:
- Priority One    (Emergency calls)
- Priority Two    (Urgent calls)
- Priority Three  (Routine calls)
- Priority Four   (Dispatch-Resolved calls)

BPD 000257

**9.1**
**Priority One**
**(Emergency)**
**Calls**

Priority One (Emergency) calls require immediate response from the Department. They are critical in nature and will usually involve situations where there is an actual danger of serious injury or death.

Conditions that may define a Priority One response are:
- Any imminent threat to life or the danger of serious physical injury
- Any serious felony or violent misdemeanor that has just occurred and reason exists to believe the suspect is still in the area
- Any imminent danger of major property damage
- Any incident that involves exigent or unique circumstances that demands an immediate police response, or
- An officer in trouble call or any request from an officer for an emergency response.

A minimum of two officers shall be dispatched to Priority One calls.

Officers responding to Priority One calls will use both emergency lights and siren, except when doing so would eliminate the element of surprise desired when responding to certain types of crimes in progress. If emergency lights and siren are not in use, officers will utilize safe driving techniques in responding to the incident.

Other units on duty should immediately deploy themselves to a suitable location in case their assistance is required.

---

**9.2**
**Priority Two**
**(Urgent)**
**Calls**

Priority Two (Urgent) calls require a quick response, but are not so critical that they could be termed an emergency.

Conditions that may define a Priority Two response are:
- Any incident that may represent a significant threat to life and property
- A felony that has occurred without injury and the suspect has fled the area
- An in-progress incident that may be classified as a felony or serious misdemeanor
- Any incident that represents a significant hazard to the flow of traffic
- An officer's call for non-emergency assistance (i.e. back-up unit, potential but not present problem), or
- Officers with a prisoner in custody and requesting transport (unless special circumstances dictate otherwise).

Priority Two calls generally require at least two officers to be dispatched.

A Priority Two response is accomplished by responding directly to the assignment without unnecessary delay. This type of call has flexibility in the manner of response (i.e. emergency lights with or without siren).

---

BPD 000258

**9.3**
**Priority Three**
**(Routine)**
**Calls**

Priority Three (Routine) calls are those that require the response of a Department field unit, but which do not require an immediate arrival, or calls that may be handled by the Alternative Reports Officer, per the requirements of *Policy & Procedure 905 "Alternative Reporting Procedures."*

Priority Three responses may include:
- A routine call for service
- A request to take a report, or
- The transport of prisoners.

Priority Three calls usually require that only one officer be initially assigned, unless it is necessary for safety purposes to assign more.

Priority Three responses made by field units typically involve no emergency lights or siren and are made at normal traffic speed.

**9.4**
**Priority Four**
**(Dispatch-**
**Resolved) Calls**

Priority Four (Dispatch-Resolved) calls are of several types:
- Incidents that do not require a Barnstable Police Department response
- Calls that request information only
- Calls that request police service but are of a minor nature, and do not require an officer to respond or an incident report; these usually require only a note in the police log or CAD narrative section and no formal report; or
- Calls that require a report be filed in regards to an incident but are non-emergency situations that do not require an officer's presence at the scene.

Department members assigned to Dispatch should typically handle Priority Four calls without the assistance of field personnel.

Calls that require Dispatch personnel to complete a report shall follow the procedures described in *Policy and Procedure 905 "Alternative Reporting Procedures."*

**10.0**
**Officer**
**Assistance Calls**
*81.2.4 g*

If field personnel request assistance, either via an activated emergency alarm ("man down") or a verbal request for back up, available area units should:

| Step | Action |
|------|--------|
| 1 | Begin responding to the call. |
| 2 | Notify Dispatch that they are responding and indicate their location. |
| 3 | Continue their response at the discretion of Dispatch, the Watch Commander and/or the Patrol Supervisor. |
| 4 | Closely monitor their radio in case the situation changes (i.e. officer in trouble downgraded to a backup), so their response can be appropriately modified. |

| | | |
|---|---|---|
| 5 | The first responding unit to arrive at the scene will provide a status report, allowing Dispatch and other units to adjust their response accordingly. |
| 6 | Any responding units called off by either Dispatch or a supervisor will immediately discontinue any emergency operation. |

**11.0**
**First**
**Responder**
**Notifications**
*41.2.4*
*81.2.5 f*

Department members are often involved in emergency situations that require the assistance of responders from outside agencies. These include fire departments, the Department of Public Works, utility companies, medical examiner, etc.

Usually, responding officers will determine the service needs of an incident upon arrival at the scene, and then request that Dispatch contact the appropriate service agencies. In some instances, Dispatch may receive initial information from an outside caller that dictates notification of outside agencies prior to officer arrival at the scene.

Dispatch personnel will contact required outside agencies as soon as possible. A listing of contact numbers for emergency service agencies and other organizations providing necessary services is maintained in the records management system.

The following guidelines provide some circumstances requiring outside agency notifications, and the procedures for such notifications:

| Circumstance | Agency | Procedure |
|---|---|---|
| Alarm response requiring caretaker (break-in, damage to building, etc) | Various alarm companies | • Dispatch notifies appropriate alarm service provider of need for caretaker response to scene<br>• Alarm service notifies caretaker and advises Dispatch of ETA |
| Death (sudden, unattended, etc) | Medical Examiner | • Appropriate on-scene personnel contact Medical Examiner's office for next steps |
| Electrical lines (downed, live wires, etc) | NSTAR | • Dispatch notifies NSTAR |
| Fire (building, vehicle, wildfire, etc) | Various fire districts | • Dispatch notifies the appropriate fire district |
| Gas Leaks (broken pipes, etc) | National Grid | • Dispatch notifies National Grid |
| Medical assistance (injury, illness, examination request, etc) | Various fire districts | • Dispatch notifies the appropriate fire district via landline for EMS service |
| Roadway hazards (defects, obstructions, spills) | Town/state DPW | • Dispatch notifies the appropriate highway department |
| Telephone pole repairs | Verizon | • Dispatch notifies the Verizon service center via landline |
| Towing services (disabled MV, MV collisions, etc) | On-call tow service | • Dispatch notifies the on-call tow service via landline |

**POLICY & PROCEDURE 501**
**RESPONSE TO CALLS**

6

| Water main breaks | Various water departments | • Dispatch notifies the appropriate water service (town or district) via landline |
|---|---|---|

**12.0 Referrals**

Often Dispatch personnel find that calls for assistance properly fall within the jurisdiction of an outside agency. In such cases, the reporting party will be notified by Dispatch of the need to refer their call to another agency and, if possible, the call will be transferred by Dispatch to the appropriate agency.

A list of applicable outside agencies will be posted in the Communications Center.

The Information Systems Office will maintain an updated list of referral agencies within the Department's phone system and will provide members with appropriate procedures for properly transferring calls.



| **BARNSTABLE POLICE DEPARTMENT** |
| **POLICY AND PROCEDURE 502** |
| **RESPONSE TO RESISTANCE** |

| Original Date of Issue: 11/17/2003 Revised: 03/10/2006; 03/16/2007; 08/07/2008; 05/07/2014 | Effective Date: 07/25/2014 |
| --- | --- |
| Accreditation Standards: 1.2.2; 1.3.1-1.3.8; 1.3.13 | |

**1.0 Background**

The Barnstable Police Department places the highest value on the lives and safety of its officers and the public. Officers are confronted daily with situations requiring a response to resistive or violent behavior to effect an arrest or ensure public safety.

The objective of a response to resistance is to maintain and/or re-establish control over a situation.

The degree of force used is dependent upon the facts and circumstances surrounding the situation an officer faces.

