UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ESTATE OF ROBERT JOSEPH MILLER, by and through IAN MILLER, personal representative of the Estate,<br><br>Plaintiff,<br><br>v.<br><br>SEAN ROYCROFT and SPENCER JACKSON, in their individual capacities, and the TOWN OF BARNSTABLE, MASSACHUSETTS,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)        C.A. No. 21-10738-FDS |

**DEFENDANT SPENCER JACKSON'S**
**ANSWERS TO PLAINTIFF'S FIRST SET OF INTERROGATORIES**

**INTERROGATORY NO. 1**

Identify yourself, including your full name, address, height, weight, date of birth, and a description of any tattoos you have.

**ANSWER NO. 1**

Spencer Lee Jackson
Address: ███████████████ ., Marstons Mills, MA 02648
Height: 5'10''
Weight: 180 lbs
DOB: ████████
Description of tattoos: None

**INTERROGATORY NO. 2**

State the name, address, and telephone number of:

a.    each person likely to have discoverable information relevant to disputed facts alleged in this case; and,

b.    each person whom you may call at trial for impeachment purposes.

For each person identified in this answer, identify the subject(s) of the information likely to

1

be known and/or the likely subject(s) of the impeachment testimony.

**ANSWER NO. 2**

Please refer to those persons identified in Defendants' Initial Disclosures.  In addition, the

following people are likely to have discoverable information relevant to this matter.

- a.  Vicki Yefko, Hyannis Fire EMT; likely to have information regarding medical services provided on-scene and the general availability of psychiatric assessment teams;
- b.  Curtis Pike, Hyannis Fire EMT; likely to have information regarding medical services provided on-scene and the general availability of psychiatric assessment teams;
- c.  John Oberlander, Hyannis Fire EMT; likely to have information regarding medical services provided on-scene and the general availability of psychiatric assessment teams;
- d.  Kyle Jacob, Hyannis Fire EMT; likely to have information regarding medical services provided on-scene and the general availability of psychiatric assessment teams;
- e.  Timothy Simkins, Hyannis Fire EMT; likely to have information regarding medical services provided on-scene and the general availability of psychiatric assessment teams;
- f.  Peter Nagorka, Hyannis Fire EMT; likely to have information regarding medical services provided on-scene and the general availability of psychiatric assessment teams;
- g.  Former members of the Cape Cod Psychiatric Assessment Team; likely to have information regarding the general availability of psychiatric assessment teams
- h.  Sean Roycroft; likely to have information regarding BPD's response to 45 Elm Street and regarding this case, in general.
- i.  Ian Miller and his siblings, Michael and Emily; these individuals are likely to have information regarding the frequency of visits between Mr. Miller and themselves.
- j.  Amy Anderson, 45 Elm Street, Barnstable, MA; likely to have information regarding BPD's response, as well as Mr. Miller's medical and mental status and familial relationships.
- k.  Mark Ells, Town Manager; likely to have information regarding Barnstable mental health resources;
- l.  Emily Higgins, BPD dispatcher; likely to have information regarding Ms. Anderson's call to BPD and the process by which police response was dispatched, both specific to this case and generally;
- m.  Members of the Barnstable Police Department, including Kevin Shaw, David Myett, Adam Ruggieri, Patrick Fallon, John Alexander, Kevin Tynan, Sean Balcom (former Deputy Chief), John Murphy, Mark Mellyn, Chief Matthew Sonnabend, Lt.

Jennifer Ellis; these individuals are likely to have information about the mental health resources available to BPD, the trainings conducted or arranged by BPD for its members; additionally, Officers Shaw and Tynan are also likely to have information regarding BPD's response to 45 Elm St.; Lt. Det. Mellyn is likely to have information about his visit to Ms. Anderson's home to assist her with repairs to the damaged slider door.

n.  Jack Mawn, Cape and Islands State Police Det. Unit; likely to have information regarding his unit's response to the scene and/or any investigation undertaken regarding it;

o.  Jeffrey Diotte, Massachusetts State Police Trooper; likely to have information regarding his unit's response to the scene and/or any investigation undertaken regarding it;

p.  Office of Medical Examiner staff; likely to have information regarding Mr. Miller's physical and condition post-mortem;

q.  Plaintiff's physicians and other care providers at Hatfield Cardiology, Mashpee Family Medicine, Cape Cod Hospital and Cape Cod Psychiatric Services; these individuals are likely to have information regarding Mr. Miller's medical history, health, medications and mental status;

**INTERROGATORY NO. 3**

Describe your educational history. Include the following information for each school, college, or specialized course: the name of the school, college or specialized course, the dates you attended, the degree or certificate, if any, that you received from each and the date you received the degree.

