# In the Matter of:

*Estate of Robert Joseph Miller vs*

*Sean Roycroft et al.*

*Kenyon C. Pike, III*

*September 21, 2021*

68 Commercial Wharf • Boston, MA 02110
888.825.3376 - 617.399.0130
Global Coverage
court-reporting.com



Estate of Robert Joseph Miller vs
Sean Roycroft et al.

Kenyon C. Pike, III
September 21, 2021

6

which I will swear in the witness and we may begin.

MR. FRIEDMAN:  Why don't we also start the recording at this time.  It will be video recorded. I'm Howard Friedman.  I represent the Plaintiff and I consent.

(Recording in progress.)

MS. GILL:  Good morning.  I'm Alexandra Gill.  I represent the Defendants and the witness today, and I consent.

_____

KENYON C. PIKE, III, having been satisfactorily identified, and duly sworn by the Notary Public, was examined and testified as follows:

MS. GILL:  All right.

MR. FRIEDMAN:  Before we start questioning, we'll have the usual stipulations.  We will reserve all objections, except as to the form of questions, until the time of trial, including motions to strike.  Is that acceptable?

MS. GILL:  Wonderful.  Thank you.

MR. FRIEDMAN:  All right.

7

DIRECT EXAMINATION

BY MR. FRIEDMAN:

Q.   Would you state your name for the record, please.

A.   Kenyon C. Pike, the 3rd.

Q.   And are you known as Kenyon, or do you use other names?

A.   I go by Curtis, my middle name.

Q.   Okay.  Are you represented by counsel here today?

A.   Yes.

Q.   Okay.  And that -- and that would be Sasha Gill?

A.   Correct.

Q.   So just a few basics in the deposition. It's important that you answer in words because, even though there's a video recording, the court reporter is trying to write down everything you say. Okay?

A.   Yes.

Q.   And it's important, especially on Zoom, that you wait until I have finished asking the question before you answer it, and I in turn will try to wait until I'm sure you've finished answering

Estate of Robert Joseph Miller vs
Sean Roycroft et al.

Kenyon C. Pike, III
September 21, 2021

9

A.  NO.

Q.  Before this deposition, have you gone over, you know, what happened on April 16th of 2019 with anyone?

A.  NO.

Q.  Now, have you spoken to Vicki Yefko about the deposition?

A.  NO.

Q.  I understand -- in Barnstable, is it true that all of the EMTs are also firefighters?

A.  I'm not sure exactly what you're asking. Barnstable.  I don't work for Barnstable.  I work for Hyannis fire.

Q.  Okay.  Well, in Hyannis, is it the case that all of the EMTs are also firefighters?

A.  All the firefighters are EMTs, yes.  That's correct.

Q.  Okay.  And what percentage of the calls are EMT calls versus firefighter calls?

A.  I would say, probably, two-thirds to three-quarters are EMS calls.

Q.  How long have you been an EMT?

A.  30 years.

Q.  I assume that you have continual training

33

Q. All right. But the two primaries would be you and Officer Yefko?

A. We were the two paramedics assigned to the ambulance, Paramedic Yefko.

Q. Okay. What was Mr. Miller's condition when you arrived?

A. He was in cardiac arrest, and CPR was being provided.

Q. When you say, "cardiac arrest," he was in -- he's PEA, pulseless electrical activity?

A. He was unresponsive. The cardiac monitor showed that he had electrical activity but no pulse and no respirations.

Q. What treatment did you provide?

A. We provided standard ACLS procedures which are documented in the report.

Q. Did his condition change when you provided treatment?

A. No, it did not. He remained in PEA throughout the transport of the call.

Q. In your experience, have you been able to revive any patients who were in PEA when you arrived?

A. That's -- I -- I couldn't give you a