**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al.,<br><br>        *Plaintiffs,*<br><br>v.<br><br>DONALD J. TRUMP, in his official capacity as President of the United States; et al.,<br><br>        *Defendants.* | Case No. 1:26-cv-11581 |

**<u>DECLARATION OF MANDY VIGIL</u>**

I, Mandy Vigil, declare as follows:

1.	I am a resident of the State of New Mexico. I am over the age of 18. I am familiar with the information in the statements set forth below either through personal knowledge, consultation with New Mexico Secretary of State Office staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2.	I am the State Election Director in New Mexico. I work for the Secretary of State and support her in her official capacity as the Chief Election Officer for the State of New Mexico. In my role, I assist her in the execution and enforcement of all state and federal laws relating to elections.

3.	I have served as a public servant for over twenty years. Most recently, I have served as an election administrator in the Office of the Secretary of State since 2011. Currently, I serve as the State Election Director. I have served in this role for seven years. Prior to my role as the State Elections Director, I served as the Deputy Election Director, Ethics Division Manager,

1

and as a Compliance Officer. In addition, I serve as an election subject matter expert and representative of New Mexico for several election related organizations. I am the Immediate Past President of the National Association of State Election Directors, an Executive Board Member of the Electronic Registration Information Center, a Representative on the Election Assistance Commission Standards Board, a member of the Bipartisan Policy Center's Taskforce on elections, a member of the Election Workforce Advisory Council, and I represent the Standards Board on the Technical Guidelines Development Committee (TGDC).

4.    The Office of the New Mexico Secretary of State and the thirty-three county clerks are responsible for administering federal elections in New Mexico. This responsibility encompasses voter registration, maintaining and updating voter rolls, issuing ballots to registered voters, tabulating votes, and validating election returns prior to certification all elections for federal office, among numerous other tasks.

5.    The Secretary of State is the state's Chief Officer of Elections, responsible for obtaining and maintaining uniformity in the application, operation and interpretation of election laws. *See* NMSA 1978 §1-2-1 (2023). The Elections Bureau is responsible for implementing the Secretary of State's responsibilities with regard to elections, including the adoption and dissemination and training of election-related rules, procedures and guidance to all other election officials, and election related entities within the state. New Mexico law charges our office with preventing disenfranchisement and ensuring that all eligible voters who want to vote are able to do so. NMSA 1978 §1-4-2 (2019).

6.    In my role as State Elections Director, I am responsible for overseeing all programs related to election administration within the state. This includes election related systems, and compliance. I am responsible for ensuring the correct and legal administration of

2

election processes like list maintenance, including a program required to comply with the National Voter Registration Act ("NVRA"), developing election guidance, providing training and implementing new and improved processes and technology in support of election related stakeholders. I work directly with internal and external partners to develop all systems and procedures related to the administration of statewide elections. As the agency's subject matter expert and Election Director, I have extensive knowledge of the daily operations, legal requirements, and stakeholders involved. I oversee and provide direction on all system and process implementation to include all voter registration activities. I oversee the development and ongoing maintenance of our voter registration database and ballot management system, voter list maintenance, the statewide voter registration database, and mail in voting.

7.      Our office has already begun multiple parallel efforts in preparation for the November 2026 general election. Most notably, we have published the general election proclamation, which establishes the dates for the primary and general election and the filing deadlines for the stated offices to be filled in the upcoming general election. We have also prepared guidance, filed candidates, conducted training, issued voter notifications, and prepared and certified ballots. We are currently accepting mail ballot applications and issuing ballots to military and overseas voters for the major party primary election, which will determine the major party candidates to be nominated to appear on the ballot for the November 2026 midterms.

8.      Additionally, we are finalizing the budget submission for the New Mexico Department of Finance to authorize spending for the November election. In tandem with that effort, we are finalizing memorandums of understanding with all 33 county clerk offices regarding local election budgets for reimbursable expenses, including supplies, postage for mail

3

ballots and other related voting material, systems such as e-pollbooks and ballot on demand printers, on-site support, and election workers costs.

9.      We are currently working to ensure all third-party vendor contracts are in place for the fiscal year which begins on July 1, 2026, so that the appropriate staffing and expertise are in place to ensure all statutory deadlines are met. These include the post-election voting system audit check, and that system, supply, and ballot printing support is in place for the November election.

