**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STATE OF CALIFORNIA; et al., | |
| *Plaintiffs,* | |
| v. | Case No. 1:26-cv-11581 |
| DONALD J. TRUMP, in his official capacity as President of the United States; et al., | |
| *Defendants.* | |

**DECLARATION OF MARC BRUNTON**

I, MARC BRUNTON, declare as follows:

1. I am a resident of North Carolina.  I am over the age of 18.  I am familiar with the information in the statements set forth below either through personal knowledge or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2. I serve as Assistant Deputy Attorney General in the North Carolina Department of Justice.  I have held this role since February 2025 and have worked at the Department since October 2023. During this time, I have advised members of the Department on various matters concerning state and federal election law. I have a law degree from Stanford Law School and a Bachelor of Arts in Public Policy and English from the University of North Carolina at Chapel Hill.

3. The State of North Carolina and its counties are responsible for administering federal elections in North Carolina.  This responsibility encompasses voter registration,

1

maintaining and updating voter rolls, issuing ballots to registered voters, tabulating votes, and certifying results in all elections for federal office, among numerous other tasks.

4.      I am familiar with the Executive Order published on March 31, 2026, entitled "Ensuring Citizenship Verification and Integrity in Federal Elections" (the "EO").  Sections 2 through 5 of the EO (collectively, the "Challenged Provisions") will impose unrecoverable costs on the State of North Carolina.

5.      It is my understanding that Section 2(a) of the EO directs the Department of Homeland Security ("DHS") to create a "State Citizenship List" for each State, which will include "individuals confirmed to be United States citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State."  It is also my understanding that DHS will send these lists "no fewer than 60 days before each regularly scheduled Federal election, or promptly upon request by a State in connection with any special Federal election."  This would mean that DHS will send this list by September 4, 2026, for the 2026 federal general election.

6.      The State of North Carolina has a continuing obligation to work with the counties to perform regular list maintenance, as required under the National Voter Registration Act ("NVRA"), Help America Voter Act ("HAVA"), and North Carolina state law.  This includes sending notices to voters who may have moved, identifying duplicates on the statewide voter registration list, cancelling the registrations of those who are serving a felony sentence, and cancelling the registration of those who have died.

7.      Additionally, the State of North Carolina will need to continue to register those who are eligible to vote in North Carolina.  North Carolina allows most qualified individuals to register up to 25 days before Election Day and in person during early voting.  N.C. Gen. Stat

2

§§ 163-82.6(d), -82.6B; *see also* 52 U.S.C. § 20507(a)(1) (NVRA provision requiring States to permit registration up to 30 days before a federal election).  Individuals must attest, under penalty of a felony, that they meet each eligibility requirement to register to vote in federal elections, specifically including that they are a citizen of the United States.  N.C. Gen. Stat § 163-82.4(c), (e).

8.      The Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA) allows uniformed and overseas voters to register for a federal election if their registration application is received at least 30 days before that election.  52 U.S.C. § 20302(a)(2).  North Carolina far exceeds this requirement and allows uniformed and overseas voters to register for a federal election if their registration application is received by 5:00 p.m. on the day before that election. N.C. Gen. Stat § 163-258.6(d).

9.      In compliance with the NVRA "quiet period" for voter registration, the State of North Carolina does not systematically remove voters from the rolls during the 90 days prior to a federal election unless a statutory exception applies.  *See* 52 U.S.C. §§ 20507(c)(2)(A), 3(A)-(B), 4(A).  The State of North Carolina does, however, lawfully remove voters on an individual basis where appropriate, such as when a voter requests that his or her registration be canceled.

10.     In sum, North Carolina's statewide voter registration list changes up to Election Day.  Registrants are constantly being added, updated, and removed as required (and limited) by federal and state law, and this will continue through the 2026 election and beyond.

11.     This dynamic statewide voter registration list may create conflicts with the list created by DHS.  As noted above, pursuant to Section 2(a) of the EO, DHS will share a State Citizenship List with the State of North Carolina by September 4, 2026.  The EO permits the State of North Carolina "to routinely supplement and provide suggested modifications or

3

amendments to the State Citizenship List transmitted thereto." The EO does not require DHS to accept any of these state supplements, modifications, or amendments to the State Citizenship List offered by the State of North Carolina. EO § 2(a).

12. Once the State of North Carolina receives the State Citizenship List, it is inevitable that there will be differences in the files that will make matching difficult, time-consuming, and potentially inaccurate, as people's names, addresses, and other information may vary slightly (*e.g.*, Robert vs. Bob, Apartment #3 vs. Apt. 3).

13. The State of North Carolina would incur significant costs to undertake this matching with the State Citizenship List. The EO provides no funding to pay for these costs.

