**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS**

STATE OF CALIFORNIA; et al.,

*Plaintiffs,*

v.

DONALD J. TRUMP, in his official capacity as President of the United States; et al.,

*Defendants.*

Case No. 1:26-cv-11581

**DECLARATION OF ELENA HILBY, MMC, WCPC, CPM**

I, Elena Hilby, declare as follows:

1.      I am a resident of the State of Wisconsin.  I am over the age of 18.  I am familiar with the information in the statements set forth below either through personal knowledge, consultation with relevant staff, or from my review of relevant documents and information. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I am the City Clerk for the City of Sun Prairie in Dane County, Wisconsin. In my role, I am responsible for implementing state and federal laws relating to elections. I work closely with the Dane County Clerk and the Wisconsin Elections Commission in administering elections and carrying out applicable election requirements. My responsibilities include voter registration administration and oversight, maintaining and updating voter registration records in WisVote, Wisconsin's statewide voter registration system, administering absentee voting, issuing ballots to qualified electors, administering polling places, and coordinating election inspectors. Through these responsibilities, I am directly familiar with Wisconsin's voter registration

1

requirements, list maintenance procedures, the operation of the statewide voter registration system, and the administration of absentee voting and Election Day registration in Wisconsin.

3.      I have served as the City Clerk for the City of Sun Prairie since 2017. I have worked in municipal election administration in Wisconsin for approximately 17 years. Prior to serving as City Clerk for Sun Prairie, I worked in municipal election administration with the City of Madison and the City of Milton. I'm the current past-president of the Wisconsin Municipal Clerk's Association. It should be noted that I submit this declaration on behalf of myself and not on behalf of any of the organizations mentioned here.

4.      I am familiar with the Executive Order published on March 31, 2026, entitled "Ensuring Citizenship Verification and Integrity in Federal Elections" (the "EO").  Sections 2 through 5 of the EO (collectively, the "Challenged Provisions") create significant uncertainty regarding how these requirements would interact with existing election administration procedures in Wisconsin. Based on my experience administering elections, implementation of these provisions would require substantial administrative effort by local election officials and could create confusion for voters and election administrators during the period leading up to a federal election.

5.      It is my understanding that Section 2(a) of the EO directs the Department of Homeland Security ("DHS") to create a "State Citizenship List" for each State that will include "individuals confirmed to be United States citizens who will be above the age of 18 at the time of an upcoming Federal election and who maintain a residence in the subject State."  It is also my understanding that DHS will transmit these lists "no fewer than 60 days before each regularly scheduled Federal election, or promptly upon request by a State in connection with any special

2

Federal election." For the federal general election scheduled for November 3, 2026, this would mean that the State Citizenship List would be transmitted by approximately September 4, 2026.

6. Section 2 of the EO would require me and my staff to evaluate how the State Citizenship List described in the order would interact with Wisconsin's statewide voter registration system. This would require coordination with the Dane County Clerk, the Wisconsin Elections Commission, and other election officials in Wisconsin. Addressing these issues would require significant staff time and attention and would divert resources from other critical election preparations.

7. Wisconsin clerks have a continuing obligation to perform regular voter registration list maintenance as required under the Help America Voter Act ("HAVA"), and Wisconsin state law. In Wisconsin, voter registration records are maintained in the statewide voter registration system, WisVote, and must be regularly updated to reflect new registrations, changes to voter information, and removals required under applicable state and federal law.

8. Additionally, municipal clerks and other local election officials must continue to register individuals who are eligible to vote in Wisconsin. Wisconsin law permits qualified electors to register to vote shortly before an election and also allows eligible individuals to register at the polling place on Election Day if they meet the applicable requirements. Eligible individuals may register to vote online, by mail, in person at their municipal clerk's office prior to Election Day, or at the polling place on Election Day by providing the information and documentation required to establish their voter qualifications.

9. In compliance with the Uniformed and Overseas Citizens Absentee Voting Act (UOCAVA), Wisconsin election officials must administer voter registration and absentee voting for eligible uniformed service members and overseas voters participating in federal elections.

3

Federal law requires that absentee ballots generally be transmitted to these voters at least 45 days before a federal election when a valid request has been received. See 52 U.S.C. § 20302(a)(8). Wisconsin election officials administer absentee voting for these voters in accordance with both federal law and Wisconsin statutes governing military and overseas electors. Requests for registration and absentee ballots from military and overseas voters may be received and processed throughout the election cycle.

