1            UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS
2

3

4                                    )
   UNITED STATES OF AMERICA,         )
5                                    )
            Plaintiff,               )
6                                    )   Criminal Action
   v.                                )   No. 1:15-10338-FDS-4
7                                    )
   NOE SALVADOR PEREZ-VASQUEZ,       )
8                                    )
            Defendant.               )
9                                    )

10

11           BEFORE THE HONORABLE M. PAGE KELLEY
               UNITED STATES MAGISTRATE JUDGE
12

13

                     STATUS CONFERENCE
14

15

                    November 9, 2017
16

17

           John J. Moakley United States Courthouse
18                  Courtroom No. 24
                   One Courthouse Way
19            Boston, Massachusetts 02210

20

21

22             Linda Walsh, RPR, CRR
                Official Court Reporter
23       John J. Moakley United States Courthouse
             One Courthouse Way, Room 5205
24           Boston, Massachusetts 02210
                lwalshsteno@gmail.com
25

APPEARANCES:

On Behalf of the Government:
    UNITED STATES ATTORNEY'S OFFICE
    AUSA Christopher J. Pohl and AUSA Kelly Lawrence
    One Courthouse Way, Boston, Massachusetts 02210

On Behalf of the Defendant Oscar Noe Recines-Garcia:
    MICHAEL L. TUMPOSKY, ESQ., 15 Broad Street, Boston, MA
    02109

On Behalf of the Defendant German Hernandez-Escobar:
    JOAN M. GRIFFIN, ESQ., P.O. Box 133, Dublin, NH 03444

On Behalf of the Defendant Neo Salvador Perez-Vasquez:
    RAYMOND A. O'HARA, ESQ., 1 Exchange Place, Worcester, MA
    01608

On Behalf of the Defendant Herzzon Sandoval:
    MADELEINE K. RODRIGUEZ, ESQ., 155 Seaport Boulevard,
    Seaport World Trade Center West, Boston, MA 02210

On Behalf of the Defendant Edwin Guzman:
    SCOTT P. LOPEZ, ESQ., 88 Black Falcon Avenue, Suite 345,
    Boston, MA 02210

On Behalf of the Defendant Edgar Pleitez:
    SCOTT P. LOPEZ, ESQ., standing in

On Behalf of the Defendant Cesar Martinez:
    STANLEY W. NORKUNAS, ESQ., 11 Kearney Square, Howe
    Building, Suite 202, Lowell, MA 01852

On Behalf of the Defendant Erick Argueta Larios:
    THOMAS J. IOVIENO, ESQ., 345 Neponset Street, Canton, MA
    02021

On Behalf of the Defendant Luis Solis-Vasquez:
    HENRY FASOLDT, ESQ., standing in

On Behalf of the Defendant Carlos Melara:
    AVIVA JERUCHIM, ESQ., standing in

On Behalf of the Defendant Joel Martinez:
    PETER L. ETTENBERG, ESQ., 370 Main Street, Worcester, MA
    01608

(Appearances continued on next page.)

APPEARANCES (Continued):

On Behalf of the Defendant Jose Rene Andrade:
      INGA L. PARSONS, ESQ. and CHRISTIAN URBANO, ESQ., 3 Besson
      Street, #234, Marblehead, MA 01945

On Behalf of the Defendant Hector Enamorado:
      JAMES J. CIPOLETTA, ESQ., Citizens Bank Building, Suite
      307, 385 Broadway, Revere, MA 02151

On Behalf of the Defendant Jose Vasquez:
      SCOTT P. LOPEZ, ESQ., standing in

On Behalf of the Defendant Oscar Duran:
      EMILY R. SCHULMAN, ESQ., standing in

On Behalf of the Defendant Edwin Gonzalez:
      JAMES J. CIPOLETTA, ESQ., standing in

On Behalf of the Defendant Henry Josue Parada Martinez:
      RAY A. O'HARA, ESQ., standing in

On Behalf of the Defendant Rutillo Portillo:
      ERIC B. TENNEN, ESQ., 50 Congress Street, Suite 600,
      Boston, MA 02109

On Behalf of the Defendant Edwin Diaz:
      (Via Telephone) JONATHAN SHAPIRO, ESQ., 90 Canal Street,
      Suite 500, Boston, MA 02114-2022