**2.0 Policy**
*1.2.2*
*1.3.1*
*1.3.4*

All personnel of the Barnstable Police Department will use reasonable force when force is used to accomplish lawful objectives. Such force is used to control and terminate unlawful resistance, and to prevent or cease any attack against the officer(s) or another person. This includes the use of deadly and/or less lethal force with lethal and less lethal weapons.

The use of any weapon, lethal or less lethal, while performing departmental duties is restricted to sworn personnel.

No policy or procedure for deadly or less lethal force can cover every situation officers may encounter. Officers are expected to respond to all situations decisively and use proper judgment, restraint, and competence, whatever the level of force required.

BPD 000262

**3.0**
**Definitions**

For this policy, the following definitions apply:

**Active Resistance**
Advanced level of non-compliance, where a subject's resistance is increased in scope or intensity, and includes energy-enhanced and physical or mechanical defiance.

**Appropriate Medical Aid**
Situationally-dependent and may include increased observation to detect obvious changes in condition, flushing chemical agents from the eyes, applying first aid, evaluation by EMS personnel, or for more serious or life-threatening incidents, immediate aid by medical professionals.

**Deadly Force**
The degree of force likely to result in death or serious physical injury.

**Less Lethal Force**
Force that is not likely to cause serious physical harm or death. It includes the use of approved defensive/physical tactics, chemical substances, Electronic Control Devices (ECD), the baton, Specialty Impact Munitions (SIM) and the K-9.

**Passive Resistance**
The preliminary level of non-compliance, where a subject, although non-compliant, offers no physical or mechanical energy enhancement toward the resistant effort.

**Reasonable Belief**
The known facts and circumstances that would cause an ordinary and prudent person to act or think in a similar way under similar circumstances.

**Serious Physical Injury**
Injury that creates a substantial risk of death or serious permanent disfigurement, or results in long-term loss or impairment of any body part or organ.

---

**4.0**
**Parameters for the Use of Less Lethal Force**
*1.2.2*
*1.3.4*

The application of less lethal force by personnel in the performance of duty is:

- For self-defense or the defense of another against unlawful violence or attack to his/her person or property
- To overcome resistance to arrest, to conduct searches and seizures, and to prevent escapes from custody
- To preserve the peace, prevent the commission of offenses, or prevent suicide, or self-inflicted injury, or
- To bring an unlawful situation safely and effectively under control.

---

BPD 000263

**5.0**
**Less Lethal**
**Use of Force**
**Options**

The less lethal force options are:

- **Presence/Appearance**
  The image that an officer conveys may influence the outcome of the situation. The officer should be neat and well-groomed, be mindful of body language, and maintain the highest level of vigilance.

- **Verbalization**
  Verbalization is verbal persuasion used by an officer attempting to defuse a situation, or verbal commands to a subject. Verbalization is present in all subsequent force options.

- **Aerosol Control Spray/Oleoresin Capsicum (OC)**
  A Department issued or approved aerosol substance used to overcome resistance or an assault, deter riotous or violent behavior, or deal with armed and/or dangerous subjects in a barricaded situation.

- **Electronic Control Device (ECD/Taser)**
  A Department issued or approved electronic weapon, which conducts energy designed to affect the sensory and motor functions of the central nervous system of an assaultive or resisting subject. (Refer to *Procedure 502.1 "Electronic Control Devices"* for specific guidelines on use.)

- **Chemical/OC Munitions**
  OC, CN, CS gas devices and projectiles used to disperse violent, riotous crowds or deal with armed, dangerous, or barricaded subjects.

- **Physical Strength/Weaponless Hand Control**
  The level of force normally required to overcome resistance that is not intended as an act of overt aggression toward the officer when an individual fails to comply with verbal instructions.

- **Restraint Techniques**
  Those techniques used to take down and/or control subjects who are exhibiting active resistance. These techniques may be applied by using the hands or the baton, as trained.

- **Impact Weapons/Defensive Strikes**
  Includes the use of the baton as an impact weapon, approved striking techniques to defend from the threat of serious physical injury, and Specialty Impact Munitions (SIM/beanbag) used as extended-range impact devices. (Refer to *Procedure 502.2 "Use of Specialty Impact Munitions"* for specific guidelines on use.)

- **Canine**
  A trained police dog utilized in conjunction with its handler, as per *Policy and Procedure 509 "Police Canines"*.

BPD 000264

**5.1**
**Tools of**
**Immediate**
**Means**

The Department issues specific equipment to be carried and used by officers as weapons and force devices. The Department also recognizes that an officer may be subject to a sudden assault that will not allow for the immediate use of these items.

In such cases, an officer may use a tool or object that is in-hand or readily accessible (i.e. flashlight, radio, ticket book, handcuffs) to fend off the immediate assault. However, as soon as is reasonable and practical, the officer shall transition from the tool of immediate means to Department-approved equipment to resolve the situation.

**6.0**
**Parameters for**
**the use of**
**Deadly Force**
*1.3.2*

Officers shall not use deadly force except in situations where the officer has a reasonable belief that the action is needed to protect himself/herself or another person from imminent death or serious physical injury.

Officers may discharge their firearms only when doing so will not unreasonably endanger innocent persons.

Officers encountering a situation where the use of deadly force is necessary should, if circumstances and safety considerations allow, issue a verbal warning first and identify themselves as a police officer.

Officers shall not use deadly force to apprehend a fleeing felon unless:
• The felony involved the use or threatened use of deadly force, and
• The escape of the felon would result in imminent death or serious physical injury to the officer, or another, if apprehension were delayed.

Officers shall not use deadly force in an attempt to threaten or subdue persons whose actions are only destructive of property or harmful to themselves.

Officers shall not discharge their firearms at a moving vehicle, unless there is an imminent threat of death or serious injury to the officer or others.

**7.0**
**Continuum of**
**Force**

Each encounter an officer is involved in should be viewed as a dynamic and evolving event. This requires the officer to continuously monitor both the situation and the actions of the subject(s) involved. Based on the officer's assessments of the perceived subject actions and situation, he/she will determine to escalate, de-escalate, or maintain the current force options.

The following model provides basic subject classifications and potential officer responses. A subject may fit into more than one classification at a given time, and it is up to the officer to reasonably apply the necessary and appropriate force options based on the situation faced at the time. The potential responses listed may not include all force options open to the officer at a point in time, based on his/her level of training and available equipment.

BPD 000265

| Classification | Response Options |
|---|---|
| **Compliant subject** | This person complies with officer requests/orders and offers no resistance either verbal or physical. The vast majority of persons an officer will encounter are in this classification.<br><br>**Potential responses**: Communication skills; physical contact to guide subject; or compliant handcuffing techniques. |
| **Passive Resistant subject** | The preliminary level of non-compliance. While the subject does not comply with officer requests/orders and may issue verbal non-compliance, there is no physical resistance or flight.<br><br>An example is a person that goes limp or lies on the ground, but offers no resistance to being handcuffed or moved by officers.<br><br>**Potential response**: Empty hand contact controls to guide or remove subject from an area and handcuff. |
| **Active Resistant subject** | Non-compliance now includes physical effort or flight by the subject that is directed at avoiding the arrest, not at assaulting the officer.<br><br>Examples include flight by either foot or conveyance, laying on ground and locking arms under body, holding on to other persons or objects, or tensing up, twisting, or pulling away from the officer.<br><br>**Potential responses**: Empty hand techniques to gain control (wrist-lock, arm-bar); distraction techniques (joint manipulation, pressure points); chemical irritants (OC, CS, CN); ECD (drive-stun, probe deployment, spark test); or baton (lever-lock and arm-lock only). |
| **Assaultive / Bodily harm** | The officer perceives that a subject is preparing to assault, is currently assaulting, or has assaulted the officer or another person with force that will **not** cause serious injury or death.<br><br>Examples include empty hand assaults such as pushing, shoving, punching, wrestling or grasping.<br><br>**Potential responses**: Defensive tactics designed to cease the non-lethal assault such as ECD (probe deployment); empty hand strikes (elbow, knee, head-butt, kicks, punches, blocks); or less-lethal weapons (baton strikes and blocks, bean-bag gun). |

BPD 000266

| Assaultive / Serious Bodily Harm or Death | The officer perceives that an assault on him/herself or another has risen, or is about to rise, to a level with the potential to cause serious injury or death. |
|---|---|
| | Examples include empty hand attacker trying to disarm an officer, strangling, and assaults with weapons. |
| | **Potential responses**: While a Department-issued or approved firearm is the *preferred response* in a lethal force encounter, it is recognized that a situation may arise where an officer has been disarmed or is caught unaware by a sudden and violent assault. If such occurs, the following options should also be considered: less-lethal weapons (baton strikes to red target areas, bean-bag gun with modified points of aim to upper torso/head); or empty hand strikes or holds to lethal target areas. |

**8.0**
**Warning Shots**
*1.3.3*

Officers shall not fire warning shots.