**ANSWER NO. 3**

I attended and graduated from Barnstable High School in June 2004.  I receive my Associate in Science Degree in Criminal Justice on May 24, 2007, and graduated Magna Cum Laude from Johnson & Wales University in Providence, Rhode Island on February 27, 2010.  I attended the Plymouth Police Academy Basic Course of Training for Reserve/Intermittent Police Officers from October 12, 2010 through February 20, 2011.  I attended the Plymouth Police Academy 54th Recruit Officers Course from November 4, 2011 to April 16, 2012.  I have continued my education and training through courses and seminars since that time.

**INTERROGATORY NO. 4**

3

Describe your employment history since graduating high school, including:

a.      each and every job;
b.      the name and address of the company for each such job;
c.      the time period you worked for the company for each such job;
d.      the name of your supervisor at each such job; and,
e.      the reason for leaving each such job.

**ANSWER NO. 4**

My employment history comprises the following:



2005 - Onset Chief Charter Fishing – Deck Hand
Benjamin Braun –                    Seasonal Employment

2005 - JMR Honda Suzuki – Service Technician
J.B. Hopkins –                    Left job to go to return to College

2006 - Yarmouth Police Department – Intern
Chief Frank Frederickson –

2009 - Nantucket Police Department – Summer Special Police Officer
Sgt. Daniel Mack                    Seasonal Employment

2010 - Cape Cod Melody Tent – Security
Ryan Stevens                    Seasonal Employment

**INTERROGATORY NO. 5**

With regard to your employment as a police officer with the Barnstable Police Department, please state:

a.      each position you have held in the department;
b.      the dates on which you were appointed to each position;
c.      each division or unit to which you were assigned;
d.      the date on which any assignment terminated and the reason it terminated; and,
e.      the dates on which you were promoted or demoted to each rank.

**ANSWER NO. 5**

I was appointed as a Patrol Officer for the Barnstable Police Department beginning May

2, 2012.  I have participated as a regular trainer in the Barnstable Citizen's Police Academy as a means of engaging and educating the community regarding police work, and provided continuity training for four recruits whose police academy was closed due to the COVID-19 pandemic. I was assigned to the Mountain Bike Unit March, 2016 I have been a member of the Cape Cod Regional SWAT team since June, 2016. I was assigned a position as a Drone Pilot in July, 2016. I was assigned as a Field Training Officer November, 2019.

**INTERROGATORY NO. 6**

If you have ever applied for a position as a police officer at any other police department, or for a promotion in any police department and did not receive the position or promotion, state the details, including the name of the department, dateof application, and the reasons you were passed over.

**ANSWER NO. 6**

I applied for a Police officer position at Yarmouth Police Department in 2009 and did not receive the position.

**INTERROGATORY NO. 7**

Describe all medical and first aid training or education you have received since graduating high school. Include the dates of all such trainings or education, describethe nature of each such training or education, and identify any certifications or credentials you received from each such training or education, including expiration date.

**ANSWER NO. 7**

In addition to many other areas of training, I have undergone regular training in the following areas:

CPR First Responder – Yearly In-service
AED – Yearly In-service
Defensive Tactics – Yearly In-Service
Taser Operator - 2011 and 2021
Use of Force – Yearly In-Service
Mental Health First Aid USA Training
Ground Defense

Distraction Techniques
Handcuffing Techniques
Restraint/Use of force - Yearly In-Service Training
Criminal Procedures
FEMA
Incident Command System
Mentally-ill and disturbed persons

**INTERROGATORY NO. 8**

Describe your work activities on April 16, 2019, including the shift you were working, your assignment that day, and your responsibilities while working that assignment.

**ANSWER NO. 8**

On April 16, I was on patrol in a marked cruiser, No. 238, assigned to the Hyannis

sector in E238 on the 1600-0000h shift.  On that day, my responsibilities included patrolling the

Hyannis area.