10.      Our public information campaign is already underway to provide New Mexico voters with information on how to participate in this year's elections and we will soon coordinate preparation and printing with a third-party vendor for the statutorily required voter notifications that must be sent out at least forty-two days prior to every statewide election. We send these voter notifications to all registered voters of the upcoming election. The notifications include the deadlines to submit a mail ballot application and to return a mail ballot to the county clerk for it to be counted, plus a recommended deadline to deposit the voted mailed ballot with the United States Postal Service for it to be received by the deadline.

11.      We have also begun roundtable and contingency planning efforts to prepare all election officials for "what if" scenarios, including natural disasters, cyberattacks, equipment failures, and misinformation efforts while simultaneously notifying and coordinating support at the state and local level to ensure adequate coordination. While voting has already officially begun for major party candidate nomination, we are currently preparing for independent and minor party candidate filing, which includes guidance, training, and public information, in order to file and qualify these candidates for appearance on the November ballot.I am familiar with the Executive Order published on March 31, 2026, entitled "Ensuring Citizenship Verification and

4

Integrity in Federal Elections" (the "EO"). Sections 2 through 5 of the EO (collectively, the "Challenged Provisions") have already caused considerable harm, confusion, fear, and disruption in New Mexico election administration, and will impose unrecoverable costs on New Mexico.

12.    The provisions of the EO would require immediate action from me and the team in the Secretary of State's Office to implement and to coordinate with other state and local agencies across New Mexico. Our efforts to address the directed changes and impacts of the EO will divert time and attention from other critical election preparations. Implementation of the provisions within the EO would create a significant hardship on the election community within the state of New Mexico. The provisions make drastic changes to the current procedures and workflow, require significant legal analysis that will translate to critical training and outreach to all local election officials, state voter registration agencies, as well as current and future registered voters. Furthermore, the EO implementation will require significant enhancements to our statewide voter registration database and ballot management systems that will require significant time and effort working in partnership with several vendors, and significant costs for which we do not currently have funds appropriated to support. We do not have any resources to dedicate to this effort. This would require a shift of 100% of our elections staff to these efforts and will dramatically interfere with our ability to prepare for the upcoming mid-term and statewide elections resulting in the need for additional staff and extended work hours.

13.    It is my understanding that Section 2(a) of the EO directs the Department of Homeland Security ("DHS") to create a "State Citizenship List" for each State, which will include "individuals confirmed to be United States citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State." It is also my understanding that DHS will send these lists "no fewer than 60 days before each

5

regularly scheduled Federal election, or promptly upon request by a State in connection with any special Federal election." This would mean that DHS will send this list by Friday, September 4, 2026, for the federal general election taking place on November 3, 2026, which is only 15 days before federal qualified voters in the military or overseas will begin voting in the election.

14.     Section 2 requires immediate action from me and the team in the Secretary of State's Office to understand how it interacts with New Mexico's statewide voter registration list, and to coordinate with other state and local agencies across New Mexico. Our efforts to address the changes and impacts of the EO will divert time and attention from other critical election preparations.

15.     Our office has a continuing obligation to work with all 33 counties to ensure regular list maintenance, as required under the NVRA, Help America Voter Act ("HAVA"), and New Mexico state law. This includes sending notices to voters who may have moved, identifying duplicates on the statewide voter registration list, cancelling the registrations of those who have been convicted of a felony and are currently incarcerated/or other state requirements, and cancelling the registration of those who have died.

16.     Additionally, our office will need to continue to register those who are eligible to vote in New Mexico. New Mexico allows qualified individuals to register up to 28 days before Election Day, *see* NMSA 1978 §1-4-8 (B) (2023), and in person during early voting and on Election Day, *see* NMSA 1978 §1-4-5.7 (2023). *See also* 52 U.S.C. § 20507(a)(1) (requiring States to permit registration up to 30 days before a federal election). New Mexico citizens can register to vote online, at their county clerk's office, at various state social service agencies, and through New Mexico's Department of Motor Vehicles when they submit sufficient information of their voter qualifications, including citizenship, through their transaction. Individuals must

6

verify their eligibility by providing a driver's license, state identification number issued by the motor vehicle division, or partial social security number. NMSA 1978 §1-4-5.4 (B) (2019). When registering online, a potential voter must provide their full social security number. *Id.*

17.    In compliance with the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), New Mexico allows uniformed and overseas voters to register for a federal election if their registration application is received at least 30 days before that election. 52 U.S.C. § 20302(a)(2).

18.    In compliance with the NVRA "quiet period" for voter registration, New Mexico does not systematically remove voters from the rolls during the 90 days prior to a federal election unless a statutory exception applies. *See* 52 U.S.C. §§ 20507(c)(2)(A), 3(A)-(B), 4(A). New Mexico does, however, lawfully remove voters on an individual basis where appropriate, such as when a voter requests that his or her registration be canceled.