14. The State Citizenship List could disenfranchise voters in multiple ways. First, voters who check their status on the State Citizenship List as contemplated by Section 2(a) and see that they are not listed may be deterred from voting because they believe they will be blocked from voting or prosecuted, especially if DHS does not timely accept their corrections. Second, USPS may rely on the State Citizenship List to determine which voters can receive and transmit mail ballots in response to the EO's emphasis on criminal penalties associated with the distribution of mail ballots to ineligible individuals. EO §§ 2(b), 3(a), 5. Additionally, if the State Citizenship List is publicly accessible, local elections workers may misunderstand their legal obligations and refuse to provide a ballot to eligible voters missing from the State Citizenship List based on their belief that the voters are ineligible. These are all risks that the State of North Carolina cannot accept.

15. The complicated requirements of the EO may lead some citizens to misunderstand the requirements for registration, or whether they are able to vote in North Carolina's elections. Some citizens may determine that the added requirements make registering and/or voting too

4

confusing to be worthwhile.  For example, a voter may check their individual status on the State Citizenship list, according to the EO.  If they are mistakenly not included, they may believe they have no recourse, and choose not to vote, or they may misunderstand the process for correction, or DHS may not issue a correction in time.  This potential voter confusion harms the State of North Carolina because it could disenfranchise voters and interfere with our sovereign interest in setting the times, places and manner of federal elections.

16.    North Carolina elections officials are required by state law to issue ballots to duly registered voters.  N.C. Gen. Stat. § 163-166.7(b).

17.    It is my understanding that Section 2(b) of the EO instructs the Attorney General to prioritize investigation and prosecution, under a variety of federal statutes, of "State and local officials or any others involved in the administration of Federal elections who issue Federal ballots to individuals not eligible to vote in a Federal election."  I understand that the EO provides that "an individual is 'eligible to vote in a Federal election' if the individual is a citizen of the United States, 18 years of age or older by the date of the upcoming election, and otherwise qualified under the laws of his or her State."  I further understand that Section 5 of the EO encourages referrals to U.S. DOJ of "[e]vidence of violations of existing Federal laws by State or local election officials" and "States or localities," among other parties, "for consideration of investigation or charges."

18.    If EO Section 2 goes into effect, I would be concerned that North Carolina elections officials would face federal prosecution if they issued ballots to North Carolina voters who are not on the State Citizenship List.  I am concerned about the impact of these threats of criminal prosecution, not because I believe these officials will have violated federal law, but because the EO increases the amount of pressure and scrutiny on them, including by the public.

5

19.     The EO's threat of prosecution is exacerbated by the fact that the EO defines voter eligibility in a manner inconsistent with North Carolina law.  North Carolina law permits an otherwise eligible voter to cast a ballot in a federal primary election if the voter will be 18 years of age by the general election.  N.C. Gen. Stat. § 163-59.  EO Section 2(b) thus directly conflicts with state law, and it threatens North Carolina elections officials with prosecution for issuing primary ballots to eligible 17-year-old voters.

20.     Any such federal prosecutions would have severe and adverse consequences for the public's trust in North Carolina's administration of elections.

21.     North Carolina provides a mail ballot to qualified voters who request them at least 14 days before an election.  N.C. Gen. Stat. § 163-230.1(a).

22.     UOCAVA permits uniformed and overseas voters to request absentee ballots up to 45 days before an election.  52 U.S.C. § 20302(a)(8).  North Carolina far exceeds this requirement and allows uniformed and overseas voters to request an absentee ballot if their registration application is received by 5:00 p.m. on the day before that election.  N.C. Gen. Stat § 163-258.8.

23.     UOCAVA also provides that uniformed and overseas voters may vote by mail using a Federal write-in absentee ballot when such voters make a timely application for, but do not receive, an absentee ballot.  52 U.S.C. § 20303.

24.     It is my understanding that Section 3(b) of the EO directs the United States Postal Service ("USPS") to initiate a rulemaking that, among other things, would allow the State of North Carolina to provide lists of mail voters to USPS 60 days before an election, require the USPS to create and provide to the State of North Carolina a "Mail-In and Absentee Participation List" ("USPS Mail Ballot List") and prohibit USPS from delivering mail ballots sent by North

Carolina voters not on the USPS Mail Ballot List.  It is also my understanding that the State of North Carolina can "routinely supplement and provide suggested modifications or amendments" to the USPS Mail Ballot List, but USPS is not required to accept any changes provided by the State of North Carolina.

25.     Under Section 3(b) of the EO, in order to comply with state law requiring absentee voters to receive a mail ballot, N.C. Gen. Stat. § 163-230.1(a), the State of North Carolina would need to send a list to USPS at least 60 days before Election Day of voters to whom the State of North Carolina intends to send a mail-in or absentee ballot ("State Mail Ballot List").  For the 2026 federal general election, that deadline will be September 4, 2026.  Failing to provide this list to USPS would pose an unacceptable risk under the EO that USPS will not include North Carolina absentee voters on the USPS Mail Ballot List, thereby making it more difficult or impossible for eligible voters to cast their ballots.