10. In sum, Wisconsin's statewide voter registration list is dynamic and continues to change throughout the election cycle, including through Election Day via Election Day registration. Registrants are regularly being added, updated, and removed as required by federal and Wisconsin state law, and these updates will continue through the 2026 election and beyond.

11. I have considered how Wisconsin's dynamic statewide voter registration list would intersect with the State Citizenship List created by DHS under Section 2(a) of the EO. As noted above, the EO directs DHS to transmit a State Citizenship List to each state by approximately September 4, 2026, for the November 3, 2026 federal general election. The EO permits states "to routinely supplement and provide suggested modifications or amendments to the State Citizenship List transmitted thereto." However, the EO does not require DHS to accept any of these supplements, modifications, or amendments to the State Citizenship List submitted by the state.

12. Once the State Citizenship List is received, my office would have to devote significant resources to identifying and understanding any differences between that list and Wisconsin's statewide voter registration list. As a baseline matter, comparing the State Citizenship List to Wisconsin voter registration records would require linking individuals across the two datasets. This would be difficult because it is unlikely that the State Citizenship List will

4

contain the same unique identifiers used in Wisconsin's statewide voter registration system. For example, Wisconsin voter registration records may include a Wisconsin driver license or state identification number, or the last four digits of a Social Security number, which are identifiers federal agencies generally do not maintain or share for this purpose. As a result, matching would likely rely on less precise information such as name, date of birth, or address. In practice, differences in how this information is recorded – such as variations in names (e.g., Robert versus Bob) or addresses (e.g., Apartment 3 versus Apt. 3 versus Unit 3) – can make matching difficult, time-consuming, and potentially inaccurate. Based on my experience administering election records, data matching of this kind requires careful review because errors could result in incorrect conclusions about a voter's eligibility. Because the State Citizenship List would be provided so close to a federal election, election officials would need to begin planning now for how such comparisons would be conducted.

13.      If individuals appear on Wisconsin's statewide voter registration list but do not appear on the State Citizenship List, clerks, including my office and staff, would need to investigate those records further. Election officials have an obligation to ensure that eligible voters remain able to vote and that voter registration records are maintained accurately in accordance with federal and Wisconsin law. As a result, any discrepancies between the two lists would require careful review before drawing conclusions about a voter's eligibility.

14.      Investigating discrepancies between the statewide voter registration list and the State Citizenship List could require election officials to review voter registration records, contact voters for additional documentation or clarification, and coordinate with other state and local election officials. This type of review would require significant staff time and careful attention, particularly when conducted close to an election. In addition, the State Citizenship List could

5

create confusion among voters and election officials. For example, voters who review the State Citizenship List as contemplated by Section 2(a) and see that they are not listed may believe they are ineligible to vote or that attempting to vote could expose them to legal risk. The EO also emphasizes criminal penalties related to the distribution of mail ballots to ineligible individuals, which could create additional uncertainty about the administration of absentee voting. Similarly, if the State Citizenship List were publicly accessible, election officials or other actors could mistakenly interpret a voter's absence from the list as evidence that the voter is ineligible, even though the voter may in fact be properly registered and eligible to vote under Wisconsin law.

15. At the same time my staff would be reviewing discrepancies between the statewide voter registration list and the State Citizenship List, my office would also need to respond to questions from voters regarding their voter registration status and eligibility to vote. Voters regularly contact my office with questions about their registration records and voting requirements, and the introduction of the State Citizenship List would likely create additional confusion among voters about their eligibility to vote in Wisconsin elections. Responding to these inquiries and providing accurate information to voters would require additional staff time and resources during an already demanding period of election preparation.

16. In my experience administering elections, changes to voter registration or election procedures shortly before an election can create confusion for voters. The requirements described in the EO could cause some voters to misunderstand whether they are eligible to register or vote in Wisconsin elections. For example, the EO contemplates that individuals may check their status on the State Citizenship List. If an eligible voter were not included on that list, the voter might incorrectly conclude that they are ineligible to vote or that they must take additional steps before attempting to vote. Even where correction processes exist, voters may not

6

understand how to use them or may not receive clarification in time before the election. In my experience, confusion about voter eligibility or registration requirements can discourage otherwise eligible voters from participating in an election, risking disenfranchisement.