On Behalf of the Defendant Jairo Perez:
      (Via Telephone) ELLIOT M. WEINSTEIN, ESQ., 83 Atlantic
      Avenue, Boston, MA 02110

On Behalf of the Defendant Jose Adan Martinez Castro:
      PETER L. ETTENBERG, ESQ., standing in

On Behalf of the Defendant Elenilson Gustavo Gonzalez-Gonzalez:
      (Via Telephone) PETER C. HORSTMANN, ESQ., 450 Lexington
      Street, Suite 101, Newton, MA 02466

On Behalf of the Defendant Rigoberto Mejia:
      EMILY R. SCHULMAN, ESQ., 60 State Street, Boston, MA 02109

On Behalf of the Defendant Modesto Ramirez:
      (Via Telephone) VIVIANNE E. JERUCHIM, ESQ., 50 Congress
      Street, Suite 615, Boston, MA 02109

(Appearances continued on next page.)

```
1    APPEARANCES (Continued):

2    On Behalf of the Defendant Josue Alexis De Paz:
          (Via Telephone) JOHN F. PALMER, ESQ., Eight Faneuil Hall
3         Marketplace, North Building, 3rd Floor, Boston, MA 02109

4

5    ALSO PRESENT:  Gabriel Hadad, Interpreter

6

7

8              Proceedings recorded by sound recording and
                 produced by computer-aided stenography
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

P R O C E E D I N G S

THE CLERK:  Today is Thursday, November 9th, 2017, and
we are on the record in Criminal Case Number 15-10338, the
United States of America versus Oscar Recines-Garcia, et al.,
the Honorable M. Page Kelley presiding.

Would counsel for the Government please identify
themselves for the record.

MR. POHL:  Good afternoon, Your Honor.  Christopher
Pohl and Kelly Lawrence for the United States.

THE COURT:  Good afternoon.  So I think defense
counsel should have signed in, both those who are on the phone
and those who are present, and if you have not, you need to do
that immediately after the hearing.  And I'm just going to
accept Ms. Moore's taking of attendance as accurate.

I would ask the defense counsel whose clients are
present in the courtroom to identify themselves and their
clients.

MS. GRIFFIN:  Good afternoon, Judge.  Joan Griffin
representing German Hernandez-Escobar, who is at the far right.

THE COURT:  Okay.  Good afternoon.

MR. O'HARA:  Good afternoon, Your Honor.  Raymond A.
O'Hara on behalf of Noe Perez-Vasquez, who is seated --

THE COURT:  Okay.  Good afternoon.

MR. LOPEZ:  Scott Lopez representing Edwin Guzman, who
is standing.

1            THE COURT:  Good afternoon, sir.

2            MS. SCHULMAN:  I'm Emily Schulman for Rigoberto Mejia.

3            THE COURT:  Okay.  And just in case that wasn't picked

4    up, it's Emily Schulman representing Rigoberto Mejia, who is

5    second there.  Thank you.  Okay.

6            So I think we need to swear in the interpreter.

7            (Interpreter was sworn.)

8            THE CLERK:  Can you please state your name for the

9    record.

10           THE INTERPRETER:  Gabriel Hadad.

11           THE COURT:  Okay.  So I'll note that the trial for the

12   one Group 4 Defendant who was left going to trial began

13   yesterday, according to the docket, and also that the Group 3

14   Defendants are going to be sent up today to the District Court.

15           Your first status conference before Judge Saylor is

16   December 11th, and he has set out a whole order with deadlines

17   in it.  Typically in this session we would have set dates for

18   expert disclosures, dispositive motions, et cetera, and I think

19   we have not done that -- well, I know we have not done that,

20   and so Judge Saylor is doing that.  So counsel in Group 3

21   should familiarize themselves with that record.

22           And I think I'll just ask for the record now, is there

23   anyone in Group 3 who does not assent to exclude the time under

24   the Speedy Trial Act from today to December 11th, the first day

25   before the District Court?

1          MR. LOPEZ:  Your Honor, once again, Mr. Guzman will

2     not assent to it.

3          THE COURT:  Okay.  Okay.  I'll note that.  Thank you.

4     All right.

5          So let me ask the Government to give us a status on

6     the discovery.

7          MR. POHL:  Thank you, Your Honor.

8          So the last global discovery production was produced

9     on or about October 16th.  I think after that date much of our

10    focus on discovery was directed toward the Group 4 Defendants

11    that were still sort of, at least in a posture of going to

12    trial, even though, as the case got closer to trial, many of

13    those cases ended up resolving by way of guilty pleas.

14         So I think our next production will end up being a

15    chance for us to produce globally some of the information that

16    we provided to the Group 4 Defendants sort of more recently,

17    and I expect that to be going out in the next 30 days.