**9.0**
**Medical Aid**
*1.3.5*

Appropriate medical aid shall be provided to individuals after the use of lethal or less lethal weapons, less lethal force, or other use of force incidents, including weaponless, as defined by this policy.

Particular care should be taken if the subject:

- Is unconscious or has been unconscious
- Sustained visible injury as a result of the use of force
- Complains of injury or requests medical attention, or
- As directed by other Department Policies or Procedures.

All medical aid provided shall be noted in the officer's report. Photographs should be taken to document the existence or absence of injuries.

BPD 000267

**10.0**
**Duty to Report**
**Use of Weapon**
**or Physical**
**Force**
*1.3.6*

Department personnel shall submit a written report to their supervisor whenever they:

- Apply force through the use of any lethal or less lethal weapon
- Apply weaponless physical force involving the use of striking techniques or utilize a restraint technique on an actively resisting person
- Take actions that result in or are alleged to have resulted in an injury or the death to another person, or
- Discharge, deliberately or unintentionally, a firearm, whether on or off duty, other than for training, ballistic identification, weapon maintenance, legal hunting, legitimate firearms competition, or target practice at an approved range.

In addition to submitting an incident report, officers shall also submit a *Firearms Discharge Report* or *Response To Resistance Report,* as appropriate.

These reports shall be reviewed and signed by the shift supervisor, then submitted to the Field Services Bureau Commander.

---

**11.0**
**Review of**
**Reports**
*1.3.7*
*1.3.13*

Copies of all reports concerning the use of weapons or the application of physical force shall be forwarded to the Shift Commander. He/she shall review the incident to determine whether the use of force was consistent with Department policy, Department training, officer safety, and public safety. In cases where the Shift Commander is involved in the incident under review, the Field Services Bureau Commander will assign review responsibilities to a supervisor not involved in the incident.

All *Firearm Discharge Reports* and *Response to Resistance Reports* shall also be forwarded to the Training Supervisor for review.

The Field Services Bureau Commander will conduct an annual analysis of these reports.

These reports shall not be given to the media except as authorized by the Chief of Police.

---

BPD 000268

**12.0 Investigation When Use of Force Results in a Death or Serious Injury**

Whenever a Department employee, acting in an official capacity, performs actions or uses force that results in death or serious physical injury, the Watch Commander shall immediately notify the following:

- Chief of Police or his/her designee
- Field Services Bureau Commander
- Shift Commander, and
- Criminal Investigation Unit Supervisor.

The Chief of Police will assign a Command Officer not involved in the incident to investigate it, with the assistance of the Investigative Services Division.

During the course of the investigation, no police personnel will give information concerning the incident to any members of the public or news media without the express authority of the Chief of Police.

**13.0 Investigating Command Officer Responsibilities**

The investigating Command Officer shall keep the Chief of Police informed throughout the course of the investigation. The investigating Command Officer shall complete a detailed incident report and submit it to the Chief as soon as possible.

The investigating Command Officer shall retrieve, preserve, and retain the weapon(s) used in the incident in the condition that he/she finds it, following proper evidence procedures.

**14.0 Employee Reassignment** *1.3.8*

Any Department employee whose actions or use of force in an official capacity results in death or serious physical injury, or any officer whose use of a firearm results in any injury, shall be immediately removed from line duty assignment and reassigned (i.e. administrative duty, administrative leave) pending the outcome of the investigation and administrative review.

This reassignment shall be with no loss of pay or benefits and is intended to:
- Address the personal and emotional needs of the employee involved in the incident, and
- Assure the community that verification of all facts surrounding the incident is fully and professionally explored.

The employee shall remain reassigned until the administrative review is concluded and his/her psychological needs have been met, as per *Policy and Procedure 213 "Peer Support"*.

Reassigned employees shall be available to assist the Department in the investigation of the incident.

Reassignment should not be considered by any person as a punishment or an indication of wrongdoing by the involved employee.

BPD 000269

**14.1**
**Replacement**
**Weapon**

The Chief of Police will ensure that officers involved in a use of force that results in death or serious physical injury whose weapon(s) have been retained as part of the investigation will be issued a replacement weapon immediately. If this is not possible, the Chief will advise the officer when a replacement weapon will be available.

---

**15.0**
**Employee's**
**Ability to**
**Contact Family**

Employees involved in a use of force that results in death or serious physical injury will be provided an opportunity to contact their family as soon as possible after the incident, to prevent the family from learning about the incident through other sources.

---

BPD 000270



# BARNSTABLE POLICE DEPARTMENT
## RESPONSE TO RESISTANCE REPORT

**BPD Form: 03-04** | **Date of Issue: 05/01/05**

---

Date of Incident:      Time of Incident:      BPD Case #:

---

Officer's Name:      ID#:

Duty Status at Time of Incident:    ☐ On Duty    ☐ Off Duty    ☐ Uniform    ☐ Plain Clothes ____

Location of Incident:    ☐ Indoors    ☐ Outdoors

Nature of Incident:

Weather Conditions:      Lighting Conditions:    ☐ Natural    ☐ Artificial

---

Suspect's Name:      DOB:      SS#:

Address:    Age:    Sex:    Race:    Ht:

Intoxicated:    ☐ Yes   ☐ No    ☐ Alcohol    ☐ Drugs/Other _____

Emotionally Disturbed Person:    ☐ Yes ☐ No (Describe in Narrative)

---

Response to Resistance:   ☐ Firearm    ☐ K-9    ☐ Impact Weapon    ☐ OC    ☐ Physical Strikes

☐ Physical Restraint    ☐ Taser (Cartridge #    )    ☐ Restraint Chair    ☐ Other ____ (describe in narrative)

---

Reason for Response to Resistance:    ☐ To effect arrest    ☐ To defend self    ☐ To defend other

☐ To restrain for subject's safety    ☐ To prevent escape    ☐ Accidental/Unintentional    ☐ Other (describe in narrative)

---

1. Number of suspects:

2. Weapon used by suspect:

3. If suspect was handcuffed or otherwise restrained, check those that apply below:

   Force was used ☐ BEFORE    ☐ DURING    ☐ AFTER    handcuffing or restraining.

   If AFTER, explain:

_____

_____

_____

BPD 000271

## Page 2

4.  Was the officer injured?  ☐ Yes  ☐ No  (describe in narrative)

5.  Was suspect injured?  ☐ Yes  ☐ No  (describe in narrative)

6.  Any other injuries or property damage as a result of incident?  ☐ Yes  ☐ No  (describe in narrative)

*A copy of the Incident Report narrative section must be attached to this report.*

The narrative should explain in detail the circumstances and events involved in this incident, including:
- Actions and circumstances known to the officer that led to the response to resistance
- The application of any technique or weapon and its effect on the suspect
- In the case of an injury, a description of the injury.
- Any medical treatment provided, the location where treatment was administered and who administered it, and
- If photographs were taken and by whom.