**INTERROGATORY NO. 9**

Describe in detail everything that happened during the incident, beginning when you were first dispatched to Mr. Miller's home, and ending when you completed your shift. **A copy of your police report narrative is not a sufficient response to the information requested in this interrogatory.**

Your detailed answer should include the following information:

State everything you heard, saw, said, and did.
a.  State the time when each event took place to the best of your recollection.
b.  Identify all of the people who were involved.
c.  State everything any other person said during the incident. For each such statement, please identify the time and place that it occurred to the best of your recollection, identify who made the statement, and identify each person present when the statement was made. If any of the statements were recorded in any manner, identify the method of recording and any documents containing the recording for each such statement.

Your answer should include information you know from your own personal knowledge as well as information you learned from other sources, indicating thesource of the information.

**ANSWER NO. 9**

**Objection**.  The Defendant objects to this interrogatory on the grounds that it is overly broad and unduly burdensome; more specifically, it is unreasonable for the Plaintiff to expect that the Defendant capture every single thing the Defendant heard, saw, said or did during this incident, as well as everything every other person involved heard, saw, said or did during this incident. Notwithstanding and without waiving this objection, the Defendant states as follows:

At approximately 1904h, I was dispatched to 45 Elm St after being advised that a female caller's report of a male having a psychotic break.  Officer Roycroft had arrived on scene approximately one minute before me.  I parked my cruiser across the street approximately half of a house away from 45 Elm Street.  As I walked along the side of the house, I heard a loud crash from inside the rear left of the house.  As I approached the deck, a glass slider door fell away from the house and landed onto the deck.  I climbed up onto the deck and jumped over the slider door, entering through the opening left by it.  I observed Officer Roycroft was standing behind and attempting to gain control of a male subject who was later identified as Robert Miller.  Mr. Miller was spinning around and thrashing side to side but moving further into the house, dragging Officer Roycroft, who was at Mr. Miller's back, forward further in toward the front of the house.  I saw them take only a couple of steps before they both fell face down into a small room off of the dining room.  After they hit the ground, I approached and announced my presence.  Officer Roycroft was on the left side of Mr. Miller, and Mr. Miller continued to thrash around.  Officer Roycroft told me that he thought Mr. Miller had something in his hands.  Mr. Miller had Officer Roycroft's arm pinned underneath his arm and upper body.  I tried to gain control of Mr. Miller's right arm.  I gave Mr. Miller multiple commands to relax and put his hands behind his back, which Mr. Miller ignored.  Mr. Miller continued to thrash, kicking his legs and keeping his hands hidden from sight.

While attempting to pull Mr. Miller's right arm out from under his body, I observed a single golf club lying directly underneath him.

We continued to try to gain control of his arms without success, although I had managed to gain control over a portion of Mr. Miller's right arm.  I asked Officer Roycroft if he wanted me to tase Mr. Miller, but he said "No."  I also would have had to release Mr.  Miller's arm in order to deploy my Taser.  I then delivered a distraction strike at half-strength to Mr. Miller's midsection, between his bottom right rib and right hip.  This allowed me to momentarily extract Mr. Miller's right arm from underneath his body, but he jerked and twisted toward Officer Roycroft and was able to yank his arm back underneath his body.  I then radioed dispatch for backup, and delivered another half-strength distraction strike to the same area of Mr. Miller's body as before.  I was then able to visualize Mr. Miller's right hand, which was clenched with nothing protruding from it.  Once I had control of Mr. Miller's right hand, Officer Roycroft was able to extract his left arm from underneath Mr. Miller and gain control of Mr. Miller's left arm.  We were then able to bring his hands together and he was secured in handcuffs. Officer Shaw arrived on scene at that time.  From when I arrived on scene until the handcuffs were locked, it was about one minute.

Immediately after Mr. Miller was handcuffed, I briefly spoke with the woman whose identity I later learned to be Amy Anderson.  During the altercation, she had been peeking around from behind a corner wall watching us.  I asked Ms. Anderson if Mr. Miller had consumed any alcohol or narcotics.  She told me Mr. Miller was experiencing a psychotic episode, but that to her knowledge he was not under the influence of any narcotics or alcohol.

During my conversation with Ms. Anderson, Officer Roycroft informed me that we needed to remove Mr. Miller's handcuffs.  I was surprised by this, however, Officer Roycroft informed me that he did not think Mr. Miller was breathing. We immediately removed the handcuffs from

Miller and placed Mr. Miller in the recovery position on his side. Officer Roycroft checked for a pulse at Mr. Miller's neck and advised that he was unable to feel one. We rolled Mr. Miller onto his back and began chest compressions. Shortly thereafter, Officer Ruggieri arrived with a medical bag and I began administering rescue breaths while Officer Roycroft performed chest compressions. Due to the confined space in which we were working, Officer Roycroft took over the bag mask and I began chest compressions. Officer Ruggieri connected the AED and no shock was advised. We continued rescue efforts until Hyannis Fire personnel arrived on scene and assumed care of Mr. Miller. A Lucas chest compression machine was attached to the stretcher and Mr. Miller was transported to Cape Cod Hospital.