19.    In sum, New Mexico's statewide voter registration list changes up to and on Election Day. Registrants are continually being added, updated, and removed as required (and limited) by federal and state law, and this will continue through the 2026 election and beyond.

20.    I have considered how this dynamic statewide voter registration list will intersect with the list created by DHS. As noted above, pursuant to Section 2(a) of the EO, DHS will share a State Citizenship List for the upcoming federal general election by September 4, 2026. The EO permits the state "to routinely supplement and provide suggested modifications or amendments to the State Citizenship List transmitted thereto." The EO does not require DHS to accept any of these state supplements, modifications, or amendments to the State Citizenship List.

21.    Once we receive the State Citizenship List, we will have to devote substantial resources to understanding any differences between it and our current statewide voter registration

7

list. As a baseline matter, comparing the State Citizenship List to our current statewide voter registration list will necessitate linking registrants across the lists. This will be difficult, as it is extremely doubtful that the State Citizenship List will contain the same unique identifiers as our statewide voter registration list, such that we could perform straightforward matching. Rather, it is inevitable that there will be differences in the files that will make matching difficult, time-consuming, and potentially inaccurate, as people's names, addresses, and other information may vary slightly (*e.g.*, Robert vs. Bob, Apartment #3 vs. Apt. 3). I know from my experience that data matching is a complex process and extreme care must be taken when the consequences of errors may lead to voter disenfranchisement. And because New Mexico will receive the State Citizenship List so close to the election, I must plan for all of this now.

22.    For eligible voters who appear on the statewide voter registration list but not the State Citizenship List, our office will need to investigate further pursuant to our obligation to ensure that eligible voters are able to vote. Even though New Mexico will not disenroll voters simply due to their absence from the State Citizenship List, it could disenfranchise voters in multiple ways. First, voters who check their status on the State Citizenship List as contemplated by Section 2(a) of the EO and see that they are not listed may be deterred from voting because they believe they will be blocked from voting or prosecuted, especially if DHS does not timely accept their corrections. Second, the United States Postal Service ("USPS") may rely on the State Citizenship List to determine which voters can receive and transmit mail ballots in response to the EO's emphasis on criminal penalties associated with the distribution of mail ballots to ineligible individuals. EO §§ 2(b), 3(a), 5. Additionally, if the State Citizenship List is publicly accessible, local elections workers may misunderstand their legal obligations and refuse to provide a ballot to eligible voters missing from the State Citizenship List based on their belief

that the voters are ineligible. These are all risks that New Mexico cannot accept. We must make every effort to avoid disenfranchising eligible New Mexico residents.

23.    Accordingly, in compliance with New Mexico's obligation to protect the right to vote, New Mexico would expend significant resources to attempt to supplement and amend the federal list as necessary, as errors were found through our comparison and investigation. This includes determining proper and secure methods for sending large volumes of confidential data to the federal government. However, even if we are able to quickly offer all necessary corrections, the EO does not require DHS to accept the State's "suggested modifications or amendments." EO § 2(a).

24.    New Mexico would incur significant costs to undertake this comparison and verification of the State Citizenship List and is not in a position to do this without hiring additional specialist to assist. The Secretary of State's Office received approximately $3.6 million less in funding than was conservatively requested from the legislature for this fiscal year. As a result of the drastic cuts by the federal government to HAVA funding provided to New Mexico compared to previous years, the appropriation from the state legislature must be used to partially cover the overall shortfall. The EO provides no funding, so paying for these costs will have to come from devoting fewer resources to our office's other pressing responsibilities, such as maintaining and upgrading the repository database for all corporate and business filings required by statute, replacement of near end-of-life equipment, installing a new filing system for campaign finance disclosures, improving cyber security systems and measures, and of course, the rising costs of administering elections.

25.    The Secretary of State is required by law to provide training, guidance and resources to all local election administration offices, voter registration agencies, and other local

governments to ensure the uniform application of state and federal election laws. We provide a large array of systems and materials to support this effort. Pursuant to NMSA 1978 §1-2-5 (1975), the Secretary of State "shall, once before each and every statewide election, cause to be organized and conducted at convenient places and times in the state seminars on the administration of the Election Code." In addition, the Elections Bureau holds a monthly meeting by video conferencing with the county clerks and their respective staff to provide updates to election-related issues.