26.     The deadline to provide this list to USPS no later than 60 days before the election means that some voters who are entitled to a mail ballot under state and federal law will unavoidably be left off the list.  As explained earlier, most voters under North Carolina law may request an absentee ballot up to 14 days before an election, while uniformed and overseas voters may request a ballot up to 5:00 p.m. on the day before the election.  Although the EO indicates that States will be able to "routinely supplement and provide suggested modifications or amendments" to the USPS Mail Ballot List, USPS is not required to accept the State of North Carolina's suggestions.  The EO also does not specify when USPS will transmit its USPS Mail Ballot List to the State of North Carolina, which could cause substantial complications.

27.     The State of North Carolina would expend significant resources to attempt to supplement and amend the USPS Mail Ballot list as necessary, as errors are found through

comparison and investigation.  This includes determining proper and secure methods for sending large volumes of confidential data to the USPS.  This is true even though the EO instructs that the State of North Carolina can only "supplement" and "provide suggested modifications or amendments" to the USPS Mail Ballot List, and USPS is not required to accept them.

28.    The State of North Carolina would incur significant costs to undertake this comparison and verification of the USPS Mail Ballot List.  The EO provides no funding to pay for these costs.

29.    Apart from the time and monetary costs that Section 3's implementation would impose on the State of North Carolina, Section 3 also risks voter confusion and disenfranchisement.  This voter confusion will come at a crucial time shortly before the election, when state and local elections officials are required under North Carolina law to send mail ballots to qualified voters who timely request them.  This potential voter confusion harms the State of North Carolina because it could disenfranchise voters and interfere with our sovereign interest in setting the times, places and manner of federal elections.

30.    Sending mail ballots in a timely fashion is not only required by state and federal law, but is critical to ensuring that as many eligible North Carolina voters as possible can exercise their right to vote.  In the 2024 presidential election, 295,602 valid votes were cast by mail by North Carolina voters, which represents nearly 5.19% of all valid North Carolina votes cast for president.

31.    The ability to vote by mail for the 2024 general election was particularly important for the many residents of western North Carolina affected by Hurricane Helene, including those who were temporarily dislocated from their legal voting residence.  *See* N.C. Sess. Law 2024-51, sec. 9.1.(a)(6)-(9) (expanding availability to, and ability to return, absentee

8

ballots for residents of counties affected by Hurricane Helene as part of the Disaster Recovery Act of 2024). Hurricane Helene hit North Carolina on September 26-27, 2024, which was less than 60 days before the November 5, 2024 general election.

32. Errors in the USPS Mail Ballot List would be extremely deleterious because of the potential for voter disenfranchisement. Under the EO, for any North Carolina voter who lawfully receives a mail ballot from a county board of elections but does not appear on the USPS Mail Ballot List, USPS is directed to refuse to return the voter's ballot. Similarly, under the EO, for any North Carolina-registered uniformed or overseas voter who may vote by mail using a Federal write-in absentee ballot but does not appear on the USPS Mail Ballot List, USPS is directed to refuse to return the voter's ballot. In both situations, the voter may think that they have voted, but they have not. Nor would the voter necessarily know that further action would be needed in order to cast their vote, given that the EO does not charge USPS with notifying the voter.

33. The EO's complicated requirements will likely lead some eligible voters to misunderstand whether they are able to use a mail ballot. Some eligible voters may determine that the added requirements make voting too confusing to be worthwhile. The result of this confusion may be that fewer eligible voters decide to cast a ballot.

34. There are several additional inherent problems posed by the deadlines outlined above and the requirement to compare static lists (the State Citizenship List, USPS Mail Ballot List, and the State Mail Ballot List) with a constantly evolving list (the statewide voter registration list and the list of voters who have requested mail ballots). For example, between September 4, 2026, the deadline for DHS to send the State Citizenship List, and October 9, 2026, the last day most voters may register under North Carolina law for the 2026 federal general

9

election, there will likely be a significant number of individuals who become eligible but are not captured on the State Citizenship List. They may, for example, move to North Carolina between September 4 and October 4, which is the deadline to establish residency in North Carolina for the 2026 general election. *See* N.C. Gen. Stat. § 163-55(a). Regarding voters who have moved, I am not aware of any legal requirement that voters regularly report change of residential address to the Federal Government.

35. Additionally, as already noted, the timeline simply does not seem workable. The EO requires DHS to send the State Citizenship List to States "no fewer than 60 days before each regularly scheduled Federal election." And the State of North Carolina must also send its State Mail Ballot List to USPS 60 days before the election. Comparing the statewide voter registration list and the State Citizenship List to see who is eligible according to both lists in *one day*, or even *a few hours*, is simply not possible to do with any meaningful degree of accuracy. Although the EO provides that the State of North Carolina may "routinely supplement and provide suggested modifications or amendments" to the USPS Mail Ballot List, there is no guarantee that USPS will accept those suggestions. Even if USPS accepted the State of North Carolina's suggestions, there may not to be enough time to get a ballot to those who are eligible once they are added to the USPS Mail Ballot List. In such cases, voters would be disenfranchised and North Carolina law would not be honored.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 20, 2026, at Raleigh, North Carolina

Marc Brunton
Assistant Deputy Attorney General
North Carolina Department of Justice

10