17.    As noted above, voter confusion about registration requirements or eligibility can discourage otherwise eligible voters from participating in an election. Wisconsin voters rely heavily on municipal clerks for guidance about registration and voting requirements, which means our offices often serve as the primary point of contact when voters have questions about their eligibility or registration status.  Increased confusion would therefore create additional burdens for local election officials. My office regularly responds to voter questions regarding registration status and voting requirements, and increased confusion would require significant additional staff time to address. These demands would arise during the period immediately preceding an election, when municipal and county election officials are already heavily engaged in other critical election preparation activities.

18.    It is my understanding that Section 3(b) of the EO directs the United States Postal Service ("USPS") to initiate a rulemaking that, among other things, would allow States to provide lists of voters who are permitted to send mail ballots to USPS approximately 60 days before a federal election. The EO contemplates that this process would result in the creation of a "Mail-In and Absentee Participation List" ("USPS Mail Ballot List") and would prohibit USPS from delivering mail ballots submitted by individuals who are not on the USPS Mail Ballot List. It is also my understanding that the States may "routinely supplement and provide suggested modifications or amendments" to the USPS Mail Ballot List, but that USPS is not required to accept any changes submitted by a State.

19.     The requirement that states provide this list to USPS no later than 60 days before a federal election means that some voters who are entitled to vote by absentee ballot under state and federal law will unavoidably be left off the list.  For example, UOCAVA permits uniformed service members and overseas voters to request absentee ballots up to 45 days before a federal election.  See 52 U.S.C. § 20302(a)(8).  Under Wisconsin law, most voters may request an absentee ballot until 5:00 p.m. on the Thursday before the election. See Wis. Stat. § 6.86(1)(b). Uniformed service members and overseas voters may request absentee ballots until 5:00 p.m. on the Friday before the election. See Wis. Stat. § 6.86(2)(a). Because absentee ballot requests may be received well after the 60-day deadline for providing the USPS Mail Ballot List, some voters who are lawfully entitled to receive and return absentee ballots would necessarily not appear on that list. Although the EO indicates that States may "routinely supplement and provide suggested modifications or amendments" to the USPS Mail Ballot List, USPS is not required to accept those changes.  The EO also does not specify when USPS will transmit its USPS Mail Ballot List to election officials, which could create additional administrative complications.

20.     Once my office receives the USPS Mail Ballot List, my staff would need to devote substantial resources to identifying and understanding any differences between that list and the records we maintain regarding voters who have requested absentee ballots. This would present many of the same challenges described above with respect to the State Citizenship List. For example, the two datasets are unlikely to share common unique identifiers, and differences in how names, addresses, or other information are recorded could make matching records difficult or inaccurate. In addition, Wisconsin's voter registration and absentee ballot request records continue to change throughout the period leading up to an election. These factors would make

comparing the USPS Mail Ballot List with Wisconsin election records a time-consuming and administratively complex process, requiring significant staff time and resources.

21.    Even with the best efforts of clerks and other local election officials, attempting to complete complex data-matching efforts within a short timeframe while simultaneously preparing to administer an election poses a high risk of errors or omissions in voter records.

22.    At the same time that my staff would be reviewing the USPS Mail Ballot List and investigating discrepancies between that list and Wisconsin election records, my office would also need to respond to questions from voters concerned about their ability to receive or return absentee ballots in upcoming elections. As previously mentioned, Wisconsin voters frequently contact municipal clerks with questions about absentee voting and voter registration requirements. The introduction of the USPS Mail Ballot List and the requirements described in the EO would likely create additional confusion among voters about whether they are permitted to request, receive, or return absentee ballots. Responding to these questions and providing accurate information to voters would require additional staff time during an already demanding period of election preparation.

23.    Apart from the time and resource burdens described above, the requirements of Section 3 of the EO could also create confusion among voters about their ability to request, receive, or return absentee ballots, creating a risk of disenfranchisement. In my experience administering elections, uncertainty about voting requirements can discourage otherwise eligible voters from participating in an election. Such confusion can itself be harmful and would also place additional strain on local election officials during the already busy period immediately preceding an election.

9

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 21, 2026, at Sun Prairie, Wisconsin.



4/21/2026

Elena Hilby
City Clerk
City of Sun Prairie

10