18         So I think -- you know, in all candor, I don't

19    know -- a lot of that information I think is going to relate to

20    most of the people that were in that group, but to the extent

21    it is relevant for the Defendants in the future trials, we want

22    to make sure they have the information -- that everyone has the

23    same information as the Defendants that were either about to go

24    to trial or that are currently going to trial.

25         THE COURT:  Okay.  Thank you very much.

1          So any matters that defense counsel wish to be heard

2    on?

3          Yes, Ms. Schulman?  Can you come forward so the

4    microphones will record what you say.

5          MS. SCHULMAN:  Yes, Your Honor.

6          THE COURT:  Thank you.

7          MS. SCHULMAN:  So I think this Court knows I filed a

8    status update and motion with this Court on September 27th

9    detailing a state of total disarray of the discovery at the

10   Wyatt Detention Facility, and seeking an order from this Court

11   to have either a third party or the Government rectify that,

12   because it seems evident that Wyatt, at least to this point,

13   has been unable to do it, and I don't see any reason to have

14   any measure of confidence that Wyatt will be able to carry out

15   its duties effectively in that regard.

16          In discussing this issue with the Government just

17   before this status conference, the Government has agreed to

18   take responsibility for the state of discovery on the kind of

19   computers at Wyatt, and I think the plan is for the Government

20   to retrieve all of the computers that have been placed at that

21   facility, wipe them clean of the kind of erratic discovery that

22   Wyatt has and hasn't loaded onto them, and load on all of the

23   discovery that the Government has produced in the case to date;

24   and in that way we should all know that the proper discovery is

25   in fact on the computers at Wyatt.

So I think that is the anticipated solution to what
has been a very prolonged and problematic, rather chronic issue
with discovery in this case.  The only thing that we haven't
sort of ascertained -- as I say, this was just kind of
discussed and agreed upon moments before the status conference
began, and so we don't have a date certain by which that will
happen.

I want to give -- you know, commend the Government for
taking responsibility for this and being willing to kind of do
this in an expeditious manner, but I think it's important that
we do have a date certain by which we, and frankly the
Defendants, will know that they will in fact finally have
access to the discovery to which they have been entitled for
the past year and a half in this case.

THE COURT:  Okay.  Thank you very much.

Yes, Mr. Pohl?

MR. POHL:  I don't -- I guess I would just say a
couple of things.

One -- and, frankly, the only reason that I'm agreeing
to do this is that it's too hard to determine remotely for us
what exactly the nature of the problems are and the extent of
their severity.  And, you know, I've gotten -- I saw
Ms. Schulman's filing.  I take her representation seriously.  I
really haven't gotten much in the way of an update from, you
know, Wyatt or from any other interested party involved in the

1   discovery process about exactly how the computers might be

2   different, you know, how Computer A and B is different than

3   Computer C down there.  So, frankly, I'm -- I think it is

4   easier to just go get the laptops and have them examined here

5   and make sure that everything that we've produced is on all of

6   them so that everyone is on the same page.  I don't have any

7   difficulty doing that.

8          How long that's going to take?  I'm sure that we'll be

9   able to go down and get the laptops next week, and I'll be able

10  to report to Ms. Schulman sort of how long that process will

11  take.  I don't have any reason to think it's going to take

12  forever and that we can't do it expeditiously.  But, you know,

13  this seems like -- I mean, I agree it seems like this issue has

14  been kind of lingering for a while, but the fact that it's been

15  lingering for a while doesn't mean that I necessarily agree

16  that the computers are in quite as bad a shape as have been

17  sort of described, but I'm ready to just move this through.

18  We're at a point in the case now where I really don't want any

19  more conversations like this going on about whether or not

20  there is some gap in one of the laptops at one of these

21  facilities to be used as a reason for potentially delaying a

22  trial in the future.

23         I think it's fair to say that all of the Defendants in