_____        _____
**Officer's Signature    ID#**                              **Date**

_____        _____
**Shift Supervisor's Signature    ID#**                      **Date**

**Received by:** _____        _____
**Commander of Field Services Division**                    **Date**

*NOTE: Copies of this report shall be forwarded to the Training Unit.*

BPD 000272



# BARNSTABLE POLICE DEPARTMENT
## POLICY AND PROCEDURE 526
## EMERGENCY MEDICAL DISPATCH

| | |
|---|---|
| **Date of Issue: 06/29/2012**<br>**Revised: 07/13/2016** | **Effective Date: 09/26/2016** |
| **Accreditation Standards:  81.2.14** | |

**1.0**
**Introduction**

==Immediate care during certain medical emergencies can be the difference between life and death for the victim. The== Barnstable Police Department has adopted an emergency medical dispatch protocol reference system in an effort to provide lifesaving interventions prior to Emergency Medical Services (EMS) units arriving at the location of an emergency.

**2.0**
**Policy**

It is the policy of the Barnstable Police Department to ensure that only individuals certified in the adopted emergency medical dispatch protocol reference system answer telephone calls received via the 911 call processing equipment, the protocols are followed for the appropriate calls, and the process is evaluated regularly for quality assurance.

**3.0**
**Definitions**

**Emergency Medical Dispatch (EMD)**
The management of requests for emergency medical assistance by utilizing a system of tiered response of emergency medical resources based upon the level of assistance needed by the victim and pre-arrival first aid or other medical instructions given by trained personnel.

**Emergency Medical Dispatch Protocol Reference System (EMDPRS)**
A medical director-approved dispatch system that includes a protocol for emergency medical dispatcher response to calls.  The system contains structured caller questioning for patient condition, incident facts, and scene safety, as well as pre-arrival instructions, post-dispatch instructions, selection of appropriate resources, and a continuous quality assurance program.

**Pre-Arrival Instructions**
Scripted medical instructions given whenever possible and appropriate to provide necessary assistance and control of the situation, including potential life-saving instructions, prior to the arrival of emergency medical personnel.

**Primary Questions**
Case-specific questions to help the emergency medical dispatcher understand the caller's medical emergency and dispatch appropriate help.

BPD 000275

**Quality Assurance Review**
Process administered by the Department for the purpose of ensuring safe, efficient, and effective performance of trained personnel in their use of the EMDPRS. The process includes random call review, call tracking, performance evaluation, deficiency identification, feedback, and submittal of compliance data.

**Secondary Questions**
Call-specific questions asked after appropriate units have been dispatched to the location of the emergency.

**4.0 Training & Certification**

All personnel assigned to answer calls received via the 911 call processing equipment, civilian or sworn, shall obtain and maintain certification in the following:
- Enhanced 911 Telecommunicator
- CPR
- EMD

Personnel who were not certified as Enhanced 911 Telecommunicators prior to July 1, 2012 must also complete 16 hours of 911 equipment training and 40 hours of Basic Telecommunicator training.

In order to maintain certification as an Enhanced 911 Telecommunicator, all personnel must complete 16 hours of State 911-approved continuing education annually.

All qualified supervisors assigned to the Patrol Division shall obtain and maintain certification in EMD quality assurance/call assessment.

**5.0 Dispatch Procedure**

In order to comply with state regulations, and have safe and effective use of the EMDPRS, personnel assigned to answer calls received via the 911 call processing equipment shall adhere to the dispatch procedures outlined in this section.

**5.1 Call Answering**

When answering a call received on a 911 line, personnel shall use the following or similar greeting: "911, this line is recorded, where is your emergency?"

**5.2 Call Data**

Once a call has been answered, personnel must confirm the incident location. When the incident location is clearly established, personnel must then ask and confirm the caller's location (if different) and the incident description/problem/chief complaint.

POLICY & PROCEDURE 526
EMERGENCY MEDICAL DISPATCH

2

BPD 000276

**5.3**
**Call Transfer**

Upon establishing the chief complaint, dispatch personnel may then transfer and conference the call to the appropriate fire department dispatch. If the call is transferred to the Barnstable County Communications Center, the call may be disconnected once receipt is verified. For all other fire department dispatch centers, remain on the line to gather pertinent information and continue the EMD process.

In all instances, the person transferring the call shall advise the caller, "Stay on the line; do not hang up."

**5.4**
**Call**
**Completion**

Once the fire dispatcher has conducted an inquiry and appropriate services are dispatched, re-engage the caller and complete the *Initial Survey* and *Vital Signs* cards in accordance with training.

Following completion of the *Vital Signs* card, and if appropriate, dispatch personnel may ask the caller if they would like further assistance. If the caller declines, personnel may disconnect from the call. If the caller accepts, personnel shall complete the appropriate *Primary* and *Secondary Questions*, then proceed to *Pre-Arrival Instructions*.

After completion of the *Pre-Arrival Instructions*, and if appropriate, dispatch personnel may ask the caller if they would like to disconnect.

Prior to ending any call, dispatch personnel should inform the caller, "Call back immediately if the patient's condition changes."

**5.5**
**Call Log**

Dispatch personnel will create a log entry for all Emergency Medical Dispatch calls using the call reason "Medical, Emergency", call code "EMER".

**6.0**
**Call Review**

In order to comply with state regulations, and have safe and effective use of the EMDPRS, the Barnstable Police Department will maintain a Quality Assurance Review process. The EMD Coordinator is responsible for oversight of the review process, including record maintenance.

Call review shall be conducted on each shift by the Shift Commander or a certified shift supervisor of his/her choosing. Reviews will take place on a monthly basis, with 10% of EMD calls per shift reviewed at random.

Reviewing supervisors shall complete a *Quality Assurance Review Form* for each call reviewed in accordance with training.

Reviewing supervisors will meet with the EMD call takers and discuss the results of the reviews as needed.

Completed forms shall be submitted to the EMD Coordinator.

BPD 000277



# BARNSTABLE POLICE DEPARTMENT
## POLICY AND PROCEDURE 614
### DOMESTIC VIOLENCE

| Date of Issue: 12/07/2009 | Effective Date: 1/07/2010 |
| --- | --- |
| **Accreditation Standards:** | |

**1.0 Introduction**

Among the most difficult and sensitive calls for police are those involving domestic violence. An appropriate and effective response to domestic violence calls is the best mechanism for enhancing victim and officer safety. It is also the means by which police departments can minimize departmental liability. It is, therefore, imperative that police officers receive appropriate training in the handling of domestic violence complaints and follow statutory guidelines.

**2.0 Policy**

The members of the Barnstable Police Department shall follow the provisions of this policy when responding to incidents involving complaints of domestic abuse.

Additionally, the provisions of MGL c.209A impose specific responsibilities upon the police in regard to a domestic abuse situation. All officers are expected to be familiar with the contents of that statute and to act with appropriate discretion and competence in carrying out its provisions.

If a domestic violence incident involves an employee of the Department, the provisions of *Policy & Procedure 615 "Employee Involved Domestic Violence"* shall be followed in conjunction with this policy.

BPD 000278

**3.0**
**Definitions**

**Abuse**
The occurrence of one or more of the following acts between family or household members:
- Attempting to cause or causing physical harm
- Placing another in fear of imminent serious physical harm; or
- Causing another to engage involuntarily in sexual relations by force, threat or duress.