Ms. Anderson told me Mr. Miller was a boxer and that she had she had made arrangements for a family friend to check on Mr. Miller while she was in Florida to make sure that he continued taking his medication. She said that when she returned home from her trip he had not been taking his medication and was acting crazy. Lt. Mark Mellyn stated that Ms. Anderson informed him that Mr. Miller did not have a relationship with his son, and that the two had not seen each other in 10 years.

**INTERROGATORY NO. 10**

> Identify all written statements, memoranda, and notes, including drafts of all such documents, and any oral reports or statements you have made to any person concerning the incident or this lawsuit. For each such report or other account, please state:
>
> a.   the date, time and place of each such report or other account;
> b.   the name and title of each person to whom you made each such report or other account;
> c.   the nature and substance of each such report or other account;
> d.   the name and address of the custodian of each such report or other account;
> e.   if the account was a draft, such as the drafts of your police report, please state the reason you made each edit.

**ANSWER NO. 10**

**Objection**.  The Defendant objects to this interrogatory on the grounds that it seeks information that is covered by the attorney-client privilege and the work-product doctrine. Notwithstanding and without waiving this objection, the Defendant states as follows:

In the days following my encounter with Mr. Miller on April 16, 2019, I drafted a report that summarized the events of that evening.  Then, on May 30, 2019, I was interviewed by Jeff Diotte, a Detective Lieutenant from the Massachusetts State Police Detective Unit for the Cape and Islands.  I have not made or given any other statements concerning this incident.

**INTERROGATORY NO. 11**

Identify all communications, written or oral, that you have had concerning the incident or this lawsuit, from the date of the incident to the present. This includes in-person conversations, telephone calls, or any form of electronic communication. Provide the name of the parties to the communication, the date, the manner of communicating, the content of the communication and the length of the communication. If the communication was in writing, a copy of the document will suffice.

Your response should include communications you had about drafting your policereport as well as communications concerning any investigation of this incident.

For purposes of this interrogatory, the term electronic communication includes emails, text messages, and postings or comments to any internet or social media website, blog, or online forum such as Facebook, Twitter, Instagram, Reddit, Officer.com, Glock Talk, PoliceOne, Cops Online, and the like.

**ANSWER NO. 11**

**Objection**.  The Defendant objects to this interrogatory on the grounds that it is overly broad, unduly burdensome, and not proportional to the needs of the case.  Notwithstanding and without waiving this objection, the Defendant states as follows:

I spoke with family and friends about the incident shortly after it happened, as it was certainly not the outcome I had intended to achieve—I also wanted to alert my family to what had happened before they saw or read anything about it in the news.  I cannot recall the specifics of

these conversations.  I am sure I also spoke with other members of the Barnstable Police Department shortly after the incident, but I cannot remember the specific people I spoke with or what was said.

When this lawsuit was filed and a newspaper article was published by the Cape Cod Times about the evening of Mr. Miller's death, I again had conversations with my family about the allegations against me, but I do not remember any details about these conversations or when they occurred.

I remember receiving some feedback related to my draft report, but I do not recall the substance of those conversations or any specific corrections.

I did not send or receive any texts about this incident.

**INTERROGATORY NO. 12**

Identify all social media and online forum websites with which you have had an account at any time from April 16, 2019, to the present. These include websites suchas Facebook, Twitter, Instagram, Reddit, Officer.com, Glock Talk, PoliceOne, Cops Online, and the like. State your username for each such account.

**ANSWER NO. 12**

I have not posted or commented about this incident on any social media platform.  My usernames for these social media platforms are as follows:

| | |
|---|---|
| Facebook: | Spencer Jackson |
| Twitter: | N/A |
| Instagram: | Jackson2173_ |
| Reddit: | N/A |
| Officer.com: | N/A |
| Glock Talk: | N/A |
| PoliceOne: | N/A |
| Cops Online: | N/A |

**INTERROGATORY NO. 13**

If you have ever been a plaintiff or a defendant in a lawsuit, state the following:

a. the complete case caption, including any docket or other identifying number, and the forum in which the complaint was lodged;
b. the nature of the causes of action and a description of the allegations in the complaint;
c. the name, address, and telephone number of the counsel or representative for each party; and,
d. the final disposition of the case including the date it was resolved.