26.     If Section 2 is implemented, New Mexico will have to devote significant time, personnel, and money to update training materials for local election officials and their staff, specifically detailing what steps they must take with respect to voters who appear on New Mexico's voter registration list but not on the State Citizenship List. This is yet another aspect of the EO's implementation that will necessarily divert close to 100% of our understaffed team's resources from other important election administration tasks.

27.     I anticipate that in addition to formal training materials, our office will need to allocate significant resources to responding directly to local election officials, given the threat of criminal prosecution in Section 2 of the EO. The systematic and administrative changes required within the timeline involve drastic changes to the current procedure and workflow, including critical outreach to all local election officials, state voter registration agencies, as well as current and future registered voters.

28.     Compliance with the EO will require significant enhancements to our system which were not planned for from a budget perspective. These types of enhancements require several months of effort for development, programming, implementation, and testing, and

10

appropriated funds. We simply do not have the time or budgetary resources required for an effort of this type.

29.    At the same time my staff is performing investigations into the accuracy of the State Citizenship List, they will have to conduct a wide-ranging public education campaign to ensure that eligible voters understand the EO's effects, and how they may impact a citizen's registration and ability to vote. For example, my staff will have to prepare and distribute training materials guiding citizens through accessing and correcting their individual records on the State Citizenship List under Section 2(a). We will also need to field questions from registrants concerned about their voter registration status and generally confused about the process and qualifications to vote in New Mexico elections. Overall, I expect that the EO will effectively disenfranchise many thousands of otherwise eligible New Mexican voters.

30.    A six-month statewide public education campaign administered by the Secretary of State's office in 2024 cost approximately $225,000. I estimate that such an education effort about the EO's new requirements would cost substantially more given the profound impact that a State Citizenship List would have on the electorate. Additional funding would have to be appropriated by the legislature, which is not scheduled to meet until early 2027. As previously noted, the Secretary of State's office is currently underbudgeted and understaffed. There is no currently available money to spend on an unexpected public education campaign.

31.    In my experience administering elections, changes to registration and election procedures in the time immediately preceding the election can cause voter confusion. The complicated requirements of the EO will likely lead some citizens to misunderstand the requirements for registration, or whether they are able to vote in New Mexico's elections. Some citizens will determine that the added requirements make registering and/or voting too confusing

11

to be worthwhile. For example, a voter may check their individual status on the State Citizenship list, according to the EO. If they are mistakenly not included, they may believe they have no recourse, and choose not to vote, or they may misunderstand the process for correction (despite our office's attempts to provide education), or DHS may not issue a correction in time. The result of this confusion will be that fewer eligible voters successfully register to vote or decide to cast a ballot.

32.    This inevitable voter confusion harms New Mexico because it will disenfranchise voters, interfering with our sovereign interest and state-law obligation to ensure that all eligible voters who want to can cast a vote. It will also impose a burden on my staff's time, as my staff (and the elections staff at the counties) will be responsible for dispelling voter confusion to the extent possible. This voter confusion will come at a crucial time, shortly before the election, when local elections officials' resources are particularly stretched.

33.    New Mexico elections officials are required by state law to prepare and supply ballots for elections, NMSA §1-10-2 (2007), and issue an absentee ballot to duly registered voters upon request, *see* NMSA 1978 §1-6-3 (2019) ("[A] voter may vote absentee in all candidate contests and on all ballot questions as if the voter had appeared on the day of the election to vote in person at a polling location."). Our office intends to comply with these state requirements in administering upcoming federal elections.

34.    In compliance with UOCAVA, New Mexico issues ballots to registered voters who request an absentee ballot under that Act at least 45 days before an election. 52 U.S.C. §§ 20302(a)(1)-(3), (8)(A).

35.    It is my understanding that Section 2(b) of the EO instructs the Attorney General to prioritize investigation and prosecution, under a variety of federal statutes, of "State and local

12

officials or any others involved in the administration of Federal elections who issue Federal ballots to individuals not eligible to vote in a Federal election." I understand that the EO provides that "an individual is 'eligible to vote in a Federal election' if the individual is a citizen of the United States, 18 years of age or older by the date of the upcoming election and otherwise qualified under the laws of his or her State." I further understand that Section 5 of the EO encourages referrals to U.S. DOJ of "[e]vidence of violations of existing Federal laws by State or local election officials" and "States or localities," among other parties, "for consideration of investigation or charges."

36.     If EO Section 2 goes into effect, I would be concerned that I, the Secretary of State's office staff, and New Mexico election officials would face federal prosecution if we issued ballots to New Mexico voters who are not on the State Citizenship List. I am concerned about the impact of these threats of criminal prosecution on our staff, and county election officials, not because I believe they have violated these provisions, but because the EO increases the amount of pressure and scrutiny on them, including by the public.