24  this case have had extensive access to extensive amounts of

25  discovery for a very long time, but if there's an issue with

1    one of the laptops or some of the laptops having differences in

2    the material that's been produced to Wyatt, I'd just as soon

3    take them back, load them here, get them there to have this

4    issue put to bed once and for all.  Because I think, starting

5    very soon -- the calendar is already moving quickly for us.  We

6    think it's going to start moving quickly for all the remaining

7    defense counsel in the remaining groups, and so now is a good

8    time to make sure that that issue is put to bed.  So we're

9    happy to do that.

10          THE COURT:  Well, I will just say, my reading of the

11   rules is that the Government is obligated to deliver materials

12   to the institutions, but what happens to the materials once

13   they get there I don't think is totally the Government's -- or

14   clearly the Government's responsibility.  However -- and that's

15   really a problem that needs to be addressed with the rules.

16          MS. GRIFFIN:  Judge, can I say from another

17   institution what happens, my understanding is, that the

18   computer goes back to the Government.  They load on the new

19   discovery and they send it out.  So it is all being done by the

20   Government as far as I know.

21          THE COURT:  Right, but the Government did not purchase

22   these computers.  The institutions themselves don't have the

23   means, and it isn't the Government's job to provide the actual

24   computers, so we've really tried to do that as best we can in a

25   kind of makeshift way here, and I don't -- I mean, I was a

1    criminal defense lawyer for 27 years, as everyone knows, and I

2    spent many hours at institutions playing discovery for my

3    clients myself on my laptop because, especially at Walpole,

4    they just never had a computer that would play the stuff that

5    the Government sent them.  So I think we're trying hard to make

6    sure that every Defendant has access to the discovery here.

7           And I really appreciate Ms. Schulman's being so

8    tenacious about this and pointing it out.  I thought after your

9    motion, Ms. Schulman, that we were on it, and it was being

10   taken care of, so sorry to hear that that's not the case.

11          MS. SCHULMAN:  I have received absolutely no feedback

12   from anyone or response to my motion since it was filed

13   September 27th, which in itself I found very dismaying.  The

14   Government was aware of it.  The Court was aware of it.  The

15   administrative office was aware of it.  Wyatt was aware of it.

16          THE COURT:  We were definitely aware of it.

17          MS. SCHULMAN:  All I can say is that I have received

18   absolutely no response whatsoever to my motion.  But I am

19   pleased that the Government -- I mean, it's the Government's

20   obligation to provide discovery, frankly, in my view, to the

21   Defendants, and the Government has agreed to make sure that in

22   fact the discovery that is on the Wyatt computers is complete

23   and accurate and comprehensive.

24          I will take slight issue with Mr. Pohl's

25   characterization of some things, not that I want to get into a

1  debate about this.  I appreciate that he takes my

2  representations and my motion at face value.  These are not

3  minor, you know, kind of oversights of, oh, a document here, a

4  document there.  There are wholesale productions, several, in

5  fact the majority of the Government's productions are not

6  included on any given Wyatt computer.  And just to be clear,

7  the initial computer that was reviewed was the one that Wyatt

8  itself had selected for us to use when meeting with our client.

9  So it was Wyatt -- it wasn't even a random selection.  It was

10 Wyatt's own choice of which computer we were going to use.  And

11 more than half of the Government's productions, not individual

12 documents, productions were missing from that computer.

13         And in good faith we assumed that perhaps there was

14 just some problem with that individual computer and so asked

15 for a different computer so that we could simply review with

16 our client the documents that the Government had produced.  And

17 when Wyatt gave us a second computer, once again, virtually

18 half of the Government's productions were not on the computer,

19 but even more concerning was that the productions that were

20 missing weren't the same ones between the two computers.  So it

21 is a completely haphazard, unpredictable, erratic, just

22 complete state of disarray.