**Domestic violence program**
Any refuge, shelter, office, safe home, institution or center established for the purpose of offering assistance to victims of abuse through crisis intervention, medical, legal or support counseling.

**Family or household members**
The terms family or household members shall apply to persons who:
- Are or were married to one another
- Are or were residing together in the same household
- Are or were related by blood or marriage
- Have a child in common regardless of whether they have ever married or lived together; or
- Are or have been in a substantive dating or engagement relationship, including same-sex relationships.

**4.0**
**Civil Liability**

According to MGL c.209A § 6: "No law officer shall be held liable in any civil action regarding personal injury or injury to property brought by any party to a domestic violence incident for an arrest based on probable cause when such officer acted reasonably and in good faith and in compliance with this chapter and the statewide policy as established by the Secretary of Public Safety."

**5.0 Response**

The high risk of injury associated with domestic violence situations requires that officers immediately proceed to the incident site. Whenever possible, two officers should be dispatched to the scene.

Officers should be provided with the following information when dispatched:
- Whether the involved persons remain at the scene or have left
- The immediate safety of the caller, the victim and others at the scene
- Nature of the incident (verbal or physical), nature of any injuries, and whether the violence is ongoing
- Any hazards to responding officers, including weapons and animals
- The existence of any warrants in CJIS and the Warrant Management System
- The criminal history of the suspect
- The existence of <u>any</u> protective orders against the suspect, including orders held by persons other than the victim in this case
- Other relevant information, especially any history of incidents involving the address or the parties, and
- The likelihood of firearms being present and any record of Firearms Identification Cards and/or Licenses to Carry issued to involved persons.

**5.1 Private Property**

When investigating a report of domestic violence, officers may enter private premises without a warrant:
- At the request of someone in lawful control of the premises
- Where there is imminent danger of violence that could result in death or serious physical injury
- Where a breach of the peace has been committed in an officer's presence, and
- When he/she has probable cause to believe a felony has occurred and is in fresh pursuit of the fleeing felon.

"Private premises" include but are not limited to a house, apartment, condominium, hotel room, mobile home, dormitory room or house trailer.

**5.2
On-scene
Duties**

Officers at the scene must take immediate control of the situation and should separate the parties to prevent any violent action. If two officers are present, they should, if practical, remain within view of each other to enhance officer safety and avoid any subsequent allegations of mistreatment.

Participants should be interviewed independently. When attempting to ascertain the facts, officers should allow each party to present his/her story individually, avoiding any unnecessary interruptions by the other party. Separating the parties also allows each to relate matters without being overheard, influenced or intimidated by the other party. Officers should determine whether interpretative language services are required and should seek out such services when needed.

Officers shall remain on the scene where the abuse occurred or was in danger of occurring as long as they have reason to believe that at least one of the parties involved would be in immediate physical danger without the presence of the officer.

**5.3
Transporting
Injured Victims**

While officers are authorized by MGL c.209A § 6 to transport victims of domestic violence to the emergency room of the nearest hospital, or to arrange for appropriate transportation to a health care facility, in cases of injury to a victim the Department's preferred method of transportation is via ambulance.

Officers shall receive approval from their supervisor prior to transporting a victim of domestic abuse in a cruiser.

If the victim is not seriously injured, or declines transportation, he/she may seek transportation through his/her own means.

**6.0
Investigations**

Officers responding to domestic violence calls should ensure thorough investigations are completed.

**6.1
Interviewing
Witnesses**

Officers will attempt to identify and interview the party who called the police, neighbors, and other potential witnesses, and be mindful of their concerns regarding retaliation. Every effort should be made (circumstances permitting) to identify and document all parties present and involved.

**6.2
On-Scene
Information**

Officers will attempt to:

- Determine the relationships of all parties at the scene, including children. If children are present, record their names and dates of birth. If children are not observed, ask if there are any children present.
- Obtain at least two phone numbers where the victim can be reached; this may include a cell phone number, a daytime number, or the number of a close relative or friend. Include these numbers in the incident report so the bail bondsperson or court personnel may inform the victim of the abuser's release on bail.
- **NOTE:** If the victim will be seeking to hide from the abuser, KEEP A SEPARATE RECORD of the address and phone number.
- Inform the victim that if she/he intends to leave the residence, and wishes to be informed of the abuser's release, he/she must inform the Department of a number where he/she may be reached, or where a message may be safely left.
- Obtain information about the suspect's ownership of, presence of, or access to firearms and their location.
- Gather information regarding the defendant's:
  - Criminal history
  - History of abusing the current victim or other victims
  - Possession of weapons
  - Use of weapons in prior abuse of the victim
  - Past threats against or abuse of pets
  - Past attempts or threats to kill or to commit suicide
- Ascertain if there is a history of such disputes and whether there are any current or past vacate, restraining, no contact or other protective orders, including those held against the suspect by someone other than this victim and:
  - Document allegations of prior abuse (reported and unreported), including expired protective orders
  - Document use of weapons in prior domestic abuse incidents
  - Seek appropriate criminal action for prior incidents
- Determine, when possible, who has lawful custody of any minors, and whether court approved visitation rights are being violated
  - The parties should be advised to resolve visitation and custody issues through the Probate and Family Court.
- Keep in mind that the child's safety is paramount; standard procedures such as notification of Department of Children and Families (DCF), when appropriate, should be followed
  - Officers should file 51A child abuse reports against only the person abusing or neglecting the child
  - If an officer intends to file a 51A child abuse report, he/she should tell the victim
- Be mindful of the implication of using children as translators.

If it is not possible to gather this information at the scene, investigating officers should attempt to obtain it during the follow-up investigation.

BPD 000282

**6.3**
**Documentation**

Officers will document important information, i.e. spontaneous utterances and statements by the victim, the suspect, children and other witnesses.

In collecting evidence, officers are strongly encouraged to use photographs to document injuries sustained by the victim and the condition of the crime scene. Contemporaneous records of injuries and the crime scene condition are critical to the prosecution of alleged abusers. When documenting scenes photographically, officers are reminded to take both close-up and full scene pictures.

**6.4**
**Officer**
**Responsibilities**
**to Victims**

Whenever an officer has reason to believe that a family or household member has been abused, or is in danger of being abused, he/she shall use all reasonable means to prevent further abuse. The officer shall take, but not be limited to, the following actions:

- Remain at the scene for a reasonable period of time to prevent abuse
- Assist the victim in obtaining medical treatment for injuries
- When children are present, consider their welfare and safety
- Assist the victim and dependent children in locating and getting to a safe place
- Give immediate and adequate notice of rights by handing the victim a *Victim Rights Form* and reading it to him/her. When the victim's native language is not English, the statement shall be provided in his/her native language whenever possible
- As necessary, activate the Emergency Judicial Response System; this should be done even when the alleged abuser has been arrested
- Arrest the abuser when probable cause and the authority to arrest exist
- Inform the victim that the abuser will be eligible for bail and may be promptly released, and
- Provide the victim information, including phone numbers, about local resources such as battered women's programs, emergency shelters and counseling services.

**6.5**
**Substantive**
**Dating**
**Relationships**

When appropriate, officers will gather information to determine whether a substantive dating relationship exists by examining:
- The length of the relationship
- The type of relationship
- The frequency of interaction between the parties, and
- If the relationship has been terminated by either person, the length of time that has elapsed since the termination of the relationship.

If the officer determines that a "substantive dating relationship" exists or did exist, then the officer shall take the proper action.