**ANSWER NO. 13**

I was a defendant in a federal lawsuit that was dismissed following a motion for summary judgment.

a. *Smith v. Town of Barnstable*, Civil Action No. 19-CV-12305-RGS (D. Mass. Apr. 14, 2021);

b. The plaintiff alleged unlawful arrest, false imprisonment, malicious prosecution, conspiracy to intimidate a witness, and violations of his right to equal protection and substantive due process after BPD responded to his girlfriend's 911 call reporting he had been throwing her around the residence. All claims were dismissed as to all defendants at summary judgment.

c. I was represented by Douglas I. Louison, Esq. of Louison, Costello, Condon & Pfaff, LLP, 101 Summer Street, Boston, MA 02110; Tel: 617-439-0305.

d. This case was dismissed on on April 14, 2021.

**INTERROGATORY NO. 14**

If you have ever been convicted of a crime, state:
a. the offense;
b. the date of occurrence;
c. the court and docket number; and,
d. the final disposition.

**ANSWER NO. 14**

12

I have never been convicted of a crime.

**INTERROGATORY NO. 15**

If you have ever been the subject of an internal investigation, administrative action, disciplinary action, citizen's complaint, or demand letter sent pursuant to M.G.L. c.258, state for each such incident:

a. the date of the incident;
b. the substance of the charge or allegation of misconduct made against you;
c. the date the initial charge or claim of misconduct was made;
d. the name and address of all persons making the complaint;
e. the outcome of each such charge or allegation of misconduct, including the dateand nature of the final disposition of the matter; and,
f. if any disciplinary action was taken against you as a result of the charge or allegation of misconduct, the nature of such disciplinary action and the name and address of the person administering such disciplinary action.

**ANSWER NO. 15**

**Objection**.  The Defendant objects to this interrogatory on the grounds that it seeks information that is confidential and neither relevant to the claims involved nor proportionate to the needs of the case.  Notwithstanding and without waiving this objection, the Defendant states as follows:

I am aware of the following IA investigation that involved me:

a. IA investigation regarding use of force
    i. 2017
    ii. This investigation related to an incident during which a detainee was injured in the BPD sally port.
    iii. No charge or claim was made.
    iv. None; this was an internal investigation initiated by Chief MacDonald.
    v. I do not know the purpose of the inquiry or what the findings of this investigation were.
    vi. I did not receive any discipline but I believe I received a letter indicating what the findings of the investigation were.

b. IA investigation regarding alleged inappropriate contact during domestic violence arrest

   i. 2013
   ii. Complainant alleged inappropriate contact during domestic violence arrest where complainant was resisting arrest
   iii. Unsure of complaint date
   iv. Althea Marshall, 77 Canterbury Circle, Hyannis, MA 02601
   v. I believe all allegations were dismissed
   vi. I do not believe I received any discipline

**INTERROGATORY NO. 16**

Identify every person, other than your attorneys, who has assisted or been consulted in preparing these answers, including that person's full name, title, address, telephone number, and relationship to the Barnstable Police Department.

**ANSWER NO. 16**

Other than with the assistance of counsel, I have not consulted with anyone in preparing these responses.

**INTERROGATORY NO. 17**

Identify every person with discoverable information whether or not Defendant intends to call the witness in his case in chief including any potential rebuttal witnesses.

**ANSWER NO. 17**

Please refer to Defendants' Initial Disclosures, and to my response to Interrogatory No. 2, above.

SIGNED UNDER THE PAINS AND PENALTIES OF PERJURY THIS 10th DAY OF SEPTEMBER, 2021.

Spencer Jackson

As to Objections:

_/s/ Alexandra M. Gill_
Douglas I. Louison (BBO# 545191)
Alexandra M. Gill (BBO# 663040)
Louison, Costello, Condon & Pfaff, LLP
101 Summer Street, 4th Floor
Boston, MA 02110
(617) 439-0305
dlouison@lccplaw.com
sgill@lccplaw.com

## <u>CERTIFICATE OF SERVICE</u>

I, Alexandra Gill, hereby certify that on September 21, 2021, I served the foregoing by causing a copy to be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and/via email or paper copies will be sent to those indicated as non-registered participants.

/s/ *Alexandra Gill*
Alexandra Gill