37.     The EO's threat of prosecution is significantly exacerbated by the fact that the EO defines voter eligibility in a manner inconsistent with New Mexico law. New Mexico law permits an otherwise eligible voter to cast a ballot in a federal primary election if the voter will be 18 years of age by the general election NMSA 1978 §1-4-2(B)(3) (2019). EO Section 2(b) thus directly conflicts with state law, and it threatens New Mexico elections officials with prosecution for issuing primary ballots to eligible 17-year-old voters. This issue has and will cause significant confusion about the rules applicable to upcoming elections.

38.     I know that the threat of prosecution under the EO is on the minds of state and local elections officials like me. This concern has been the topic of conversation in a number of

13

discussions that I have had since the EO issued. Adequately staffing state and local election positions is always difficult, and I worry that this could become a problem in the future as people may not wish to take on the risk.

39.     Should the U.S. Attorney General initiate any such enforcement actions, the N.M. Secretary of State would be required to divert significant resources not only to respond to such legal action but also to educate the public, with the aim of minimizing voter confusion to the extent possible.

40.     Any such legal proceedings would have severe and adverse consequences for the public's trust in New Mexico's administration of elections. The election landscape has changed considerably since 2020, and election deniers have been vocal about their belief that elections in general are not to be trusted.

41.     Additionally, the creation of a State Citizenship List may directly disenfranchise voters. Based on my experience, I know that if a citizen is not included on the list—due, for example, to errors in DHS's static immigration information contained in its Systematic Alien Verification for Entitlements (SAVE) system, the federal government's misinterpretation of whether the citizen qualifies as a state resident, or any other error—they may believe they are unable to vote, and could be prosecuted for doing so. That is why New Mexico works so hard to maintain accurate consistent voter registration information so that voters are not erroneously informed that they are ineligible to vote.

42.     Based on my experience assisting local election workers, I know that those workers may feel they cannot register or send a ballot to such voters without risking criminal prosecution, despite those voters' fundamental right to vote under state and federal law. Similarly, based on my experience, I know that USPS or other entities involved in the "printing,

14

production, shipment, or distribution of ballots" may believe they cannot provide a ballot to those voters without risking criminal prosecution.

43.    New Mexico provides a mail ballot to all voters who submit an official form application, or its online equivalent accessed through a website approved by the Secretary of State, provided that the voter has a current or expired New Mexico driver's license or state identification card issued by the motor vehicle division of the taxation and revenue department. *See* NMSA 1978 §1-6-4 (2025). For new registrants who registered for the first time in this state by mail and at that time did not provide acceptable documentary identification as required by federal law, New Mexico law provides that such registrants shall be informed of the need to comply with federal identification requirements when returning the requested ballot. Such a registrant is also notified that if the registrant votes for the first time in New Mexico by mail and does not follow the instructions for returning the required documentary identification, the registrant waives the right to secrecy in that mailed ballot. *see* NMSA 1978 §1-6-4 (F) (2025). Our office intends to comply with these state legal requirements in administering upcoming federal elections.

44.    New Mexico law also allows a voter (except a federal qualified voter who is subject to provisions of the Uniform Military and Overseas Voters Act, §§1-6B-1 to 1-6B-17 NMSA 1978, or the Intimate Partner Violence Survivor Suffrage Act, §§1-6C-1 to 1-6C-9 NMSA 1978) to apply to be added to the voluntary permanent absentee voter list for the county in which the voter is registered. *See* NMSA 1978 §1-6-3.1 (2023).

45.    It is my understanding that Section 3(b) of the EO directs USPS to initiate a rulemaking that, among other things, would allow States to provide lists of mail voters to USPS 60 days before an election, require the creation of a "Mail-In and Absentee Participation List"

15

("USPS Mail Ballot List"), and prohibit USPS from delivering mail ballots sent by individuals not on the USPS Mail Ballot List. It is also my understanding that New Mexico can "routinely supplement and provide suggested modifications or amendments" to the USPS Mail Ballot List, but USPS is not required to accept any changes provided by New Mexico.

46.    Under Section 3(b) of the EO, in order to comply with state law requiring absentee voters to receive a mail ballot, at least 60 days before Election Day we would need to send a list to USPS of voters to whom we intend to send a mail-in or absentee ballot ("State Mail Ballot List"). For the 2026 federal general election, that deadline will be September 4, 2026. Failing to provide this list to USPS would pose an unacceptable risk under the EO that USPS will not include New Mexico absentee voters on the USPS Mail Ballot List, thereby making it more difficult or impossible for eligible voters to cast their ballots.