23         And so, just to be clear, my understanding is that the

24 Government isn't going to simply, you know, go through and see

25 what is on these computers.  My strong request that I hope

1    we're agreed to today is that the Government is going to wipe

2    the computers and itself -- I mean, this is not a difficult or

3    lengthy process -- simply load on, whether it's a thumb drive

4    or a hard drive, right, a load file of each production onto

5    each computer so that the Government knows that then

6    Productions 1 through 13 have all been loaded onto the ten

7    computers.

8          So when Mr. Pohl says, oh, I don't think it will take

9    forever, not only should it not take forever, but once the

10   computers are up here, anyone who is focused on this task, in

11   my experience, should be able to complete this within a week.

12   This is not a lengthy, time-consuming, complicated process.

13         THE COURT:  Okay.  So I think what we'll do now is

14   just ask you, Mr. Pohl, to do that.  And what about the next

15   production in the next 30 days?

16         MR. POHL:  I think that's a reasonable schedule.  I

17   don't have any --

18         THE COURT:  Sure.  But I'm just saying how is that

19   going to make it onto the computers?  Is there any way that can

20   go on as you're redoing this?

21         MR. POHL:  Sure.  I'll investigate that.  I mean, I

22   think it's -- I don't think that's an impossible request

23   because, as I said, we produced it to a smaller subset of the

24   defense attorneys anyway.  So maybe as we get it back, we might

25   be able to accelerate that process and get them onto the

1  laptops now.

2       THE COURT:  Okay.  That would be great because I do

3  think in the future additions to the computers should be

4  thought out carefully so that we don't end up with a bunch of

5  missing stuff in the future.  I mean, it's great that you're

6  going to bring them in, wipe them, and load them up, but then I

7  think as you provide more discovery, some thought should be

8  given to how that is going to make its way onto the computers

9  which will then be returned to Wyatt.  Okay?

10      MS. SCHULMAN:  Your Honor, we have one more request,

11 and I don't know the details of this.  If it's possible to load

12 the new discovery onto the computers in a manner that's

13 unencrypted so that the Defendants can readily access it?

14 Again, I defer to the Government on whether that's feasible or

15 not, but if it's possible to do that, we would request that

16 that happen just to kind of facilitate the Defendants' access

17 to those materials.

18      MS. GRIFFIN:  When we were having trouble at Norfolk,

19 they agreed to put on unencrypted because there was simply no

20 way that they could actually run the program down there to

21 unencrypt it.

22      THE COURT:  Can you do that, Mr. Pohl?

23      MR. POHL:  I'll look into that, Your Honor.  I have

24 got Mr. Tumposky, you know, e-mailed this week that he has his

25 client at Cedar Junction who sounds like he had a similar issue

1   with the encryption.

2           THE COURT:  Big issues there.

3           MR. POHL:  Mr. Tumposky's e-mail had focused me on

4   this issue.  If there's an issue, we'll come back to the Court,

5   but we'll do it in a way that everybody can access it.

6           THE COURT:  Yes?

7           MR. TUMPOSKY:  My client is at Walpole.  There are no

8   laptops there.  He's using whatever computer the facility has,

9   which I can only imagine and I believe are not up to speed.  He

10  cannot open the last couple of CDs.  The password simply won't

11  allow him to view.  He can't view the material that's on there.

12          THE COURT:  Okay.  So we're having a problem in an

13  unrelated case with someone at Walpole not being able to see

14  their discovery and -- a case of Mike Crowley's.  So I think

15  Kevin Neal is working with -- Mr. Andrews is nodding at this.

16          MR. TUMPOSKY:  I did talk to Mr. Andrews about this.

17          THE COURT:  Okay.  I think you should e-mail Kevin

18  Neal.  Could I just ask the people on the phone to please mute

19  your phones because we're getting some weird noises.  Thank

20  you.

21          So perhaps you could let Kellyann Moore know within

22  two weeks if that problem has not been resolved, and we'll get

23  back to it.

24          MR. TUMPOSKY:  I will.  Thank you.

25          THE COURT:  Okay.  So anything else from anyone else?

1      MS. GRIFFIN:  Judge, Joan Griffin for

2  Mr. Hernandez-Escobar.  The current trial that's ongoing, is it

3  possible for the rest of the Defendants to have transcripts of

4  that trial?