**6.6
Firearms at the
Scene**

When a firearm or other weapon is present at the scene of a domestic violence situation, officers shall:

- If a firearm or weapon has been involved in the dispute, seize the weapon (and any valid firearms license) as evidence of the crime
- If the firearm or weapon is not reported to have been involved in the dispute:
    - Request that the firearm or weapon be placed in their custody temporarily
    - Search for and take custody of the firearm or weapon if a party who lawfully resides there requests that they do so. A consent search is allowed in areas to which the victim has access, including joint access with the suspect, except those areas where the suspect has a reasonable expectation of privacy
    - Take temporary custody of the firearm or weapon to alleviate the threat of serious violence
- Determine whether a firearm is lawfully possessed before returning it.

If the officer determines that the weapon cannot be seized, the following actions can take place:

- A judge can order the defendant to surrender guns, a License to Carry and an F.I.D. card, and
- The issuing authority may revoke or suspend any firearms license.

In all domestic violence cases, the investigating department shall advise the issuing authority that the subject of the license is suspected of abuse.

If a firearm is seized for safekeeping, a *209A Weapons Seizure Form* must be completed, itemizing all weapons seized. Weapons shall be secured according to the provisions *of Policy & Procedure 1201 "Property & Evidence Control."*

**6.7
Evidence**

Officers should collect physical evidence, including weapons used (even if a simple household item), and document collection in the incident report. All evidence will be collected and submitted according to the provisions of *Policy & Procedure 607 "Crimes Scenes and Collection of Evidence."*

**7.0
Substance
Abuse/Mental
Health Issues**

When assessing credibility in order to establish probable cause, officers should remember that a victim who is under the influence of drugs or alcohol, or who suffers from mental illness, is not an inherently unreliable witness.

An abuser who is under the influence of drugs/alcohol, or who suffers from certain mental illnesses, may pose a greater risk to the safety of the victim, the officer, children, bystanders and him/herself.

Officers should also remember that it is not unusual for an abuser to display a calm demeanor following a violent assault.

**8.0**
**Arrests**

The decision to make an arrest must be based on whether probable cause exists that the crime occurred, <u>not</u> whether the victim wishes to seek complaints or testify at a future date. Police officers should keep in mind that the same standard for probable cause applies to domestic violence offenses as for any other crime. As in other types of criminal investigations, uncorroborated statements by a victim can constitute probable cause that the crime occurred.

The safety of the victim and any involved children shall be paramount in any decision to arrest, and in the timing of the arrest.

**8.1**
**Mandatory or**
**Preferred**
**Arrests**

An officer's authority or mandate to arrest is set forth in MGL c.209A § 6 (7).

Officers shall make a warrantless arrest of any person they witness or have probable cause to believe has violated an emergency, temporary or permanent vacate, refrain from abuse, stay away or no-contact order/judgment, a suspension and surrender order, or protection order issued by **any** jurisdiction.

When there are no abuse, vacate, stay-away or no-contact orders or judgments in effect, arrest is <u>the preferred response</u> whenever an officer witnesses or has probable cause to believe that a person has committed:
- A felony
- An assault and battery of a family or household member in violation of MGL c.265 § 13A
- A misdemeanor involving abuse, as defined in MGL c.209A, or
- An assault and battery or permits another to commit an assault and battery upon an elder or a person with a disability in violation of MGL c.265 § 13K.

When probable cause exists to believe a crime involving abuse occurred, it is <u>not</u> proper procedure to advise the victim to seek complaint applications on his/her own.

**8.2**
**Fleeing**
**Suspects**

When probable cause to arrest exists and the suspect has fled the scene, the investigating officer will have Dispatch advise area patrols and other jurisdictions where the suspect is believed to be going, if appropriate, in order for those patrols to attempt to locate and arrest the suspect.

Police department's shall honor another department's statement that probable cause to arrest exists. The second department shall immediately attempt to affect the arrest as requested by the investigating department.

Officers will attempt to make a warrantless arrest within a reasonable period of time. In cases involving abuse as defined under MGL c.209A, the investigating department shall seek an <u>arrest warrant</u> from the appropriate court as soon as practical.

**8.3**
**Dual Arrests**

Dual arrests are strongly discouraged because they trivialize the seriousness of domestic abuse and increase the danger to victims.

If officers determine that neither party acted in self-defense and that both parties have committed an act of domestic abuse, the officers should determine who is the dominant aggressor and take action considering the totality of the circumstances including:
- The relative severity of injuries and fear inflicted
- The relative use of force and intimidation
- Information available regarding prior incidents involving either party; or
- The likelihood of either party committing domestic violence in the near future.

Any officer arresting both parties is required to submit separate arrest reports for each arrestee, which shall include a justification for making the dual arrests.

**8.4**
**Caretakers**

In cases involving abuse of a child, an elder or a person with a disability, officers must address the issue of whether the victim can be left alone safely if the abuser/caretaker is arrested.

If the child, the elder or the person with a disability cannot be left alone, an appropriate protective agency must be contacted to arrange for temporary care. These agencies are:
- Department of Children and Families  (1-800-792-5200)
- Disabled Persons Protection Commission  (1-800-426-9009)
- Department of Elder Affairs (1-800-922-2275)

**8.5**
**Out of**
**Jurisdiction**

If another police agency seeks assistance in apprehending a domestic violence suspect, the Department will assist in apprehending the perpetrator. Dispatch shall immediately notify the Watch Commander of the request.

If the requesting agency holds a valid warrant, an attempt will be made to serve the warrant, and:
- The requesting agency will be notified of the attempt results, and
- All attempts to serve the warrant will be logged.

When there is no warrant, but the requesting agency has probable cause, an attempt will be made to apprehend the suspect. Whenever possible, the Watch Commander:
- Should speak directly to the representative of the requesting agency, and
- Receive a Statement of Facts before authorizing an attempt to arrest.

- If the subject is located and arrested, he/she will be brought to the police station for booking. Arrangements can then be made for the subject to be transferred to the requesting agency, held for court, or bailed.

BPD 000286

**8.6**
**Processing**
**Arrests**

The processing of arrested persons shall follow the provisions of *Policy & Procedure 1004 "Processing Detainees."* Whenever resources allow, officers shall take fingerprints and photographs of all criminal defendants in domestic violence cases.

**9.0**
**Out of State**
**Issues**

Violations of out-of-state orders or Massachusetts orders violated in another state may be charged criminally as contempt.

A protective order issued in another jurisdiction (as defined in MGL c.209A § 1) shall be given full faith and credit in the Commonwealth. Therefore, officers shall make a warrantless arrest of any person the officer witnesses or has probable cause to believe has violated an emergency, temporary or permanent vacate, refrain from abuse, stay away, or no-contact order/judgment issued by another jurisdiction.

In assessing probable cause, an officer may presume the validity of the protection order issued by another jurisdiction when he/she has been provided with:
• A copy of the order by any source, and
• A statement by the victim that such order remains in effect.

An order of protection is presumed valid if it gives the names of the parties involved, contains the date the order was issued, has not expired, specifies the terms and conditions set against the abuser, contains the name of the issuing court, and is signed by the issuing authority.

**10.0**
**Incident**
**Reports**

Written reports will be filed at all domestic violence incidents whether or not an arrest is made, and will include a completed Department domestic violence template form.