47.    As discussed throughout this declaration, New Mexico's use of the mail for elections, paired with our election calendar, means I must plan now for how to align New Mexico's administration of mail voting with the EO.

48.    Creating the State Mail Ballot List will require our office and local elections officials to expend time and resources to ensure that all voters who timely requested an absentee ballot or who have requested to be placed on a voluntary permanent absentee voter list are included. This task will be significantly complicated by the influx of registration updates and changes that elections officials typically receive in the months before the election (and which I expect will be exacerbated by the State Citizenship List provisions discussed above).

49.    The deadline to provide this list to USPS no later than 60 days before the election means that some voters who are entitled to a mail ballot under state and federal law will unavoidably be left off the list. UOCAVA permits uniformed and overseas voters to request

16

absentee ballots up to 45 days before an election. 52 U.S.C. § 20302(a)(8). Under New Mexico law, an application for a mailed ballot from a voter who is not a federal qualified voter is timely if received by the county clerk no later than fourteen days prior to election day. *see* NMSA 1978 §1-6-5 (A) (2023). Although the EO indicates that States will be able to "routinely supplement and provide suggested modifications or amendments" to the USPS Mail Ballot List, USPS is not required to accept our suggestions. The EO also does not specify when USPS will transmit its USPS Mail Ballot List to our office, which could cause substantial complications.

50. Once we receive the USPS Mail Ballot List, we will have to devote substantial resources to understanding any differences between it and our own list of voters eligible to receive mail ballots. This will be a difficult task for many of the same reasons set out above with regard to the State Citizenship List, including: the lack of unique identifiers shared by both lists, the potential for slight variations in spelling to wrongly preclude matches, the fluid nature of voter registration rolls in the lead-up to elections, and administrative challenges inherent to any data-matching process. Accordingly, reviewing the USPS Mail Ballot List will require a significant expenditure of time and resources.

51. For citizens who appear on the statewide voter registration list and are eligible to receive a mail ballot under New Mexico law but not the USPS Mail Ballot List, our office will need to investigate further to comply with our obligation to ensure that every absentee voter is able to receive a mail ballot as requested. We must make every effort to do so to avoid disenfranchising eligible New Mexico residents.

52. New Mexico would expend significant resources to attempt to supplement and amend the USPS Mail Ballot list as necessary, as errors were found through our comparison and investigation. This includes determining proper and secure methods for sending large volumes of

17

confidential data to the USPS. This is true even though the EO instructs that we can only "supplement" and "provide suggested modifications or amendments" to the USPS Mail Ballot List, and USPS is not required to accept them.

53. Even with the best efforts of our office and local elections officials, the challenges of completing a complex data-matching program in a short timeframe without adequate funding and while preparing to administer an election poses the high risk of errors and omissions.

54. New Mexico would incur significant costs to undertake this comparison and verification of the USPS Mail Ballot List. The requirements imposed by the EO will involve significant adjustments to the programming and the fields for entry of data related to new requirements of the EO. Based on past experience, even modest changes to programming in New Mexico's voter registration database system, which is called SERVIS ("State Elections, Registration & Voting Integrity Systems"), can take several months to accomplish, and then to test and work out any "bugs" that may be encountered. To the extent that the EO imposes new and different requirements that apply to federal elections, it is impossible to predict the amount of work, expense, and time involved to program SERVIS to distinguish and accommodate federal elections from state elections, other than to say that it will be considerable. Also, we would be dependent upon our system vendors to assist with the effort, many of whom would be supporting other states with a similar effort at the same time, causing additional resource burdens and time constraints.

55. If Section 3 is implemented, New Mexico will have to devote significant time, personnel, and money to update training materials for local elections officials and their staff. Those materials would have to specifically detail what steps they must take with respect to voters who appear on New Mexico's voter registration list and are eligible to receive a mail ballot under

18

New Mexico law, but who do not appear on the USPS Mail Ballot List. This is yet another aspect of the EO's implementation that will necessarily divert more than half of our team's resources from other important election administration tasks.

56.    I anticipate that, in addition to formal training materials, our office will need to allocate significant resources to responding directly to local elections officials, given the threat of criminal prosecution in the EO.