5      THE COURT:  Well, I don't know.  I think -- are they

6  having daily transcripts?

7      MS. GRIFFIN:  I've been reading the motions back and

8  forth.  It looks like they're having at least some, and I

9  believe the Court has ruled that to the extent the Government

10 is requesting daily transcripts, they should be provided to the

11 Defendant.  So if we could get those as well, that would be

12 helpful.  I mean, eventually we're going to need these things,

13 I think.

14     THE COURT:  Sure.  Mr. Andrews, how does that work; do

15 you know?

16     MR. ANDREWS:  I think if the transcripts are being

17 produced, the panel of attorneys can get them at ten cents a

18 pop, in essence ten cents a page.  So I believe you should

19 probably just contact Valerie, who is the court reporter on the

20 matter.  She'll tell you what she needs.

21     THE COURT:  I would assume if there aren't dailies

22 being produced, someone could move for that with CJA funds,

23 right?

24     MR. POHL:  It is my understanding there are dailies

25 being produced, and that the Government and the defense are

1   splitting the cost of the dailies.

2          THE COURT:  I see.  So contact -- Mr. Andrews, that's

3   covered for everyone?

4          MR. ANDREWS:  I'm sorry, Your Honor?

5          THE COURT:  If people who are not on trial want those

6   dailies, the cost is covered for the CJA?

7          MR. ANDREWS:  I think they just have to make a request

8   through the court reporter, and Valerie's last name is escaping

9   me right now.  But they'll just fill out a 24 and make a

10  request.

11         MS. GRIFFIN:  So apparently, according to Mr. Pohl,

12  the Government and the defense are splitting the cost of

13  dailies at the trial.  So do we each all have to pay for

14  another copy?

15         MR. POHL:  I'm pretty sure the answer to that question

16  is yes.

17         MR. ANDREWS:  Yes, but it's at a greatly reduced rate.

18         MS. GRIFFIN:  Okay.  Do we need to make a motion for

19  that?

20         MR. ANDREWS:  I keep telling you, contact Valerie.  Go

21  through the court reporter.  She'll ask you to fill out a 24.

22  If she wants a motion with it, she'll tell you she needs a

23  motion with it.  Okay?

24         MS. GRIFFIN:  All right.  Thank you.

25         Another question.  The Government has -- there's an

1    exhibit list in the ongoing trial -- and, Justin, I presume

2    this is what's coming on our next discovery.  There's been a

3    new indictment against Sugar, one of the MS-13 people, but he's

4    not in our indictment, and it quotes extensively from a

5    December 2015 joint meeting.  The transcript of that meeting

6    became Exhibit Number 1 or 2 in the ongoing trial.  It hasn't

7    yet been produced to anybody in our case, and it's obviously a

8    very important transcript.  Now, I e-mailed the Government, and

9    they kindly sent me a copy of it so I've got it here.  I

10   presume it will now be included in discovery to us, and

11   therefore, to our Defendants.  So that's kind of one thing I do

12   want to make sure of.

13        And then at the same time I asked the Government,

14   because now this exhibit list was looking so interesting, if I

15   could have the exhibit list with Bates numbers attached so that

16   I could actually find in our voluminous discovery what exhibits

17   they are using in this current trial, and they told me they

18   didn't have that available.  Now, in other trials I've been in

19   they have Bates-referenced their exhibits.

20        So if the Government -- if they have it perhaps by now

21   or if they could be asked to produce that, that would make it

22   easier for the rest of us to actually look at the exhibits

23   they're producing in the trial and see which ones are going to

24   be generally applicable to the other trials; which things, for

25   example, such as this transcript will be, because, I mean, it

1 just describes the organization in general, and it's obviously

2 their Exhibit A.  So I would like an exhibit list with Bates

3 numbers.

4          THE COURT:  Sure.  Mr. Pohl?

5          MR. POHL:  Yes, we're going to produce the transcript

6 globally.  No, we're not going to Bates-number the exhibit

7 list.  I mean, I'm -- if there's anything in particular that

8 defense counsel can't find and want to e-mail us about that is

9 of particular interest to them and their clients, we're happy

10 to try to do our best to point them in the right direction

11 but --

12          THE COURT:  So one of the issues going forward here is

13 just to keep the cost down as far as numerous defense counsels