Items to be documented in the report include:
• The existence of any history of abuse
• Documentation and description of physical injuries
• Photographs of the injuries, and
• The presence of children in household.

| | |
|---|---|
| **11.0**<br>**Mandatory**<br>**Reporting** | Officers are mandated to file reports of abuse against certain types of persons.<br><br>A report will be filed with the Department of Children and Families (DCF) whenever an officer has reasonable cause to believe that a child under the age of 18 has been abused or neglected. During office hours, the officer will contact the local DCF office; after hours, call the hotline at 1-800-792-5200.<br><br>A report will be filed with the Disabled Persons Protection Commission whenever an officer has reasonable cause to believe that a caretaker has abused/neglected a disabled person between the ages of 18 and 59. The officer will call the hotline at 1-800-426-9009.<br><br>A report will be filed with the Executive Office of Elder Affairs whenever the officer has reasonable cause to believe that someone age 60 or older has been abused/neglected. The officer will call the 24-hour hotline at 1-800-922-2275. |
| **12.0**<br>**Service of**<br>**Orders** | The service of abuse orders shall follow the requirements of *Policy & Procedure 909 "Legal Process."*<br><br>Service of abuse orders shall be made in hand unless otherwise ordered by the court. MGL c.209A §7 requires that "the law enforcement agency shall **promptly** make its return of service to the court." |

**12.1
Firearms
Surrender**

If firearm surrender provisions are applicable in an abuse order, upon service of the order officers shall immediately take possession of all firearms, rifles, shotguns, machine guns, ammunition, and License to Carry and Firearms Identification Cards in the control, ownership or possession of the defendant. Such weapons, licenses and permits may not be returned until the order has been completely vacated or the firearms provision modified by order of the court.

**Violations of Orders**
Officers shall make a warrantless arrest of any person the officer witnesses or has probable cause to believe has violated an order that stems from the possession of firearms, licenses and permits.

**Seizure and Storage of Firearms**
The Department shall honor another agency's request for assistance in seizing the above-listed items, regardless of which department is named within the order. The department named within the order shall be responsible for the storage of the seized items or the delegation of storage to an authorized facility.

**Orders Against Law Enforcement Officers**
In cases involving police officers from other law enforcement agencies that are defendants in abuse prevention orders, the defendant must relinquish all firearms, including departmental weapons, to the serving department.

**13.0
Property**

When a party to a domestic dispute is accused of removing or attempting to remove property from the dwelling, or is accused of damaging or destroying property, the investigating officer should attempt to determine the civil or criminal consequences, and if criminal (e.g. malicious destruction of property), take appropriate action.

In situations of alleged domestic violence where one party seeks to remove personal property from the residence of a second party, and where no court order is in effect, shift officers may stand by the scene to keep the peace during the removal for a limited period of time (not to typically exceed 15 minutes). In situations where an extended period of time is required to retrieve property, the person seeking the retrieval will be required to hire an officer.

BPD 000289

**13.1**
**Court Orders**

Once a vacate, no contact, stay away or refrain from abuse order is issued, officers should not accompany a defendant to an applicable property for any reason without specific judicial authorization.

The defendant in the vacate order is allowed to retrieve his/her belongings under the following conditions:

- The defendant must have a court order allowing for the retrieval
- The police must accompany the defendant and officers shall remain with the defendant throughout the process
- The victim must have prior notice by the Department, and must agree to the timing of the retrieval.
- The defendant must not be allowed to use this as a means of harassing the victim
- The defendant shall not damage any of the plaintiff's belongings or those of another occupant and shall not interfere with any utilities or mail delivery to the plaintiff, and
- The defendant may retrieve personal property including clothing, shoes, personal care items, etc. If the defendant is attempting to collect any other items, including furniture or electronic equipment that is in dispute, he/she should be referred to the issuing court or the Probate and Family Court for settlement of shared property.

**NOTE:** Officers need to keep in mind that certain behaviors by the defendant while at the residence may constitute a violation of the protective order. Repeated visits may also constitute a violation.

When a court order exists allowing a victim to return to the defendant's residence in order to retrieve his/her belongings, officers shall accompany the victim to ensure the order is executed, and that the victim is able to follow the order free from harassment or abuse by the defendant.

**13.2**
**Time Periods**

Defendants who are picking up personal property pursuant to a court order, and who will not require a lengthy period of time (typically more than 15 minutes), may do so under the observation of shift officers.

If the retrieval period is expected to exceed approximately 15 minutes, the defendant will need to make arrangements to hire an officer to attend to the retrieval.

**14.0**
**Federal**
**Provisions**

In domestic violence investigations where federal law violations are detected, the investigating officer will note the violation in his/her report and notify the appropriate federal agency. Applicable federal laws include:

**Persons Named in Protective Orders**
Under the Federal Crime Control and Law Enforcement Act of 1994, it is unlawful for an individual subject to a "permanent" restraining order involving "intimate partners" to receive, ship, transport, or possess guns (including handguns, rifles, and shotguns) or ammunition that traveled in interstate commerce.  Federal law prohibits any person subject to a qualifying order of protection from possessing firearms and ammunition. *18 USC § 922 (g) (8)*

**Misdemeanors Involving Domestic Violence**
It is unlawful for any person convicted of certain misdemeanor crimes involving domestic violence to ship, transport, possess, sell or otherwise dispose of or receive firearms or ammunition. *18 USC § 922(g)(9)*

**Federal Felon in Possession of a Firearm**
It is unlawful for any person who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess any gun or ammunition. *18 USC § 922(g)(1)*

**15.0**
**Watch**
**Commander**
**Responsibilities**

Watch Commanders will ensure that the provisions of MGL c.209A, other related statutes, and these guidelines are met. They will ensure that police logs are reviewed to ensure that an incident report has been filed, even in cases where no arrest was made. Calls that are received as allegations of domestic violence or a domestic disturbance will not be reclassified because no probable cause to arrest existed. Incident reports <u>will be filed</u> in those cases.

The Watch Commander will carefully review incident reports. If upon review of a report it is believed that probable cause exists, he/she will ensure that criminal charges are initiated. He/she will also ensure that officers provided appropriate referrals to victims.

Whenever a particular case poses a significant danger, it will be discussed at Roll Call.

**16.0**
**Follow Up**
**Activities**

If a Watch Commander or other appropriate authority determines that a follow-up investigation of a domestic violence incident is needed, he/she shall:
- Ensure that the follow-up investigation is conducted, and
- Upon conclusion of the investigation, ensure that additional charges are initiated whenever appropriate.

The Domestic Violence Detective will review all incident and arrest reports to ensure that the provisions of MGL c.209A and this policy are followed. If upon review of a report it is believed that probable cause exists, he/she will ensure that criminal charges are initiated.

**17.0**
**Confidentiality**

The Department shall ensure the confidentiality of domestic violence records, including information regarding the identity of a victim or children, and any medical information or statements by witnesses. This may be accomplished by utilizing the "Confidentiality" checkbox in the IMC report system.

The location and street address of all domestic violence programs are confidential and shall not be required to be revealed in any criminal or civil proceeding. If a report is made at a domestic violence program, an incident occurred at that program, or an officer transported someone to a program, the officer shall not include this address in an incident report. Under no circumstances should a Department member release information to the public regarding the location of a domestic violence program.

**Confidentiality of Abuse Prevention Order Provisions**
A plaintiff's residential address and workplace address shall appear on the court order and be accessible to the defendant <u>unless the plaintiff specifically requests that this information be withheld from the order.</u> Officers helping to issue emergency abuse prevention orders must be cognizant of victims' confidentiality rights and requests.

**18.0**
**Records**

With the exception of complete reports released to a domestic violence victim, Departmental domestic violence reports should be reviewed and redacted according to the provisions of public records law.

Copies of police reports will be made available to the victim at no cost, upon his/her request.

BPD 000292



# BARNSTABLE POLICE DEPARTMENT
## POLICY AND PROCEDURE 1106
## MENTAL ILLNESS

| | |
|---|---|
| **Date of Issue: 12/19/2007**<br>**Revised: 02/18/2010** | **Effective Date: 03/18/2010** |
| **Accreditation Standards: 41.2.7** | |

**1.0**
**Background**

Mental illness is not a crime and does not, by itself, justify or require police intervention. Many mentally ill individuals are capable of functioning on their own without danger to themselves or others; such individuals cannot legally be taken into police custody merely because of a mental illness.