57.    At the same time my staff is creating the State Mail Ballot List and performing investigations into the accuracy of the USPS Mail Ballot List, they will have to field questions from citizens concerned about their ability to receive or return a mail ballot in the upcoming elections. Thus, a separate impact of the EO's directive concerns the need for a wide-ranging public education campaign to ensure that eligible voters understand the EO's requirements, and how they may impact a citizen's ability to vote by mail. This is particularly the case for New Mexico residents, who are used to receiving mail ballots and being able to vote by mail under existing state law.

58.    Apart from the time and monetary costs that Section 3's implementation would impose on New Mexico, Section 3 also risks voter confusion and disenfranchisement. This inevitable voter confusion is a harm in and of itself and is also a burden on my staff's time. This voter confusion will come at a crucial time shortly before the election, when state and local elections officials are required under New Mexico law to send mail ballots to all voters who have requested to vote by mail.

59.    Sending mail ballots in a timely fashion is not only required by state and federal law, but it is critical to ensuring that as many eligible New Mexico citizens as possible can exercise their right to vote. In the 2024 General Election, a total of 128,642 absentee ballots were

19

issued, of which 117,701 were returned, which represents 12.68% of total votes cast. Also, the current number of voters on the voluntary permanent absentee list is 57,430. This method of voting is particularly important for the many New Mexico citizens who live in extremely remote areas where their polling place may be far from their home. New Mexico is the fifth largest state by geographical area, but ranks 36th in population, which translates to long distances between remote towns and villages. New Mexico also is home to 23 federally recognized Native American pueblo tribes, many of which are also remotely located.

60. Errors in the USPS Mail Ballot List would be extremely deleterious because of the potential for voter disenfranchisement. For example, consider an eligible voter who is on the State Mail Ballot List but not on the USPS Mail Ballot List. Under the EO, they are likely to receive a mail ballot from their local elections official that USPS will later refuse to return to the local elections official. In that situation, the voter may think that they have voted, but they have not. Nor would the voter necessarily know to cancel that ballot and vote in person, given that the EO does not charge USPS with notifying the voter. A voter may also be concerned about casting two ballots, which is itself a criminal violation, and choose not to vote. Our office must take every measure possible to avoid this kind of voter disenfranchisement.

61. In my experience administering elections, changes to election procedures in the time immediately preceding an election can cause voter confusion. The EO's complicated requirements will likely lead some eligible voters to misunderstand whether they are able to use a mail ballot. Some eligible voters will determine that the added requirements make voting too confusing to be worthwhile. The result of this confusion will be that fewer eligible voters decide to cast a ballot.

62.     There are several additional inherent problems posed by the deadlines outlined above and the requirement to compare static lists (the State Citizenship List, USPS Mail Ballot List, and State Mail Ballot List) with a continually evolving list (the statewide voter registration list). For example, between the day the State Citizenship List is sent (60 days prior to the election) and 14 days before Election Day, which is the last day a voter may register and receive a mail ballot under New Mexico law, there will inevitably be a significant number of individuals who become eligible but are not captured on the State Citizenship List. They may, for example, have recently moved to New Mexico or become a naturalized citizen after the list was sent. Regarding voters who have moved, I am not aware of any legal requirement that voters regularly report change of residential address to the Federal Government.

63.     As stated in paragraph 56 above, this process is likely to be particularly complicated in New Mexico, as our state has a diverse population spread out over a large geographical area. Inconsistencies between the State Citizenship List and New Mexico's own voter rolls would require considerable effort, time, and expense for an affected voter to attempt to correct their status, and many will not be willing or able to undertake the effort and thereby lose their existing right to vote.

64.     Additionally, as already noted, the timeline simply does not seem workable. The EO requires DHS to send the State Citizenship List to States "no fewer than 60 days before each regularly scheduled Federal election." For the November 3, 2026, General Election, that means DHS must send this list by Friday, September 4, 2026. And New Mexico must also send its State Mail Ballot List to USPS 60 days before the election—also Friday, September 4, 2026. Thus, we must send the State Mail Ballot List (i.e., all those who should receive a mail ballot under state law) to USPS on the *same day* we might receive the State Citizenship List from DHS.

21

Comparing the statewide voter registration list and the State Citizenship List to see who is eligible according to both lists in *one day*, or even *a few hours*, is simply not possible to do with any meaningful degree of accuracy, no matter how many resources our office dedicates to the project.