14 scouring a record to try to figure something out.  So, for

15 example, is there a binder of the exhibits that is available to

16 the other lawyers who are not in the trial?

17          MR. POHL:  So we did do an exhibit binder for the

18 Court and for defense counsel for the defendant that went to

19 trial.  It hadn't actually occurred to me that that might be

20 something that we could put in the global discovery production.

21 I'll look at it to make sure there isn't something that I am

22 missing.

23          I guess my initial reaction is that's exactly the kind

24 of material that was going to be in the production anyway, so,

25 I mean, we'll -- if there's some reason to withhold some parts

1    of it for security reasons, we will, but I would expect that

2    we'd be able to produce that.

3           THE COURT:  I think, also, if it's bundled in such a

4    way that people know that you've moved it into evidence in the

5    first trial, then at least that demonstrates its importance --

6           MR. POHL:  Sure.

7           THE COURT:  -- and could help them prepare for trial.

8    I mean, I just think it's -- anything to make preparation more

9    efficient so that -- I think we still have about 40 lawyers who

10   are by now kind of scrambling around.  So anything -- we could

11   save tens and tens of hours of billable time if that could

12   be -- so perhaps if you could just try to produce your exhibits

13   in some way, that would be great.  Okay.  So let's see what

14   that production looks like, Ms. Griffin, and any follow-up I'm

15   happy to hear you on.

16          Anything else?

17          (No response.)

18          THE COURT:  Okay.  So I would like to set the next

19   date for -- oh, yes, sir?

20          DEFENSE COUNSEL:  I don't know, Judge, that this is

21   something that we need to take up with Your Honor, but

22   Mr. Tum -- I'm actually a little surprised that he didn't jump

23   up on his feet, but I don't want to end today without talking

24   about it.  So Mr. Tumposky filed a motion this afternoon to

25   continue the March trial and --

1    THE COURT:  Congratulations.

2    DEFENSE COUNSEL:  Yes.

3    MR. TUMPOSKY:  Thank you.  I didn't bring it up

4  because I actually assumed Judge Saylor wanted to --

5    DEFENSE COUNSEL:  That, I think -- I think that's

6  something that would need to be addressed sooner rather than

7  later, but, you know, we'll be -- I'll be before him with the

8  Group 3 Defendants in the next few weeks, but maybe we'll --

9  we'll just contact his session to address the Group 2 motion.

10    THE COURT:  Okay.  So I think you should -- it's

11  definitely for the judge to take up -- for Judge Saylor to take

12  up, so you might -- if you're not hearing something soon

13  enough, you might just e-mail Lisa Pezzarossi and ask her to be

14  heard -- you know, can you be heard on that.

15    MR. TUMPOSKY:  Yes.  Okay.  I will do that.

16    DEFENSE COUNSEL:  Thank you.

17    THE COURT:  Okay.  So the next date for everyone who

18  hasn't been sent up to the District Court I'd like to schedule

19  for January 18th, which is a Thursday, at 2 o'clock.  And is

20  there anyone in the groups that are staying here who does not

21  assent to excluding the time between today and January 18th?

22    (No response.)

23    THE COURT:  And is there anything else I can do?

24    (No response.)

25    THE COURT:  Okay.  I would -- Ms. Schulman, if matters

1 | have not been settled out in -- at Wyatt, I would say, within
2 | 21 days, if you can just let the Court know, and we'll take
3 | some action on it.
4 |             MS. SCHULMAN:  I will, Your Honor.  Thank you.
5 |             THE COURT:  Thank you very much.  Okay.
6 |             Anything else?
7 |             (No response.)
8 |             THE COURT:  Thank you very much.
9 |             (Recording ends at 2:37:39)

1        CERTIFICATE OF OFFICIAL REPORTER

2

3          I, Linda Walsh, Registered Professional Reporter

4    and Certified Realtime Reporter, in and for the United States

5    District Court for the District of Massachusetts, do hereby

6    certify that pursuant to Section 753, Title 28, United States

7    Code that the foregoing is a true and correct transcript of the

8    stenographically reported proceedings held in the

9    above-entitled matter and that the transcript page format is in

10   conformance with the regulations of the Judicial Conference of

11   the United States.

12                    Dated this 11th day of December, 2018.

13

14

15                    /s/ Linda Walsh_____

16                    Linda Walsh, RPR, CRR

17                    Official Court Reporter

18

19

20

21

22

23

24

25