**2.0**
**Policy**

The members of the Barnstable Police Department have frequent interactions with individuals exhibiting possible signs of mental illness. When such individuals exhibit dangerous states of mental illness, the Department's primary concern shall be to protect the mentally ill individual and others. Department members shall direct their efforts to assure proper medical attention and supervision of all individuals experiencing such personal crises, and shall act in cooperation with mental health professionals as appropriate.

Department members shall accord mentally ill individuals with all the individual rights to which they are entitled.

**3.0**
**Recognition**
**Guidelines**
*41.2.7 a*

The effect of a mental disorder on each individual is different and symptoms can vary. Some of the signs of mental illness are:
- Severe changes in behavioral patterns and attitudes
- Inappropriate emotions, reduced emotional response, or emotional flatness
- Unusual or bizarre mannerisms
- Extremes in emotion or mood swings
- Loss of memory or distorted memory
- Hallucinations or delusions
- Paranoia; hostility to and distrust of others
- Marked increase or decrease in efficiency
- Lack of cooperation and tendency to argue, and/or
- One-sided conversations.

These factors should not be treated as conclusive. It is noted that a person with an excessive intake of alcohol or drugs might also exhibit some of these signs.

BPD 000300

**4.0**
**Suicidal**
**Persons**

Officers should be aware that a large percentage of persons who attempt or complete suicide have a history of mental illness.

Persons who display suicide symptoms or engage in suicidal behaviors should be dealt with in accordance to the provisions of *Policy & Procedure 1109 "Suicidal Persons."*

**5.0**
**Calls from**
**Mentally Ill**
**Individuals**

Communications Center personnel, upon receipt of a call from a individual displaying signs of mental illness, shall:
- Ascertain the needs of the caller
- Dispatch field personnel as necessary, and
- Assist, as needed, officers with contacting appropriate medical or mental health officials, or relaying information from the officer to these professionals.

**6.0**
**Intervention**
**Guidelines**
*41.2.7 c*

An officer who becomes involved with a individual who displays signs of mental illness, or who may be a danger to him/herself or others, should follow these guidelines:

| Step | Action |
|------|--------|
| 1 | Quickly assess the situation and secure the scene. |
| 2 | Request back up assistance, as appropriate. |
| 3 | Ask questions of other persons available to learn as much as possible about the distressed individual. It is important to find out whether any person, agency or institution has lawful custody of the individual, and whether he/she has a history of criminal, violent or self-destructive behavior. |
| 4 | Prevent crowds from forming at the scene, as they may excite or frighten the individual. |
| 5 | Attempt to keep the individual calm and quiet, and show that you will protect and help them. |
| 6 | Act with respect. |
| 7 | Attempt to gain voluntary cooperation from the individual. |
| 8 | During incidents in which the initial responders believe that specialized personnel may be useful in resolving the situation, the Crisis Negotiation Team may be notified by Dispatch. |
| 9 | If the individual is placed in police custody for any reason, he/she shall be restrained in the same manner as other prisoners, per the requirements of *Policy and Procedure 71.1 "Prisoner Restraints."* |

BPD 000301

**7.0 Custody Situations**

Mentally ill individuals may be taken into custody if:
- They have committed a crime
- They pose a substantial danger of physical harm to other persons by exhibition of homicidal or other violent behavior
- They pose a substantial risk of physical impairment or injury to themselves (for example, by threats or attempts at suicide), or
- They have escaped or eluded the custody of those lawfully required to care for them.

---

**7.1 Emergency Custody**

According to MGL c.123 s.12 (a)...

"In an emergency situation, if a physician, qualified psychologist or qualified psychiatric nurse mental health clinical specialist is not available, a police officer, who believes that failure to hospitalize a person would create a likelihood of serious harm by reason of mental illness **may restrain such person** and apply for the hospitalization of such person for a three day period at a public facility or a private facility authorized for such purpose by the department..."

Such an action should only be initiated by an officer if:
- The officer has determined that the individual is a threat to seriously harm him/herself or others
- There are no outstanding commitment orders pertaining to the individual
- Every effort has been made to enlist an appropriate physician, psychiatrist, psychologist, social worker or family member to initiate the commitment proceedings without success
- The individual refused to voluntarily meet with medical/mental health staff, and
- The officer has received approval from the Watch Commander or Patrol Supervisor.

Once an officer takes custody of a mentally ill individual who is likely to cause serious harm to him/herself or others, he/she should release the individual only to proper medical or mental health officials.

---

**8.0 Emergency Assessments**
*41.2.7 b*

Although "any person," including a police officer, may petition a District Court to commit a mentally ill individual to a facility for a three day period if failure to confine that individual would cause a likelihood of serious harm (MGL c.123 s.12e), in most instances an officer should to initiate such proceedings only as a last resort.

Cape Cod Hospital maintains a Psychiatric Assessment Team (PAT) that is available for emergency response to mental health crises. PAT is a mobile team of licensed mental health professionals experienced in crisis intervention. They provide on-site crisis assessment and referrals for mental health or chemical dependency issues. They are available 24 hours per day, seven days per week at 1-800-513-4PAT, with an estimated response within 60 minutes.

BPD 000302

The MA Department of Mental Health also maintains an emergency assessment team that is available 24 hours per day, seven days per week for persons with no insurance or utilizing Medicaid. It may be accessed by calling the Emergency Crisis Hotline at 800-322-1356.

**9.0 Transports**

Individuals suffering from mental illness may pose a significant threat to themselves and/or officers during transport.

When the transfer of a mentally ill individual to Cape Cod Hospital or other facility is necessary, EMS shall be notified and the individual will be transported by ambulance. The Watch Commander or Patrol Supervisor may allow transport via cruiser in extenuating circumstances.

Mentally ill individuals under arrest for criminal offenses will be transported in the same manner as any other prisoner.

**10.0 Interviews & Interrogations** *41.2.7 c*

Whenever a mentally ill or mentally deficient individual is a suspect and is taken into custody for questioning, officers must be particularly careful in advising the subject of his/her Miranda rights and eliciting any decision as to whether he/she will exercise or waive those rights.

Before interrogating a suspect who has a known or apparent mental condition or disability, officers should make every effort to determine:
- The nature and severity of that condition or disability
- The extent that it impairs the subject's capacity to understand basic rights and legal concepts such as those contained in the Miranda warnings, and
- Whether there is an appropriate "interested adult," such as a legal guardian or legal custodian of the subject, who could act on behalf of and assist him/her in understanding his/her Miranda rights, and in deciding whether or not to waive any of those rights in a knowing, intelligent and voluntary manner.

**11.0 Weapons**

Whenever an individual is detained for examination of his/her mental condition and is found to own, or have in his/her possession or control any firearm or other deadly weapon, the officer detaining the individual shall confiscate any such firearm or deadly weapon. Confiscated weapons shall be processed as evidence.

The investigating officer will forward copies of all incident reports to the Chief of Police, with a request to review the status of any firearms license.

**12.0 Confidentiality**

Contacts with mentally ill individuals shall be kept confidential, except to the extent that revelation is necessary for conformance with Departmental procedures, or is necessary during the course of official proceedings.

POLICY & PROCEDURE 1106
MENTAL ILLNESS

4

BPD 000303

**13.0**
**Training**
*41.2.7 d,e*

All entry-level personnel who have not received documented training on dealing with individuals with mental illness will receive such training during their Department orientation.

Refresher training for all Department personnel on dealing with individuals with mental illness will occur at least once every three years. Such training will include all personnel who may come in contact with the mentally ill.

This training will be developed in collaboration with mental health professionals, and will be reviewed and updated at least once every three years. All training on mental health issues shall be documented.

BPD 000304