65.     Although the EO provides that we may "routinely supplement and provide suggested modifications or amendments" to the USPS Mail Ballot List, there is no guarantee that USPS will accept those suggestions. If we—in an attempt to protect New Mexico's elections officials from criminal liability—sent a State Mail Ballot List to USPS 60 days before Election Day that reflected only confirmed matches between the statewide voter registration list and the State Citizenship List, knowing that many eligible voters could have been wrongfully excluded from the State Citizenship List, we would be committing ourselves to potentially violating New Mexico law. We could then endeavor to submit additional matches as we confirmed them. But it would be very difficult to do so quickly enough to matter. On September 19, 2026—only 15 days after we receive the State Citizenship List—our UOCAVA voters' ballots must be mailed out. Shortly thereafter, ballots must be sent to an applicant who has requested a mail-in ballot beginning 28 days before the election. Even if DHS and USPS accepted our suggestions, there is unlikely to be enough time to get a ballot to those who are eligible but did not appear on the State Citizenship List. Voters would be disenfranchised and New Mexico law would not be honored.

66.     Again, because of our obligation to ensure that every eligible New Mexico resident can vote, we would need to take additional steps after receiving the State Citizenship List and USPS Mail Ballot List to investigate the status of all those on the statewide registration list who do not appear on the federal lists, and then suggest changes to both. This will require data matching, verification, follow-up investigations, and interfacing with DHS, USPS, counties,

22

the public, and others, and will demand an enormous investment of resources. Additionally, state cybersecurity and information technology staff would need to be involved to facilitate the secure transfer of information between the federal government and the Secretary of State's Office. This is in addition to the staff time required to work with DHS and USPS to securely transfer information.

67.    I estimate that these new staffing needs will require an increase of a minimum of $1 million to the Secretary of State's budget. Given recent economic pressures across the state and country, the Secretary of State's office already operates with a lean budget; as noted above, the appropriation from the legislature for the next fiscal year was $3.6 million less than was requested. The EO will increase financial strain on our office and necessitate a higher budget. I will either need to go back to the Legislature and ask for additional funds, which I am far from assured of receiving or I will need to identify equivalent cuts elsewhere in our office. Given the timeline, additional funding may, in fact, be impossible as it would require the Governor to call a special session of the legislature to consider and approve the additional funding request. Such a session would also come with its own associated costs for New Mexico.

68.    Any time spent by current staff on implementing the EO would divert time and attention from other critical election preparation in the days leading up to the election, our office's busiest time. Our staff is already at capacity and dedicated to routine tasks and special projects that ensure New Mexico's elections run smoothly and every eligible New Mexican resident can exercise their right to vote. This work becomes more voluminous, significant, and urgent in the months leading up to the election, when we must answer an increasing volume of questions and handle tasks related to, for example, campaign finance reporting, logic and accuracy testing, and voter challenges.

23

69.     It is my understanding that Section 5 of the EO directs that "States and localities should preserve, for a 5-year period, all records and materials—excluding ballots cast—evidencing voter participation in any federal election (e.g., ballot envelopes, regardless of carrier)." Existing federal law only requires preservation of voting materials for 22 months following an election, and preservation of records concerning voter roll maintenance for two years. 52 U.S.C. §§ 20507(i)(1), 20701. New Mexico law and regulations also set timelines for the preservation and destruction of voting materials in federal elections. NMSA 1978 §1-12-69 (2023) provides for a twenty-two-month retention period for "paper ballots marked by voters and records requisite to voting" in which a federal office appears on the ballot. After the retention period, these documents may be destroyed at a time and in a manner as determined by the county clerk, provided that the county clerk utilizes one of the destruction methods approved by the state records administrator for destruction of public records. Any interested person is permitted to be present during the destruction of paper ballots marked by a voter and records requisite to voting by the county clerk. At least seven days prior to destruction, the clerk is required to post on the county website a notice of destruction of paper ballots and records requisite to voting and also to provide notice to the county chair of each political party participating in that election. *Id.*

70.     Compliance with a five-year document preservation standard for election materials would impose significant compliance, storage, and other costs on New Mexico and local elections officials.

71.     For example, current document retention requires New Mexico to create policies and guidance, track and enforce compliance, provide for physical storage in a safe and secure facility, and consider and implement electronic storage requirements. These requirements already incur significant staff time and come at considerable expense.

24

72.     Additionally, under current federal law, New Mexico may begin properly disposing of paper ballots marked by voters and records requisite to voting from the 2024 primary and general elections beginning twenty-two months from the date of the election. The EO prevents New Mexico from undertaking these actions as to some, but not all, of the retained materials, and requires New Mexico to incur further management, storage, and security costs instead.

73.     More than doubling the required retention time for some (but not *all*) voting materials would increase these burdens and costs significantly.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 21, 2026, at Santa Fe, New Mexico.

_____
Mandy Vigil
State Elections Director
Office of the New Mexico Secretary of State

25